UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

STEVE SANDS,

                    Plaintiff,

          -against-

CBS INTERACTIVE INC.,

                    Defendant.

Case No. 18-cv-07345 (JSR)

ECF Case

---

### DEFENDANT CBS INTERACTIVE INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

Eleanor M. Lackman
Lindsay R. Edelstein
Sara Gates
COWAN, DeBAETS, ABRAHAMS
& SHEPPARD LLP
41 Madison Avenue, 38th Floor
New York, New York 10010
Tel.: (212) 974-7474
Fax: (212) 974-8474
ELackman@cdas.com
LEdelstein@cdas.com
SGates@cdas.com

*Attorneys for Defendant*
*CBS Interactive Inc.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

FACTUAL BACKGROUND ...................................................................................................... 2

ARGUMENT .............................................................................................................................. 5

    I.    PLAINTIFF IS NOT ENTITLED TO ENHANCED
         DAMAGES FOR WILLFUL INFRINGEMENT ........................................................... 6

    II.   THE PHOTOGRAPHS CONSTITUTE A SINGLE WORK
         FOR THE PURPOSE OF STATUTORY DAMAGES,
         LIMITING PLAINTIFF'S RECOVERY (IF ANY) ...................................................... 9

CONCLUSION ......................................................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barcroft Media, Ltd. v. Coed Media Grp., LLC*,
 297 F. Supp. 3d 339 (S.D.N.Y. 2017)......................................................................10

*Branch v. Ogilvy & Mather, Inc.*,
 772 F. Supp. 1359 (S.D.N.Y. 1991)...........................................................................7

*Bryant v. Media Right Prods., Inc.*,
 603 F.3d 135 (2d Cir. 2010)..................................................................................9, 10

*FameFlynet, Inc. v. Shoshanna Collection, LLC*,
 282 F. Supp. 3d 618 (S.D.N.Y. 2017) (Sweet, J.)...................................................10

*Ferdman v. CBS Interactive Inc.*,
 342 F. Supp. 3d 515 (S.D.N.Y. 2018)....................................................................5, 8

*Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*,
 807 F.2d 1110 (2d Cir. 1986)....................................................................................7

*Gallo v. Prudential Residential Servs., Ltd. P'ship*,
 22 F.3d 1219 (2d Cir. 1994)......................................................................................5

*Gross v. NYP Holdings, Inc.*,
 No. 06 Civ. 7863 (RMB) (JCF), 2007 WL 1040033 (S.D.N.Y. Apr. 4, 2007) ......10

*HarperCollins Publishers LLC v. Open Rd. Integrated Media, LLP*,
 58 F. Supp. 3d 380 (S.D.N.Y. 2014)........................................................................6

*Hicks v. Baines*,
 593 F.3d 159 (2d Cir. 2010).......................................................................................5

*Island Software & Computer Serv. Inc. v. Microsoft Corp.*,
 413 F.3d 257 (2d Cir. 2005)......................................................................................7

*Knitwaves, Inc. v. Lollytogs Ltd.*,
 71 F.3d 996 (2d Cir. 1995).........................................................................................7

*Lipton v. Nature Co.*,
 71 F.3d 464 (2d Cir. 1995)......................................................................................6, 7

*Princeton Univ. Press v. Mich. Document Servs., Inc.*,
 99 F.3d 1381 (6th Cir. 1996) ....................................................................................7

*Twin Peaks Prods., Inc. v. Publications Int'l, Ltd.*,
    996 F.2d 1366 (2d Cir. 1993)................................................................................9

*UMG Recordings, Inc. v. MP3.COM, Inc.*,
    109 F. Supp. 2d 223 (S.D.N.Y. 2000) (Rakoff, J.) ......................................9, 10, 11

*Yi Fu Chen v. Spring Tailor, LLC*,
    No. 14 Civ. 218 (PAE), 2015 WL 3953532 (S.D.N.Y. June 29, 2015)....................5

**Rules and Statutes**

17 U.S.C. § 101 ......................................................................................................9

17 U.S.C. § 504 ...................................................................................................6, 9

Fed. R. Civ. P. 56 ...............................................................................................1, 5

Defendant CBS Interactive Inc. ("CBSi") hereby respectfully submits this Memorandum of Law in support of its motion, pursuant to Federal Rule of Civil Procedure 56, for partial summary judgment against plaintiff Steve Sands ("Plaintiff" or "Sands").

