UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEVE SANDS,<br><br>      Plaintiff,<br><br> - against –<br><br><br>CBS INTERACTIVE, INC.<br><br>      Defendant. | 1:18-cv-07345 (JSR)<br><br><br>ECF Case |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iv

PRELIMINARY STATEMENT................................................................................................ 1

STATEMENT OF FACTS ........................................................................................................ 2

ARGUMENT ............................................................................................................................. 2

POINT I:   NO REASONABLE JUROR COULD FIND THAT CBSI'S INFRINGEMENT
WAS NON-WILLFULL OR INNOCENT........................................................... 2

A. FOR PURPOSES OF EVALUATING WILLFULNESS, A DEFENDANT'S STATE-OF-MIND IS
DETERMINED BY REFERENCE TO BOTH HIS SUBJECTIVE BELIEF AND WHETHER SUCH BELIEF
WAS OBJECTIVELY REASONABLE UNDER THE CIRCUMSTANCES ........................................... 3

B. AUTY'S SUBJECTIVE BELIEF (EVEN IF CREDITED AT FACE VALUE) IS SO OBJECTIVELY
UNREASONABLE THAT THE COURT'S FINDING OF WILLFUL BLINDNESS IS WARRANTED ....... 5

1.   Given that Auty Cannot Remember Basic Facts Surrounding the Infringement, His
Speculation Concerning His Subjective Beliefs Should be Not be Admissible ................... 5

2.   Auty's Claim That He Never Saw Sands' Credit on the ComingSoon.Net Website
Means – At the Very Least – That He Just Didn't Care to Look ......................................... 7

3.   According to Defendant's Answers to Plaintiff's Interrogatories, Auty's Contributions
to the GameSpot Website Were Supervised by Randolph Ramsay, the Editor-in-Chief ....... 8

4.   The Ferdman Case is Distinguishable Because Ferdman Presented No Evidence in
Support of Willfulness; He Simply Made a Constitutional Argument ................................. 9

C.   AS A MATTER OF LAW, EVIDENCE OF CUSTOM AND PRACTICE IS NOT ADMISSIBLE IN
COPYRIGHT CASES TO MITIGATE DEFENDANT'S DAMAGES ...................................................... 9

D.   IN OPPOSITION TO DEFENDANT'S MOTION, PLAINTIFF RESPECTFULLY INCORPORATES BY
REFERENCE ALL ARGUMETNS AND EVIDENCE SET FORTH AND PROFFERED IN HIS PRIMARY
MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF WILLFULNESS ...................................... 12

POINT II:   DEFENDANT'S ATTEMPT TO LIMIT SANDS' RECOVERY TO ONE
STATUTORY DAMAGES AWARD IS MERITLESS ..................................... 12

A.   SANDS' PHOTOGRAPHS WERE REGISTERED AS PART OF A GROUP REGISTRATION AND
THEREFORE QUALIFY AS SEPARATE "WORKS" FOR PURPOSES OF AWARDING STATUTORY
DAMAGES ................................................................................................................................ 12

B.    Sands' 098 Registration Is Not A "Compilation" .................................................. 15

C.    Defendant's Argument Rests on Caselaw Involving "Compilations"............... 17

D.    Defendant's Argument is Also Factually Groundless Because Sands
Marketed the Photographs Individually – Not As a Set or Single Unit ................... 18

**CONCLUSION** ...................................................................................................... **20**

## TABLE OF AUTHORITIES

### CASES

*Agence France Presse v.  Morel*,
769 F. Supp.2d 295, 305–06 (S.D.N.Y. 2011)------------------------------------------------------------ 7

*Agence France Presse v. Morel*,
934 F. Supp. 2d 547, 570 (S.D.N.Y. 2013)------------------------------------------------------------- 3

*Barcroft Media, Ltd. V. Coed Media Group, LLC*,
297 F. Supp. 3d 339, 360-61 (S.D.N.Y. 2017)------------------------------------------------------18

*Bryant v. Media Right Prods., Inc.*,
603 F.3d 135, 140 (2d Cir. 2010) ------------------------------------------------------------------17

*Castle Rock Entm't v. Carol Pub. Group, Inc.*,
955 F.Supp. 260, 267 (S.D.N.Y.1997) --------------------------------------------------------------- 3

*Childress v. Taylor*,
798 F.Supp. 981, 994 (S.D.N.Y.1992) --------------------------------------------------------------- 4

*Dallal v. New York Times Co.*,
352 F. App'x 508, 512 (2d Cir. 2009)----------------------------------------------------------------10

*Dietle v. Miranda*,
2017 WL 387253, at *4 (E.D. Cal. Jan. 26, 2017), *appeal dismissed*, No. 17-15401, 2017 WL
3923752 (9th Cir. July 13, 2017)------------------------------------------------------------------ 6

*DiStiso v. Cook*,
691 F.3d 226, 230 (2d Cir. 2012) ------------------------------------------------------------------- 6

*Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*,
307 F.3d 197, 211 (3d Cir.2002) -------------------------------------------------------------------10

*EMI Entm't World, Inc. v. Karen Records, Inc.*,
806 F. Supp. 2d 697, 701 (S.D.N.Y. 2011), vacated on other grounds, No. 05-civ-390 (LAP),
2013 WL 2480212 (S.D.N.Y. June 10, 2013)---------------------------------------------------- 8

*EMI Entm't World, Inc. v. Karen Records, Inc.*,
No. 05 Civ. 390(RJH)(JCV), 2011 WL 3795037, at *5–6 (S.D.N.Y. Aug. 24, 2011) ----------- 3

*Fallaci v. New Gazette Literary Corp.*,
568 F. Supp. 1172 (2d Cir. 1983) ------------------------------------------------------------------- 8

iv

*FameFlynet, Inc. v. Shoshanna Collection, LLC,*
   282 F. Supp. 3d 618, 626 (S.D.N.Y. 2017), *appeal withdrawn*, No. 18-633, 2018 WL 2740233
   (2d Cir. Mar. 20, 2018)------------------------------------------------------------------------------18

*Famous Music Corp. v. Seeco Records, Inc.,*
   201 F.Supp. 560, 566 (S.D.N.Y.1961) ---------------------------------------------------------------10