## PRELIMINARY STATEMENT

This case presents a classic example of misuse of the Court's resources by an overzealous paparazzo over admittedly valueless photographs that were only licensed by one entity for less than $45.00 over two years ago.  Despite clear case law to the contrary, Sands believes he is now entitled to "$150,000 per copyrighted work infringed," refuses to consider settlement, and prefers to take this case to the mat.  What Sands – and the Liebowitz firm (which has a reputation for clogging the Court's dockets, and which has racked up sanctions and criticism from the Southern District of New York) – fails to consider, however, is that the facts of this case do not support the unreasonable sum he seeks.  Now, because of the Liebowitz firm's unwillingness to settle on fair terms, CBSi has no choice but to seek a resolution on certain issues where there is no issue of fact to be tried.  Despite Sands' ambitious demands, the fact of the matter is that Sands and his counsel have undertaken no efforts to seek the truth, which is that the use – which Sands himself considers "minor" – was not willful, and the photographs as to which relief is sought have little commercial value, much less any value other than as a set.

Sands has failed to adduce *any evidence whatsoever* that CBSi's conduct was willful. The undisputed record shows that when CBSi freelance writer Dan Auty posted the subject photographs (purportedly owned by Sands) to the website www.gamespot.com, he had a good faith belief that the photographs were publicity shots released by studios for use by the media to create "buzz" for the television show "The Punisher."  Sands has failed to meaningfully participate in the discovery process enough to even dispute this fact.

Furthermore, the five photographs at issue – which depict actors Jon Bernthal and Deborah Ann Woll on set during the production of the television show The Punisher in New York City – were at all times considered "a single work," entitling Sands to only one award of statutory damages, if any.  Sands registered the subject photographs together as part of a group registration of published photographs, and the photographs were only ever licensed and purchased together (and never independently of one another).  Sands issued and treated the photographs as a single work, and thus he cannot now escape the reality of his actions to reap a larger award of statutory damages.

## FACTUAL BACKGROUND

On or around October 2016, the television show The Punisher was in production, and scenes of the series were being filmed in public locations in New York City.  Defendant's Rule 56.1 Statement of Material Facts ("SUMF") ¶¶ 2–3.  Without permission from any member of the cast or crew, Sands alleges that he took at least 27 photographs on the set of The Punisher on October 5, 2016.  Id. ¶ 4.  He claims that CBSi used certain photographs from this collection.  Id. ¶¶ 12–13.

Sands submitted a selection of these photographs to Getty Images (US), Inc. ("Getty"), Sands' exclusive agent for licensing his photographs at that time.  Id. ¶¶ 15, 18.   On October 6, 2016, Evolve Media, LLC paid $43.92 to license a group of the photographs (nine total) taken by Sands on the set of The Punisher.  Declaration of Eleanor M. Lackman ("Lackman Decl.") Ex. 3.  No other entities licensed the photographs from Getty, and Sands does not recall ever negotiating any licenses directly for the photographs.  Id. ¶ 19.  Thus, Sands' sole profit from the license of the photographs came from Evolve Media, LLC, who licensed the photographs as a set.  Id. ¶ 18.  Sands admits that online-only uses of his photographs are "very minor" to him, and he does not

2

"really care about dealing with them."  Lackman Decl. Ex. 1 at 129:17–129:24.

Sands registered the photographs he submitted to Getty with the United States Copyright Office, by paying a one-time fee, under the title "Group Registration of Published Photographs Steve Sands; 2016; all published 9/22/16-11/16/16; 739 Photographs" (the "Group Registration"), along with over 700 other, unrelated photographs, and was given registration number VA 2-024-098, which has an effective date of registration of November 28, 2016. SUMF ¶ 16.  The photographs were registered together as part of the Group Registration, not as independent works.  *Id.* ¶ 17.

CBSi publishes GameSpot ("GameSpot"), an internet publication accessible at www.gamespot.com.  *Id.* ¶ 1.

Entertainment news writers are aware of a longstanding entertainment industry practice of publicizing television shows and films by circulating photographs from the set of a production (commonly referred to as "handouts" or "publicity stills") to be used by the press for free in order to create "buzz" so that people would want to see the studios' recent and upcoming movies and television shows.  *Id.* ¶ 5.  On October 7, 2016, Dan Auty, a freelance writer and independent contractor for GameSpot, posted an article entitled "New Punisher Images Reveal Return of Key Daredevil Character" on GameSpot (the "Punisher Article").  *Id.* ¶ 6.  At the time of the publication of the Punisher Article, Auty believed that when a studio posts photographs taken on a set, they do so to get the word out about the television show, and, so long as the images do not bare any restrictions on reuse or credit to a photographer and/or licensing agency, the photographs are available and intended for the media to republish in connection with reporting about the television show.  *Id.* ¶ 7.