*Ferdman v. CBS Interactive Inc.,*
   342 F.Supp. 3d 515 (S.D.N.Y. 2018)----------------------------------------------------------------- 9

*Gamma Audio & Video, Inc. v. Ean-Chea,*
   11 F.3d 1106, 1117 (1st Cir. 1993) -----------------------------------------------------------------13

*Gross v. NYP Holdings, Inc.,*
   No. 06 Civ. 7863 (RMB) (JCF), 2007 WL 1040033, at *3 (S.D.N.Y. Apr. 4, 2007)-----------18

*In re Aimster Copyright Litigation,*
   334 F.3d 643, 650 (7th Cir.2003) ------------------------------------------------------------------- 2

*Island Software & Computer Serv., Inc. v. Microsoft Corp.,*
   413 F.3d 257, 264 (2d Cir. 2005) ------------------------------------------------------------------- 2

*John Wiley & Sons, Inc. v. Book Dog Books, LLC,*
   No. 13-cv-816 (WHP), 2016 WL 5092593, at *4 (S.D.N.Y. Sept. 19, 2016)------------------- 4, 8

*Latin Am. Music Co., Inc. v. Spanish Broad. Sys., Inc.,*
   232 F. Supp. 3d 384, 393 (S.D.N.Y. 2017), *aff'd*, 738 F. App'x 722 (2d Cir. 2018)-------------- 4

*Leveyfilm, Inc. v. Fox Sports Interactive Media, LLC,*
   999 F. Supp. 2d 1098, 1102-03 (N.D. Ill. 2014)---------------------------------------------------- 7

*Lipton v. Nature Co.,*
   71 F.3d 464, 472 (2d Cir.1995)---------------------------------------------------------------------- 2

*Marshall v. Marshall,*
   No. 08 CV 1420 LB, 2012 WL 1079550, at *25 (E.D.N.Y. Mar. 30, 2012), *aff'd*, 504 F. App'x
   20 (2d Cir. 2012) ------------------------------------------------------------------------------------ 4

*Matthew Bender & Co. v. W. Pub. Co.,*
   158 F.3d 674, 680 (2d Cir. 1998) ------------------------------------------------------------------15

*N.A.S. Import Corp. v. Chenson Enters., Inc.,*
   968 F.2d 250, 252 (2d Cir.1992) -------------------------------------------------------------------- 2

*Rossi v. Motion Picture Ass'n of Am.,*
   391 F.3d 1000, 1005 (9th Cir. 2004) ---------------------------------------------------------------- 4

*Senisi v. John Wiley & Sons, Inc.,*
  No. 13CV3314-LTS-AJP, 2015 WL 7736545, at *3 (S.D.N.Y. Nov. 30, 2015)-----------------15

*Siegel v. Warner Bros. Ent'mt Inc.,*
  658 F. Supp. 2d 1036, 1069 (C.D. Cal. 2009) -----------------------------------------------10

*Silverstein v. Penguin Putnam, Inc.,*
  522 F. Supp. 2d 579, 599 (S.D.N.Y. 2007)-------------------------------------------------16

*Thron v. HarperCollins Publishers, Inc.,*
  No. 01 CIV.5437(JSR), 2002 WL 1733640, at *1 (S.D.N.Y. July 26, 2002) ---------------------19

*Twin Peaks Prods., Inc. v. Publ'ns. Int'l Ltd.,*
  996 F.2d 1366, 1372 (2d Cir.1993) ---------------------------------------------------------- 3

*United States v. Wallen,*
  874 F.3d 620, 629 (9th Cir. 2017)----------------------------------------------------------- 4

*Weinstein Co. v. Smokewood Entm't Grp., LLC,*
  664 F.Supp.2d 332, 348 (S.D.N.Y.2009) ---------------------------------------------------10

*Yellow Pages Photos, Inc. v. Ziplocal, LP,*
  795 F.3d 1255, 1279–80 (11th Cir. 2015) -------------------------------------------------16

*Yurman Design, Inc. v. PAJ, Inc.,*
  262 F.3d 101, 112 (2d Cir.2001) ------------------------------------------------------------ 2

### S<small>TATUTES</small>

17 U.S.C. § 107------------------------------------------------------------------------------- 1

17 U.S.C. § 504(c) --------------------------------------------------------------------------- 4

17 U.S.C. § 512(c)(3)(A)(v)------------------------------------------------------------------ 4

17 U.S.C. § 408(c)(1)-----------------------------------------------------------------------12

17 U.S.C.S. § 103(a)------------------------------------------------------------------------15

17 U.S.C.S. § 409(9)------------------------------------------------------------------------15

**OTHER AUTHORITIES**

U.S. Copyright Office, Group Registration of Published Photographs , FL-124 (2012)-----------14


**RULES**

Fed. R. Civ. P. 56(c)(4) -------------------------------------------------------------------------------- 5


**TREATISES**

5 *Nimmer on Copyright* § 14.04(B)(2)(a)------------------------------------------------------------ 4

William F. Patry, PATRY ON COPYRIGHT § 17:92 ------------------------------------------------------13


**REGULATIONS**

37 C.F.R. § 202.3(b)(3)(A) ------------------------------------------------------------------------------13

GROUP REGISTRATION OF PHOTOGRAPHS,
83 F.R. 2542-01, 2018 WL 451975, at *2545 (January 18, 2018) --------------------------------------13

Plaintiff Steve Sands ("Plaintiff" or "Sands") respectfully submits this memorandum of law in opposition to Defendant CBS Interactive, Inc. ("Defendant" or "CBSi")'s motion for partial summary judgment on the issue of willfulness and statutory damages.

## PRELIMINARY STATEMENT

This is a copyright infringement action involving a largescale media company's unauthorized use of copyrighted photographs of celebrity actors Jon Bernthal and Deborah Ann Woll on the set of the television series "The Punisher" (the "Photographs"). The series is produced by Marvel Studios/ABC Studios and distributed by Netflix.

Without conceding liability for copyright infringement, Defendant CBS Interactive, Inc., has filed a half-baked motion for partial summary judgment seeking to limit the amount of statutory damages to be awarded. Significantly, CBSi failed to move on any of its affirmative defenses to liability, such as fair use under 17 U.S.C. § 107, demonstrating its lack of confidence in the merits of such defenses.