To illustrate the Punisher Article, which reported on production of the television show in

New York, and discussed the fact that "more pictures of the production ha[d] emerged, in addition to some casting news," Auty included six photographs from the production – one in the article itself, and five in a gallery accompanying the article – all of which contained "COMINGSOON.NET" watermarks (the "Watermark"). *Id.* ¶ 8. The photographs did not credit a photographer, and no restrictions on their use was presented. *Id.* ¶ 9. Auty believed that his use was consistent with the use of press handouts, and thus was with consent and legally permissible, and at no time did he believe or have any reason to believe that this use of these photographs infringed anyone's copyright. *Id.* ¶ 10. Because the photographs bore the Watermark, which consisted of a URL to "comingsoon.net," Auty included a link to the home page of the website www.comingsoon.net in the body of the Punisher Article. *Id.* ¶ 11.

Although Sands claims to regularly monitor use of his photographs online, and he claims to have seen widespread unauthorized use of the photographs shortly after they were taken, Sands never sent a takedown notice to CBSi, or otherwise asked that the Photographs be removed, or that credit and restrictions be added. *Id.* ¶ 15. Both Auty and CBSi first became aware that Sands had a claim to ownership of five of the photographs used in the Punisher Article (the "Photographs") upon learning about the filing of this lawsuit in August 2018. *Id.* ¶ 13.

In the Complaint, Sands treats the Photographs as a unified whole. *Id.* ¶ 20. The Photographs are all annexed to the Complaint in one exhibit, and he does not identify the individual photographs themselves with any particularity. *Id.* Sands cannot point to a single instance where the Photographs were not used as a set. *Id.* ¶ 18.

## ARGUMENT

Summary judgment on a particular claim or defense is warranted where the moving party shows that "there is no genuine dispute as to any material fact" and that it "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). While the burden of showing that there is no genuine issue of material fact is on the moving party, the "moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223–24 (2d Cir. 1994). For instance, "[w]hen no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment [in favor of the movant] is proper." *Id.* at 1224.

When opposing a motion for summary judgment, "a party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)) ("[M]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist."). "Only disputes over 'facts that might affect the outcome of the suit under the governing law' will preclude a grant of summary judgment." *Yi Fu Chen v. Spring Tailor, L.L.C.*, No. 14 Civ. 218 (PAE), 2015 WL 3953532, at *4 (S.D.N.Y. June 29, 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

While "'generally speaking, summary judgment is not a tool well suited to determining willfulness,' . . . 'the summary judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion.'" *Ferdman v. CBS Interactive Inc.*, 342 F. Supp. 3d 515, 543 (S.D.N.Y. 2018) (quoting

*Young-Wolff v. John Wiley & Sons, Inc.*, No. 12 Civ. 5230 (JPO), 2016 WL 154115, at *10 (S.D.N.Y. Jan. 12, 2016); *Res. Developers, Inc. v. Statue of Liberty-Ellis Island Found., Inc.*, 926 F.2d 134, 141 (2d Cir. 1991)).  Indeed, the Second Circuit has confirmed that it is permissible to dispose of a case or issue on summary judgment when the mental state is at issue "where there are sufficient undisputed material facts on the record to make the question appropriate for summary judgment."  *Lipton v. Nature Co.*, 71 F.3d 464, 472 (2d Cir. 1995); *see also HarperCollins Publishers LLC v. Open Rd. Integrated Media, LLP*, 58 F. Supp. 3d 380, 388 (S.D.N.Y. 2014) ("At the summary judgment stage, the court may resolve the issue of willfulness[.]").

# I.   PLAINTIFF IS NOT ENTITLED TO ENHANCED DAMAGES FOR WILLFUL INFRINGEMENT[1]

In the event that Sands is able to show that CBSi's use of the Photographs was not permissible – which CBSi does not concede – the undisputed record demonstrates that he would not be entitled to recover enhanced statutory damages for willful infringement.

Under the Copyright Act, a plaintiff may seek to recover "instead of actual damages and profits, an award of statutory damages for all infringements involved in the action," in a range starting at $750 and capped at "a sum of not . . . more than $30,000" per work infringed.  17 U.S.C. § 504(c)(1). The statute provides that the court may "increase the award of statutory damages to a sum of not more than $150,000" in cases where a copyright owner proves "that infringement was committed willfully."  *Id.* § 504(c)(2).  Sands has not come forward with any evidence of willful infringement by GameSpot, nor will he be able to do so.