CBSi seeks to limit damages on two grounds. First, it requests a determination that CBSi's infringement was non-willful based on nothing more than the self-serving testimony of a independent contractor, Dan Auty, who doesn't remember any of the circumstances surrounding the infringement. Yet, Auty speculates – without any hard evidence or objectively reasonable basis to support such belief - that the Photographs at issue were "handouts" or "publicity stills" issued by Marvel Studios or Netflix. Second, CBSi advances a meritless argument - wholly unsupported by caselaw or the factual record - that Plaintiff is entitled to one statutory damages award for every photograph included in his group registration of photos. Both arguments are lacking in merit. Accordingly, Defendant's motion should be denied in its entirety.

**STATEMENT OF FACTS**

Plaintiff respectfully incorporates by reference his statement of uncontroverted facts as set forth in his principal memorandum of law in support of Plaintiff's motion for summary judgment [Dkt. 18, pp. 10-12 of 33].

**ARGUMENT**

**POINT I:      NO REASONABLE JUROR COULD FIND THAT CBSi'S INFRINGEMENT WAS NON-WILLFULL OR INNOCENT**

To prove "willfulness" under the Copyright Act, the plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of "reckless disregard" for, or "willful blindness" to, the copyright holder's rights. *See In re Aimster Copyright Litigation,* 334 F.3d 643, 650 (7th Cir.2003); *Lipton v. Nature Co.,* 71 F.3d 464, 472 (2d Cir.1995); *N.A.S. Import Corp. v. Chenson Enters., Inc.,* 968 F.2d 250, 252 (2d Cir.1992); *see also Yurman Design, Inc. v. PAJ, Inc.,* 262 F.3d 101, 112 (2d Cir.2001) ("Willfulness in this context means that the defendant recklessly disregarded the possibility that its conduct represented infringement."

If evidence of actual knowledge is not available, "a plaintiff can still prove willfulness by proffering circumstantial evidence that gives rise to an inference of willful conduct." *Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 264 (2d Cir. 2005) (citing *Knitwaves, Inc. v. Lollytogs Ltd.,* 71 F.3d 996, 1010 (2d Cir.1995) (noting that "[k]nowledge of infringement may be constructive rather than actual; that is, 'it need not be proven directly but may be inferred from the defendant's conduct' ") (*quoting N.A.S. Import Corp. v. Chenson Enters., Inc.,* 968 F.2d 250, 252 (2d Cir.1992)).

In evaluating an infringer's willful state of mind, courts look to factors such as whether the infringer was on notice that the copyrighted work was protected, *Castle Rock Entm't v. Carol Pub. Group, Inc.,* 955 F.Supp. 260, 267 (S.D.N.Y.1997); whether the infringer had received warnings of the infringements, *Twin Peaks Prods., Inc. v. Publ'ns. Int'l Ltd.,* 996 F.2d 1366, 1372 (2d Cir.1993)); as well as whether the infringer had experience with previous copyright ownership, prior lawsuits regarding similar practices, or work in an industry where copyright is prevalent, *EMI Entm't World, Inc. v. Karen Records, Inc.,* No. 05 Civ. 390(RJH)(JCV), 2011 WL 3795037, at *5–6 (S.D.N.Y. Aug. 24, 2011); *see also Agence France Presse v. Morel*, 934 F. Supp. 2d 547, 570 (S.D.N.Y. 2013) (considering "whether the infringer was on notice that the copyrighted work was protected; whether the infringer had received warnings of the infringements; [and] whether the infringer had experience with previous copyright ownership, prior lawsuits regarding similar practices, or work in an industry where copyright is prevalent" when evaluating defendant's willfulness (internal quotation marks omitted)).

## A.    FOR PURPOSES OF EVALUATING WILLFULNESS, A DEFENDANT'S STATE-OF-MIND IS DETERMINED BY REFERENCE TO BOTH HIS SUBJECTIVE BELIEF <u>AND</u> WHETHER SUCH BELIEF WAS OBJECTIVELY REASONABLE UNDER THE CIRCUMSTANCES

In its principal brief, Defendant argues that "the standard for assessing willfulness is subjective."  [D's Memo, Dkt. # 24, p. 11 of 16].  But Defendant misrepresents the standard adopted by courts in the Second Circuit.[1]  An infringer may mitigate damages by showing that he "was not aware and had no reason to believe that his . . . acts constituted an infringement." *Marshall v. Marshall*, No. 08 CV 1420 LB, 2012 WL 1079550, at *25 (E.D.N.Y. Mar. 30,

---

[1] Indeed, to support this flawed proposition, Defendant cites to the law of the Sixth Circuit*, Princeton Univ. Press v. Mich. Document Servs., Inc.*, 99 F.3d 1381, 1392 (6th Cir. 1996) and a Southern District decision, *Branch v. Ogilvy & Mather, Inc.,* 772 F. Supp. 1359, 1364 (S.D.N.Y. 1991).  However, both cases state that any subjective good faith belief  must be "reasonable" (i.e., an objective standard is controlling over any purported subjective belief).

3

2012), *aff'd*, 504 F. App'x 20 (2d Cir. 2012) (citing 17 U.S.C. § 504(c)(1)-(c)(2)).  However, he

must show <u>both</u> (1) a subjective good faith belief that his conduct was innocent, <u>and</u> (2) that his

belief was objectively reasonable under the circumstances.  *Id.* (*citing Childress v. Taylor,* 798

F.Supp. 981, 994 (S.D.N.Y.1992) (finding that the infringer's subjective belief that she was a co-

author was not enough to establish her innocence)); *see also Latin Am. Music Co., Inc. v.*

*Spanish Broad. Sys., Inc.*, 232 F. Supp. 3d 384, 393 (S.D.N.Y. 2017), *aff'd*, 738 F. App'x 722 (2d

Cir. 2018) (same); *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, No. 13-cv-816 (WHP),