---

[1] CBSi is not conceding liability at this stage but only raises the willfulness issue because the record is so clear that there is no genuine issue of material fact that there is no willfulness.

The Second Circuit has instructed that "willfully" means that, at the time the infringing act occurred, the infringer must have had "actual or constructive knowledge" that its actions constituted infringement.  *See, e.g.*, *Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*, 807 F.2d 1110, 1115 (2d Cir. 1986).  Although knowledge of infringement may be proven inferentially through conduct that demonstrates "[r]eckless disregard of the copyright holder's rights," *see Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1010 (2d Cir. 1995) (citations omitted); *see also Lipton*, 71 F.3d at 472 (2d Cir. 1995), a finding of such "reckless disregard" requires evidence that *the infringer himself harbored actual doubts about his rights* to make use of the work, and yet proceeded to do so without investigating further.  *See Island Software & Computer Serv. Inc. v. Microsoft Corp.*, 413 F.3d 257, 263 (2d Cir. 2005) (without proof of actual knowledge of infringement, copyright owner must demonstrate "willful blindness" by infringer to be eligible for enhanced statutory damages).

The standard for assessing willfulness is subjective.  Thus, multiple courts have instructed that "one who has been notified that his conduct constitutes copyright infringement, but who reasonably and in good faith believes the contrary, is not 'willful' for these purposes." *Princeton Univ. Press v. Mich. Document Servs., Inc.*, 99 F.3d 1381, 1392 (6th Cir. 1996) (quoting 3 Melvin B. Nimmer & David Nimmer, *Nimmer on Copyright* § 14.04[B][3] (1996)); *see*, *e.g.*, *Branch v. Ogilvy & Mather, Inc.*, 772 F. Supp. 1359, 1364 (S.D.N.Y. 1991) ("One defense to an allegation of willfulness is the defendant's reasonable and good faith belief that its actions do not constitute copyright infringement. Thus, even if defendant continues to infringe after having been notified of its allegedly illegal actions, the infringement is not necessarily intentional." (citation omitted)).

7

*Ferdman*, which was also litigated by the Liebowitz firm, is instructive.  342 F. Supp. 3d at 543.  In that case, plaintiff submitted "no evidence that [CBSi] used Plaintiff's photographs with knowledge of Plaintiff's copyright or with reckless disregard or willful blindness as to his rights[,]" and summary judgment was granted in favor of CBSi on the issue of willfulness.  *Id.* Notably, the photograph at issue in *Ferdman* was used by Auty – whose conduct was considered non-willful – on GameSpot within two weeks of his use of the Photographs at issue here.  *Id.* at 521.

Here, the record is devoid of any evidence showing that GameSpot believed that its uses of the Photographs were infringing.  To the contrary, the evidence demonstrates that GameSpot acted consistently with industry practice and its good-faith belief that the photographs at issue were publicity still handouts made expressly available by the studio for media use.  SUMF ¶¶ 5, 7, 9.  Even if that belief turns out to have been wrong, it was fairly held by GameSpot at the time the uses were made.  *Id.*

Because Sands has come forward with no evidence that GameSpot harbored any doubts about its right to make the challenged uses, he has presented no genuine issue to prevent entry of judgment against him foreclosing any award of enhanced statutory damages for willful infringement.  Even though Dan Auty and others were disclosed, Sands elected not to take any testimony from them, and none of the witnesses are within the jurisdiction of the court for trial, as none are in New York.  Lackman Decl. ¶ 5.  Sands advocated for a short discovery schedule yet never noticed any depositions, much less took any, which is telling as to his view of what the witnesses would say.  *Id.* ¶ 6.  Therefore, Sands has no conceivable basis to argue that there is a genuine issue of fact for trial.

## II.   THE PHOTOGRAPHS CONSTITUTE A SINGLE WORK FOR THE PURPOSE OF STATUTORY DAMAGES, LIMITING PLAINTIFF'S RECOVERY (IF ANY)

Assuming that Plaintiff will attempt to recover statutory damages, he cannot recover more than a single statutory damage award because he offered the Photographs for licensing and publication together as a single work.

As noted above, a plaintiff may elect to receive statutory damages at any point prior to final judgment "for all infringements involved in the action, with respect to any one work, for which any one infringer is liable . . . in a sum of not less than $750 or more than $30,000 as the court considers just."  17 U.S.C. § 504(c)(1).  The Copyright Act makes clear that it "allows only one award of statutory damages for any 'work' infringed."  *Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 140 (2d Cir. 2010).  However, the Copyright Act does not define "work."  *See* 17 U.S.C. § 101; *UMG Recordings, Inc. v. MP3.COM, Inc.*, 109 F. Supp. 2d 223, 224 (S.D.N.Y. 2000) (Rakoff, J.).