2016 WL 5092593, at *4 (S.D.N.Y. Sept. 19, 2016); 5 *Nimmer on Copyright* § 14.04(B)(2)(a).[2]

Accordingly, Defendant's argument that in order to avoid a finding a willfulness, it need

only establish that CBSi harbored a good faith belief that its actions were non-infringing should

be rejected.  Such was the case in *Marshall v. Marshall*, where the court found defendant liable

for willful infringement on grounds that defendant's subjective belief of non-infringing conduct

was objectively unreasonable:

> Even if defendant believed, incorrectly, that as a joint author he could not infringe
> plaintiff's copyright, or that copyrighting a compilation of the videos gave him free reign
> to use plaintiff's previously copyrighted works, he at least recklessly disregarded the

---

[2] Black's Law Dictionary defines "good faith" as a state of mind consisting in "honesty in belief or purpose" or "absence of intent to defraud or to seek unconscionable advantage." *Good Faith*, Black's Law Dictionary (10th ed. 2014). "A good faith belief defense therefore ordinarily depends on a defendant's subjective state of mind, and the defense is not automatically precluded by evidence that the state of mind was objectively unreasonable." *United States v. Wallen*, 874 F.3d 620, 629 (9th Cir. 2017); *accord Rossi v. Motion Picture Ass'n of Am.*, 391 F.3d 1000, 1005 (9th Cir. 2004) ("A copyright owner cannot be liable [under 17 U.S.C. § 512(c)(3)(A)(v), which enables copyright owners to act on a 'good faith belief,'] simply because an unknowing mistake is made, even if the copyright owner acted unreasonably in making the mistake.").  Under the interpretive canon of *expressio unius est exclusio alterius,* if good faith belief alone were a defense to willfulness, then Congress would have expressly incorporated that term into section 504(c) of the Act as it did in section 512(c)(3)(A)(v).  But section 504(c) makes no reference to the term "good faith."  In any event, the aforementioned caselaw in this Circuit makes clear that any subjective good faith belief proffered by the infringer must be objectively reasonable under the circumstances.

possibility that his belief was incorrect. He certainly had reason to believe that his actions could constitute infringement; any subjective belief otherwise was not objectively reasonable. I therefore find that defendant's conduct was willful, and that plaintiff is eligible for an increased amount of statutory damages.

*Marshall*, 2012 WL 1079550, at *25.

**B.** **AUTY'S SUBJECTIVE BELIEF (EVEN IF CREDITED AT FACE VALUE) IS SO OBJECTIVELY UNREASONABLE THAT THE COURT'S FINDING OF WILLFUL BLINDNESS IS WARRANTED**

Based solely on the two-page declaration of Dan Auty, a freelance writer and independent contractor of CBSi who authored the GameSpot Article which infringed the Photographs, Defendant argues that Auty acted with a subjective good faith belief that his conduct was non-infringing.  Defendant primarily argues that Auty believed the Photographs were "publicity still handouts made expressly available by the studio for media use." [D's Memo, Dkt. #24, p. 12 of 16]

As demonstrated below, regardless of whether the Court credits Mr. Auty's subjective belief at face value, or whether the Court finds that his description of the event lacks credibility, the conclusion should be the same: CBSi acted with willful blindness or in reckless disregard of Plaintiff's rights when it expropriated the Photographs from a competing entertainment news outlet and republished them on GameSpot without Sands' authorization or attribution.

**1. Given that Auty Cannot Remember Basic Facts Surrounding the Infringement, His Speculation Concerning His Subjective Beliefs Should be Not be Admissible**

Rule 56(c)(4) of the Federal Rules of Civil Procedure states that affidavits and declarations submitted for or against a summary-judgment motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4); *see also* Fed.R.Evid. 602.  "Statements in affidavits that are legal conclusions, <u>speculative assertions</u>, or

statements of hearsay evidence do not satisfy the standards of personal knowledge, admissibility, and competence required by 56(c)(4)." *Dietle v. Miranda*, 2017 WL 387253, at *4 (E.D. Cal. Jan. 26, 2017), *appeal dismissed*, No. 17-15401, 2017 WL 3923752 (9th Cir. July 13, 2017) (underline added); *accord DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (on summary judgment, "[a] court cannot credit . . . merely speculative . . .  assertions").

According to Auty's declaration, he has no recollection of where he sourced the Photographs [Auty Declr. ¶¶ 6, 8]; no idea who owned or authored the Photographs at the time he purportedly wrote the GameSpot Article and republished the Photographs on the GameSpot Website [*Id.* at ¶ 7]; and no recollection of even writing the GameSpot Article [*Id.* at ¶ 8].   Auty proffers no testimony as to whether he conducted any due diligence concerning the rightful copyright owner of the Photograph.  He proffers no testimony as to whether he had any training from CBSi or his supervisor concerning the proper licensing of photographs.

Moreover, Auty's declaration is rife with speculative assertions.  For example, he testifies: "I would never add a watermark to a photograph" [Auty Declr. ¶ 5]; "I believe I did not see a photographer credit or restrictions on use because I would not have used the Photograph if I had" [*Id.* at ¶ 8]; "I would not have used the Photographs unless I believed that the source was authorized to circulate publicity photographs relating to the production of the "the Punisher" [*Id.*] (underlines added).  Pursuant to Rule 56(c)(4), none of these speculative assertions or ruminations should be admissible on summary judgment. *DiStiso*, 691 F.3d at 230.

In short, Auty's memory of the infringement is a blur and his testimony largely consists of what he would have done if he could only remember the events in question.  If Auty cannot remember basic facts and circumstances surrounding the infringement, and given that Defendant has failed to produce any "hard evidence" (i.e., documents) in support of Auty's claims, his

purported subjective belief of what transpired should be precluded pursuant to Rule 56(c)(4) or otherwise substantially discounted.

### 2. Auty's Claim That He Never Saw Sands' Credit on the ComingSoon.Net Website Means – At the Very Least – That He Just Didn't Care to Look

Although Mr. Auty does not remember much, he does testify that he included the Photographs in the GameSpot Article [Auty Declr. ¶ 9].  In connection with his own motion for summary judgment, Plaintiff has produced uncontradicted evidence that Steve Sands' attribution was clearly listed as a "gutter credit" in connection with each of the Photographs as they were displayed on the comingsoon.net website.  [Dkt. # 19-7, Ex. G to Sands Declr.]