To determine whether works will be treated as a single work for statutory damage purposes, the Second Circuit considers how the plaintiff/copyright holder issued the works – separately, or together as a unit.  *Bryant*, 603 F.3d at 141.  In *Twin Peaks Productions, Inc. v. Publications International, Ltd.*, for example, the Second Circuit considered that plaintiff had issued each episode of a television series sequentially, each at a different time, in determining that plaintiff was entitled to receive a separate award of statutory damages for each episode.  996 F.2d 1366, 1381 (2d Cir. 1993).  That case was distinguished by *Bryant*, where copyright holders who issued their works as single registration compilations were only entitled to receive statutory damages on a per-album basis.  603 F.3d at 141.  The circumstances of Sands' registration of the Photographs is more analogous to *Bryant*.

9

With regard to photographs registered in the same application, which are licensed and published together, the Southern District routinely has awarded only one statutory damage award. *See, e.g.*, *FameFlynet, Inc. v. Shoshanna Collection, LLC*, 282 F. Supp. 3d 618, 622, 626-27 (S.D.N.Y. 2017) (Sweet, J.) (awarding a single statutory damages award in the amount of $750 to the plaintiff for defendant's use of multiple photographs of actress Emmy Rossum); *Barcroft Media, Ltd. v. Coed Media Grp., LLC*, 297 F. Supp. 3d 339, 360-61 (S.D.N.Y. 2017) (awarding one statutory damages award in the amount of $750 for defendant's use of multiple images of human interest story subjects Janet and Jane Horrocks).   Here, the Photographs should be treated as a single work for statutory damage purposes because of how Sands issued and treated the Photographs.   He registered the Photographs together as a set (and asserted that they were published on the same date) as part of a group registration of published photographs. SUMF ¶¶ 16–17.   Plaintiff's sole profit from the license of the Photographs came from Evolve Media, LLC, which licensed the Photographs as a set.   *Id.* ¶ 18.   GameSpot displayed the Photographs together as a set on its website.   Cplt. ¶ 10, Ex. C.   At all points in the process – from registration, to offering for licensing and distribution, to publication – Sands held out the Photographs a single unit, never as separate works.   *See Gross v. NYP Holdings, Inc.*, No. 06 Civ. 7863 (RMB) (JCF), 2007 WL 1040033, at *3 (S.D.N.Y. Apr. 4, 2007) (finding that group registration of published photos qualified as a single work because plaintiff presented evidence that the photos were offered as a "single unit of publication" simultaneously to several media companies).   Sands even presented the Photographs as a unitary whole in his Complaint.   SUMF ¶ 20; *see UMG Recordings*, 109 F. Supp. 2d at 224 (noting that plaintiffs focused on their "CDs," not individual songs, in the Complaint and on their prior motion for summary judgment, "implying that each such CD was the relevant 'work' unit for purposes of this case").   Here, the

Photographs are all annexed to the Complaint in one exhibit, and Sands does not number the Photographs, or otherwise identify the individual photographs themselves with any particularity. SUMF ¶ 20.

Accordingly, given that Plaintiff, through his own conduct, considered the Photographs to be a set, only viably registered and/or licensed as a unitary whole, the Court should consider the Photographs as a single work for the purposes of any statutory damages award.

<u>**CONCLUSION**</u>

For the reasons stated herein, to the extent that Sands may be able to demonstrate liability for any of his claims – which CBSi does not concede – he may not recover enhanced statutory damages for willful infringement because the record conclusively demonstrates that GameSpot had a good faith belief that the images at issue were available for the uses made by it. Additionally, Sands' purported entitlement to statutory damages should be limited to one award for the set of the Photographs at issue here, since they were, at all times, considered a single unit.

Accordingly, CBSi's motion for partial summary judgment should be granted in its entirety.

Respectfully Submitted,

Dated: January 25, 2019       COWAN, DeBAETS, ABRAHAMS
       New York, New York       & SHEPPARD LLP


By:  /s/ Eleanor M. Lackman
       Eleanor M. Lackman
       Lindsay R. Edelstein
       Sara Gates
       41 Madison Avenue, 38th Floor
       New York, New York 10010
       Tel.: (212) 974-7474
       Fax: (212) 974-8474
       ELackman@cdas.com
       LEdelstein@cdas.com
       SGates@cdas.com

*Attorneys for Defendant CBS Interactive Inc.*

12