Auty also concedes that the GameSpot Article contains a link to the www.comingsoon.net website and that each of the Photographs as republished to the GameSpot Website contained a "COMINGSOON.NET" watermark.  Thus, even though Auty claims not to remember whether he sourced the Photographs from the ComingSoon.net website [Auty Declr. at ¶ 6], the record demonstrates beyond the preponderance of evidence that he got them from the Comingsoon.net website.  But he claims that he does not believe he ever saw a photographer credit listed on the Photographs where they were initially displayed on the CominSoon.net website.  [Auty Declr. at ¶ 8]

Federal courts have typically discounted such testimony as it strains credulity for a journalist to miss such a key aspect of their job function.  Indeed, not even laypersons can claim such ignorance as a credible defense.  *See, e.g.*, *Agence France Presse v. Morel*, 769 F. Supp. 2d 295, 306-306 (S.D.N.Y. 2011) ("It is implausible that a viewer of Morel's photos would not understand the designations 'Morel' and 'by photomorel' appearing next to the images to refer to authorship."); *Leveyfilm, Inc. v. Fox Sports Interactive Media, LLC*, 999 F. Supp. 2d 1098, 1102-03 (N.D. Ill. 2014) ("[I]t is 'implausible' that a viewer of the record album would not understand

that the credit line 'Photography: Don Levey, Don Levey Studio' on the back of the album also referred to authorship of the photo on the cover of the album.").[3]

In short, if the Court credits Auty's testimony at face value, there can be only one inescapable conclusion: Auty acted with willful blindness by failing to check whether Sands' name was listed directly below the Photographs. He just didn't care. And when dealing with a media publisher whose profits depend on the exploitation of copyright materials, that's all Plaintiff needs to show in order to prove willfulness. *See, e.g., EMI Entm't World, Inc. v. Karen Records, Inc.*, 806 F. Supp. 2d 697, 701 (S.D.N.Y. 2011), vacated on other grounds, No. 05-civ-390 (LAP), 2013 WL 2480212 (S.D.N.Y. June 10, 2013); *Fallaci v. New Gazette Literary Corp.*, 568 F. Supp. 1172 (2d Cir. 1983).

### 3. According to Defendant's Answers to Plaintiff's Interrogatories, Auty's Contributions to the GameSpot Website Were Supervised by Randolph Ramsay, the Editor-in-Chief

Auty's declaration implies that he is the one responsible (and the only one responsible) for sourcing the Photographs and posting them on the GameSpot Website. [Declaration of Dan Auty, Dkt. #25 ("Auty Declr.")]  However, this assertion is contradicted by Defendant's answers to Plaintiff's first set of interrogatories, wherein Defendant asserted that Randolph Ramsay, Editor-in-Chief of the GameSpot Website, was the editor of the GameSpot Article in which the Photographs appeared. [Dkt. # 20-11, p. 7 of 12, Interrogatory #12].

---

[3] *Compare John Wiley & Sons, Inc. v. Book Dog Books, LLC*, No. 13CV816, 2016 WL 5092593, at *4 (S.D.N.Y. Sept. 19, 2016) (The defendant's "access" to an authentic copy of a work containing a proper copyright notice, 17 U.S.C. § 401(d), negates the inference that the defendant "was not aware and had no reason to believe" he was engaging in copyright infringement) *with Denenberg v. LED Techs., LLC*, No. 11-cv-3155, 2013 WL 2153290, at *2 (D. Colo. May 17, 2013) (electronics company publishing images on its website had no reason to consult the copyright holder's website, because the images were provided by a third-party marketer and lacked a "copyright, watermark, or other indication of ownership")

So either Mr. Ramsay as Editor-in-Chief played a direct part in posting the Photographs to the GameSpot Website or Mr. Ramsay was asleep at the wheel and played no supervisory role whatsoever.  Either way, the level of incompetence is so great in failing to follow basic licensing procedures that no reasonable juror could find that CBSi's conduct was non-willful or innocent.

### 4.   The *Ferdman* Case is Distinguishable Because Ferdman Presented No Evidence in Support of Willfulness; He Simply Made a Constitutional Argument

Defendant cites the case of *Ferdman v. CBS Interactive Inc.*, 342 F.Supp. 3d 515 (S.D.N.Y. 2018) for the proposition that Auty's subjective belief was sufficient to defeat a claim for willfulness.  But Defendant's reliance on *Ferdman* is misleading because Ferdman, who was represented by Plaintiff's counsel in this matter, never presented any factual evidence in opposition to CBSi's motion for summary judgment on the issue of willfulness.  Instead, Ferdman advanced a "bright-line" legal argument that district courts could not decide the question of willfulness on summary judgment because state-of-mind questions had to be reserved for the jury under the Seventh Amendment.  [*See* Ferdman's opposition brief to summary judgement, 17-cv-1317-PGG, Dkt. #43, p. 24 of 25].

The Liebowitz Law Firm no longer takes that position (as evidenced by Sands' motion for summary judgment in this case).  Moreover, unlike *Ferdman*, Plaintiff has proffered hard evidence and substantive argumentation in support of a finding of willfulness.  [Dkts. #18-20]

### C.   AS A MATTER OF LAW, EVIDENCE OF CUSTOM AND PRACTICE IS NOT ADMISSIBLE IN COPYRIGHT CASES TO MITIGATE DEFENDANT'S DAMAGES

Relying solely on the declaration of Mr. Auty, Defendant argues that "the evidence demonstrates that GameSpot acted consistently with industry practice" when Auty shoplifted the Photographs from ComingSoon.net.  [D's Memo, Dkt. #24, p. 12 of 16]  Auty testifies that "I

understood it to be a common practice of studios to release publicity photographs to the media for permissible republication to generate coverage about their projects . . . [Auty Declr. ¶ 4]

However, as this Court previously recognized, "evidence of custom and course of dealing cannot displace rights conferred by the copyright laws." *Palmer/Kane at* 575 (citing *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 211 (3d Cir.2002) ("A defense of industry custom and practice in the face of the protective provisions of the Copyright Act could undermine the purposes and objectives of the statute and reduce it to rubble."); *Weinstein Co. v. Smokewood Entm't Grp., LLC*, 664 F.Supp.2d 332, 348 (S.D.N.Y.2009) ("[N]otwithstanding plaintiff's claims about 'custom and practice' in the entertainment industry, federal copyright law dictates the terms by which an exclusive license can be granted."))*; see also Famous Music Corp. v. Seeco Records, Inc.,* 201 F.Supp. 560, 566 (S.D.N.Y.1961) ("Custom and usage may not be invoked to relieve defendant of the clear cut obligations imposed by the application of the statute.).[4]

Here, in light of the foregoing authorities, Auty's testimony concerning an alleged custom and practice of his republishing so-called "publicity handouts" received from "studios" is inadmissible.  Moreover, even if it was admissible, there are no facts on the record showing that Auty acted consistent with such alleged practice.  *Dallal v. New York Times Co*., 352 F. App'x 508, 512 (2d Cir. 2009) (affirming the exclusion of testimony related to industry custom and

---

[4]  Indeed, in the copyright context, even expert testimony is frowned upon.  *Siegel v. Warner Bros. Ent'mt Inc.*, 658 F. Supp. 2d 1036, 1069 (C.D. Cal. 2009) (in copyright infringement actions, "appeals to expert opinion of industry custom and practice are of 'dubious evidentiary value' owing to the fact that the expert in question is not venturing any opinion as to what actually occurred with respect to the specific business relationship" at issue in the case").

practice "because the Times did not rely on its conformity with industry practice but, instead, offered testimony about how it understood its bargain with Dallal in light of its own practice").

For example, Defendant has failed to produce any documents showing that either MARVEL TELEVISION, ABC STUDIOS OR BOHEMIAN RISK PRODUCTIONS (the production companies behind the *Punisher* Series) or NETFLIX (the distributor of the *Punisher* Series) released publicity still handouts or press kits to CBSi, GameSpot or any other media outlet to generate "buzz" about the series.  Defendant has also failed to produce evidence that any studio has ever released any photographs to Auty, CBSi, GameSpot or anyone else.  As such, there is a complete lack of hard evidence to support Auty's assertion that such custom and practice exists, much less with respect to the television series at issue in this case.

Furthermore, had the Photographs as displayed on the ComingSoon.net website contained some attribution such as "COURTESY OF MARVEL STUDIOS" OR "COURTESY OF NETFLIX" (regardless of whether they were falsified), then perhaps Auty could have some credible claim that he was acting under a good faith belief that the Photographs were publicity shots and therefore free for the taking.  But the record evidence shows that the ComingSoon.net website contained no such attribution.  Rather, they credited Steve Sands, the plaintiff.  Under those circumstances, Defendant has failed to explain what gave Auty the belief that the Photographs had any relation whatsoever to the studios who produced or distributed the "*Punisher*" Series.

Finally, if Auty truly held a good faith belief that the Photographs were publicity handouts, then why would he only take five Photographs from the 64 Photographs published on ComingSoon.net Website?  [Dkt. #19-7 (showing that the URL of the article entitled "Jon Bernthal Starts Filing Marvel's The Punisher" contains 64 photographs in its slideshow)].  If he actually thought they were publicity handouts and therefore provided to media outlets for free,

common sense dictates that he would have re-published the whole lot.  The fact that he only took

five photographs suggests that he made a conscious decision not to "take too much" in case,

maybe, he got caught.

D. **IN OPPOSITION TO DEFENDANT'S MOTION, PLAINTIFF RESPECTFULLY INCORPORATES BY REFERENCE ALL ARGUMETNS AND EVIDENCE SET FORTH AND PROFFERED IN HIS PRIMARY MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF WILLFULNESS**

So as to avoid duplicative briefing, Plaintiff will not herein restate all of the arguments

and evidence set forth in his own motion for summary judgment on the issue of willfulness.

[Dkts. #17-20]  Plaintiff respectfully refers the Court to such evidence in further opposition to

Defendant's motion on the issue of non-willfulness.  [Dkt. #18, pp. 26-30 of 33 and record

evidence cited therein].

**POINT II:    DEFENDANT'S ATTEMPT TO LIMIT SANDS' RECOVERY TO ONE STATUTORY DAMAGES AWARD IS MERITLESS**

Defendant argues that the five Photographs at issue in this lawsuit should be relegated to

a single statutory damages award on grounds that they were registered as a "compilation" and

were marketed as a "single unit of publication."  [D's Memo, Dkt. # 24, pp. 13-15 of 16]  As

demonstrated below, both arguments are without legal or factual support.

A. **SANDS' PHOTOGRAPHS WERE REGISTERED AS PART OF A GROUP REGISTRATION AND THEREFORE QUALIFY AS SEPARATE "WORKS" FOR PURPOSES OF AWARDING STATUTORY DAMAGES**

The Copyright Act gives the Register of Copyrights (the ''Register'') the discretion to

allow groups of related works to be registered with one application and one filing fee.  *See* 17

U.S.C. §408(c)(1).  Congress cited ''a group of photographs by one photographer'' as an

example of a ''group of related works'' that would be suitable for a group registration.  H.R.

Rep. No. 94–1476, at 154 (1976), reprinted in 1976 U.S.C.C.A.N. 5659, 5770; S. Rep. No. 94–473, at 136 (1975). The Register has exercised that authority "by promulgating rules allowing for group registration for 'published photographs.'" *Palmer/Kane* at 571 (citation omitted).

As the Court previously noted, "[g]roup registration carries important advantages for copyright holders, since it requires only one fee to register multiple works, all of which are entitled to the § 410(c) presumption of validity <u>and all of which may be sued upon individually</u>." *Palmer/Kane LLC* at 571 (*citing* 5 William F. Patry, PATRY ON COPYRIGHT § 17:92) (underline added).

Provided that the regulatory requirements for group registration are met, the copyright claimant qualifies for separate statutory damages awards for each photograph.  *See, e.g., Gamma Audio & Video, Inc. v. Ean-Chea*, 11 F.3d 1106, 1117 (1st Cir. 1993) ("Under regulations promulgated by the Copyright Office, the copyrights in multiple works may be registered on a single form, and thus considered one work *for the purposes of registration, see* 37 C.F.R. § 202.3(b)(3)(A), while still qualifying as separate "works" for purposes of awarding statutory damages"); GROUP REGISTRATION OF PHOTOGRAPHS, 83 F.R. 2542-01, 2018 WL 451975, at *2545 (January 18, 2018) ("the Office will examine each photograph in the group, and if the claim is approved, the registration covers each photograph and each photograph is registered as a separate work. <u>Thus, if the photographs are subsequently infringed, the copyright owner should be entitled to seek a separate award of statutory damages for each individual photograph</u>. *See* 17 U.S.C. 504(c)(1) (authorizing a separate award of statutory damages "with respect to any one work") (underline added).

At the time Sands' photographs were registered in November 2016, copyright applicants had to satisfy the following three requirements to qualify for a group registration of published

photographs: "(a) all the photographs are by the same photographer ...; (b) all the photographs are published in the same calendar year; and (c) all the photographs have the same copyright claimant." U.S. Copyright Office, Group Registration of Published Photographs , FL-124 (2012).[5]  [2d Declaration of Richard Liebowitz ("2d Liebowitz Declr.") ¶ 5, Ex. A]

Here, as illustrated below, the 098 Registration satisfies all three requirements for group registration of published photographs.  First, the 098 Registration provides that all 739 photographs (including the five at issue in this lawsuit) are authored by Steve Sands.  [Dkt. #19-12 at SANDS_0023]  Second, all photographs listed on the face of the 098 Registration were published between September 16, 2016 and November 16, 2016 within the same calendar year. [*Id.* at SANDS_0010]  Third, the 098 Registration provides that Steve Sands is the copyright claimant to all the photographs. [*Id.* at SANDS_0023].

---

### Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Karyn Temple Claggett*

Acting United States Register of Copyrights and Director

**Registration Number**
**VA 2-024-098**
**Effective Date of Registration:**
November 28, 2016

**Title** _____

Title of Work:   Group Registration of Published Photographs  Steve Sands; 2016; all published
9/22/16-11/16/16; 739 Photographs

Page 1 of 15

**SANDS_0010**

---

[5] Formerly codified under 37 C.F.R. § 202.3(b)(10) (now superseded by 83 F.R. 2542-01).



**Completion/Publication**

| | |
|---|---|
| Year of Completion: | 2016 |
| Date of 1st Publication: | September 22, 2016 |
| Nation of 1st Publication: | United States |

**Author**

| | |
|---|---|
| • Author: | Steve Sands |
| Author Created: | photograph |
| Work made for hire: | No |
| Domiciled in: | United States |

**Copyright Claimant**

| | |
|---|---|
| Copyright Claimant: | Steve Sands |
| | 568 Grand Street, Apt J903, New York, NY, 10002, United States |

Page 14 of 15

**SANDS_0023**

**B.     SANDS' 098 REGISTRATION IS NOT A "COMPILATION"**

Copyright protection is also available for "compilations." 17 U.S.C.S. § 103(a).  A "compilation" is defined as "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." *Id.* § 101. Although the bar for "original work" is low, *Matthew Bender & Co. v. W. Pub. Co.,* 158 F.3d 674, 680 (2d Cir. 1998) (a compilation need only "display some minimal level of creativity" (internal quotation marks and citation omitted)), a plaintiff's mass registration of photographs does not satisfy this requirement.  *Senisi v. John Wiley & Sons, Inc.,* No. 13CV3314-LTS-AJP, 2015 WL 7736545, at *3 (S.D.N.Y. Nov. 30, 2015)

The application for copyright registration as a compilation must include "a brief, general statement of the additional material covered by the copyright claim being registered." 17 U.S.C.S. § 409(9).  A section of the registration form is designated for such a statement. *Senisi,*

15

2015 WL 7736545, at *3.  Where the registration applicant "le[aves] the portion of the copyright registration form pertaining to compilations entirely blank," this "constitutes uncontroverted evidence that the photographs were never meant to be registered as a compilation." *Palmer/Kane* at 572 (*quoting Senisi* at *4).

Here, there is nothing on the face of the 098 registration, in the pleadings or on the record which could support a finding that Sands registered the Photographs as part of a compilation. Defendant, for its part, has failed to present any evidence to the Court to support such a finding. After all, there is nothing original about the selection, coordination or arrangement of photographs included in the 098 registration.  For administrative purposes, Sands' counsel simply consolidated hundreds of photographs that Sands had taken within the same two month period of a calendar year into a single registration form.  As courts in this district have held, "the collection of all is not a selection." *Silverstein v. Penguin Putnam, Inc.*, 522 F. Supp. 2d 579, 599 (S.D.N.Y. 2007) (internal quotation marks omitted); *see also Yellow Pages Photos, Inc. v. Ziplocal, LP*, 795 F.3d 1255, 1279–80 (11th Cir. 2015) (recognizing that because group registration is permitted under regulations promulgated by the Copyright Office, *see* 37 C.F.R. § 202.3, the fact that plaintiff registered his photos in groups should not indicate that the photos are a compilation under 17 U.S.C. § 504(c)(1)).

Section 504(c)(1) provides that for purposes of calculating statutory damages, "all the parts of a compilation or derivative work constitute one work."  17 U.S.C. § 504(c)(1).  Thus, had Sands registered his photographs as part of a compilation, he would be limited to a single award for CBSi's infringement of all five images.  But because the Photographs are not part of a compilation, and are instead subject to a group registration, they qualify as separate works for

16

purposes of statutory damages. *Gamma Audio & Video,* 11 F.3d at 1117; GROUP REGISTRATION OF PHOTOGRAPHS, 83 F.R. 2542-01, 2018 WL 451975, at *2545 (January 18, 2018).

## C.   DEFENDANT'S ARGUMENT RESTS ON CASELAW INVOLVING "COMPILATIONS"

Despite the well-established distinction between compilations and group registrations, Defendant attempts to conflate the two constructs in its principal brief.  [D's Memo, Dkt. #24, pp. 13-14 of 16]  But the cases upon which Defendant relies are inapposite because, with one exception, they all deal with compilations.

Based on *Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 140 (2d Cir. 2010), a case involving an album of songs (i.e., a "compilation"), Defendant argues that the "Second Circuit considers how the plaintiff/copyright holder issued the works – separately or together as a unit" in order to determine whether works will be treated as a single work for statutory damages purposes.  [D's Memo, Dkt. # 24, p. 13 of 16]  But the holding in *Bryant* is limited to its application of section 504(c)(1) which requires courts to treat compilations as a single work. *Bryant*, 603 F.3d at 140 (finding that an album of sound recordings "falls with the [Copyright] Act's expansive definition of compilation . . . [and] therefore, infringement of an album should result in only one statutory damage award" *Id.* at 140-141.   As such, *Bryant* is inapplicable to the case at bar.

Defendant nevertheless argues that Sands' registration is "more analogous to *Bryant*" because Sands' registration should be treated as a compilation for purposes of calculating statutory damages.  However, as discussed *supra*, the 098 Registration is <u>not</u> a compilation. Defendant has attempted to mislead the Court with its recitation of Second Circuit law by disregarding the distinction between compilations and group registrations.

Defendant also invokes *FameFlynet, Inc. v. Shoshanna Collection, LLC*, 282 F. Supp. 3d 618, 626 (S.D.N.Y. 2017), *appeal withdrawn*, No. 18-633, 2018 WL 2740233 (2d Cir. Mar. 20, 2018) for the proposition that a single statutory damages award was recovered for a defendant's use of multiple photographs.  But once again, the copyright registration at issue in *Fameflynet* was for a compilation of photographs.  *Id.* (holding that "[f]or the purposes of calculating statutory damages, the Copyright Act provides that one compilation "constitutes one work.").  Indeed, the copyright registration certificate at issue in *Fameflynet* explicitly states that the registration is for a "compilation" and a "new compilation of photographs."  [2d Liebowitz Declr. ¶ 6, Ex. B]  This explains why Judge Sweet limited plaintiff's recovery to a single statutory damages award.

Defendant fares no better with *Barcroft Media, Ltd. v. Coed Media Group, LLC*, 297 F. Supp. 3d 339, 360-61 (S.D.N.Y. 2017), yet another case involving a compilation.  Defendant argues that Judge Furman awarded one statutory damages award for defendant's use of multiple images of Janet and Jane Horrocks (the "Horrocks Images").  But had Defendant cared to conduct some due diligence, it would have found that the operative copyright certificate for the Horrocks Images explicitly identified as a "compilation" and "new compilation of photographs." [2d Liebowitz Declr. ¶ 7, Ex. C].  As such, *Barcroft* is not persuasive.

## D.   DEFENDANT'S ARGUMENT IS ALSO FACTUALLY GROUNDLESS BECAUSE SANDS MARKETED THE PHOTOGRAPHS INDIVIDUALLY – NOT AS A SET OR SINGLE UNIT

Finally, Defendant cites *Gross v. NYP Holdings, Inc.*, No. 06 Civ. 7863 (RMB) (JCF), 2007 WL 1040033, at *3 (S.D.N.Y. Apr. 4, 2007) for the proposition that "group registration of published photos qualified as a single work because plaintiff presented evidence that the photos were offered as a 'single unit of publication'".  [D's Memo, Dkt. #24, p. 14 of 16].  While *Gross*

does not deal with a compilation, Defendant once again misleads the Court with its parenthetical description of the case.

First, the photographs at issue in *Gross* were registered back in 1989, over 12 years before the Register adopted regulations to permit group registration of photographs.  [2d Liebowitz Declr. ¶ 8, Ex. D]  *See Thron v. HarperCollins Publishers, Inc.,* No. 01 CIV.5437(JSR), 2002 WL 1733640, at *1 (S.D.N.Y. July 26, 2002) (finding purported registration defective where "relevant regulations permitting the group registration of photographs did not take effect until August 16, 2001—more than two years after plaintiff's attempted group registration. *See* 66 Fed.Reg. 37142; 37 C.F.R. § 202").   Given that the certificate in *Gross* was not subject to group registration requirements, Defendant has failed to cite a single case in its principal brief where the copyright claimant of a group registration of photographs was limited to recovering a single statutory damages award.

Second, it was the plaintiff himself in *Gross* (not the court) who treated the photographs as a single work and marketed them as a single unit of publication.  *See Gross*, 2007 WL 1040033, at *3 ("Plaintiff, on the other hand, has presented evidence that the Steinberg Photographs were offered, in or about November, 1987, as a single unit of publication . . .").

Here, in contrast to *Gross*, the Photographs were registered as a part of a group registration of photographs in strict accordance with the statutory and regulatory requirements. [Point II.A, *supra*]  Moreover, Sands never treated the Photographs as a single work nor marketed them as a set.  When he licensed the Photographs to Getty Images, the record shows that each image was assigned a separate asset number, sold separately and accounted for individually on Getty's royalty statements – not as a set or compilation. [Dkt. #19-5]

Contrary to Defendant's assertions, Sands also licensed the Photographs to various media outlets.  [2d Declaration of Steve Sands ¶ 3, Ex. A] None of these outlets licensed the Photographs as a so-called "set" – they were licensed individually.  Further, the record evidence shows that Sands also licensed a single photograph from the October 5, 2016 photoshoot to FirstLookTVFilm, demonstrating that he never intended to market them as a set.  [*Id.* at ¶ 4, Ex. B]

In short, even if the Court were to adopt CBSi's newfangled standard which proposes that the number of statutory damages awards should be determined by reference to how the works are marketed, the uncontradicted evidence here demonstrates that the Photographs were marketed individually.  Accordingly, each Photograph at issue in this litigation qualifies for a separate statutory damages award.

## **CONCLUSION**

For the foregoing reasons, Defendant's motion for partial summary judgment should be DENIED in its entirety.

Respectfully Submitted,

LIEBOWITZ LAW FIRM, PLLC

by: **/richardliebowitz/**
Richard Liebowitz
James H. Freeman
11 Sunrise Plaza, Suite 305
Valley Stream, NY 11580
(516) 233-1660
rl@liebowtizlawfirm.com
jf@liebowitzlawfirm

*Counsel for Plaintiff Steve Sands*