UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEVE SANDS,<br><br>Plaintiff,<br><br>-against-<br><br>CBS INTERACTIVE INC.,<br><br>Defendant. | Case No. 18-cv-07345 (JSR)<br><br>ECF Case |

**DEFENDANT CBS INTERACTIVE INC.'S MEMORANDUM OF LAW**
**IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Eleanor M. Lackman
Lindsay R. Edelstein
Sara Gates
COWAN, DEBAETS, ABRAHAMS & SHEPPARD LLP
41 Madison Avenue, 38th Floor
New York, New York 10010
Tel.: (212) 974-7474
Fax: (212) 974-8474
ELackman@cdas.com
LEdelstein@cdas.com
SGates@cdas.com

*Attorneys for Defendant*
*CBS Interactive Inc.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..... iii

PRELIMINARY STATEMENT ..... 1

FACTS ..... 2

ARGUMENT ..... 2

I. THRESHOLD ISSUES OF FACT PRECLUDE SUMMARY JUDGMENT ON LIABILITY ..... 3

A. Plaintiff Has Not Established That the Photographs Meet the Threshold for Creativity and Originality ..... 3

B. Material Errors and Omissions Exist in Plaintiff's Copyright Registration, Creating Genuine Issues of Material Fact as to Whether Plaintiff Even Has Standing to Enforce His Claimed Rights ..... 7

C. Plaintiff's Own Testimony Undercuts His Fair Use Arguments ..... 10

D. The Doctrine of Unclean Hands Also Precludes Summary Judgment for Sands on Liability ..... 11

1. Sands Used Threats and Blackmail to Gain Access to Film and Television Sets So That He Can Distribute Photographs That Look Like Publicity Stills ..... 12

2. Sands' Purposeful Release of the Stills in Anticipation of Reaping Rewards During Litigation ..... 13

II. SANDS' CLAIM THAT CBSI'S CONDUCT WAS WILLFUL FINDS NO SUPPORT IN THE RECORD ..... 13

A. The Liebowitz Firm's Prolific Filing of Lawsuits Does Not Impute Willfulness to CBSi ..... 14

B. Sands' Photo "Credit" Argument Is a Sideshow: He Is Well Aware That the Photographs Were Not Originally Published on Comingsoon.net with Attribution to Sands ..... 16

C. CBSi's Good Faith Belief That the Photographs Were Publicity Shots Released by Studios Was Reasonable, and Cuts Against Any Argument of Willfulness ..... 18

III. PLAINTIFF'S APPLICATION FOR ATTORNEYS' FEES SHOULD BE DENIED ....................19

A. Sands' Application for Attorneys' Fees Is Premature ....................19

B. Even If Sands' Request for Attorneys' Fees Was Not Premature, He Is Not Entitled to Such Relief ....................20

CONCLUSION ....................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barcroft Media, Ltd. v. Coed Media Grp., LLC*,
297 F. Supp. 3d 339 (S.D.N.Y. 2017)....................10

*Boisson v. Banian, Ltd.*,
273 F.3d 262 (2d Cir. 2001)....................6, 7

*Bridgeman Art Library, Ltd. v. Corel Corp.*,
25 F. Supp. 2d 421 (S.D.N.Y. 1998)....................6

*Bridgeman Art Library, Ltd. v. Corel Corp.*,
36 F. Supp. 2d 191 (S.D.N.Y. 1999)....................6

*Capital One Bank (USA) v. Koralik*,
32 N.Y.S.3d 805 (1st Dept. 2016) ....................2

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)....................2

*Cruz v. Am. Broad. Cos.*,
No. 17 Civ. 8794 (LAK), 2017 WL 5665657 (S.D.N.Y. Nov. 17, 2017) ....................4

*Custom Dynamics, LLC v. Radiantz LED Lighting, Inc.*,
535 F. Supp. 2d 542 (E.D.N.C. 2008)....................5

*Durham Indus., Inc. v. Tomy Corp.*,
630 F.2d 905 (2d Cir. 1980)....................4, 7

*Earth Flag Ltd. v. Alamo Flag Co.*,
153 F.Supp.2d 349 (S.D.N.Y. 2001)....................4

*Eckes v. Card Prices Update*,
736 F.2d 859 (2d Cir. 1984)....................7

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
499 U.S. 340 (1991)....................3

*Fifty-Six Hope Rd. Music Ltd. v. UMG Recordings, Inc.*,
No. 08 CIV. 6143 DLC, 2011 WL 3874859 (S.D.N.Y. Aug. 31, 2011) ....................3

*Flaherty v. Filardi*,
No. 03CIV.2167, 2009 WL 749570 (S.D.N.Y. Mar. 20, 2009....................13

*Fogerty v. Fantasy, Inc.*,
510 U.S. 517 (1994) ....................................................................................................20

*Harner v. Wong Corp.*,
No. 1:12-cv-00820-KG-ACT, 2013 WL 11549284 (D.N.M. Oct. 31, 2013)............................5

*Harney v. Sony Pictures Television, Inc.*,
704 F.3d 173 (1st Cir. 2013).........................................................................................4

*Hermann v. Evolve Media, LLC*,
No. 18-cv-10117-GHW (S.D.N.Y. 2018)...........................................................................7

*Inspired By Design, LLC v. Sammy's Sew Shop, LLC*,
No. 16-CV-2290-DDC-KGG, 2016 WL 6093778 (D. Kan. Oct. 19, 2016) ............................5

*Int'l News Serv. v. Associated Press*,
248 U.S. 215 (1918)....................................................................................................4

*Jackson v. Odenat*,
9 F. Supp. 3d 342 (S.D.N.Y. 2014) ..............................................................................19

*Janik v. SMG Media, Inc.*,
16-CIV-7308(JGK)(AJP), 2018 WL 345111 (S.D.N.Y. Jan. 10, 2018)..................................1

*Jowers v. DME Interactive Holdings, Inc.*,
No. 00 CIV. 4753 LTS KNF, 2006 WL 1408671 (S.D.N.Y. May 22, 2006) ..........................3

*Kirtsaeng v. John Wiley & Sons, Inc.*,
136 S. Ct. 1979 (2016)...............................................................................................20

*L. Batlin & Son, Inc. v. Snyder*,
536 F.2d 486 (2d Cir. 1976).........................................................................................5

*Lukensow v. Harley Cars of New York*,
124 F.R.D. 64 (S.D.N.Y. 1989) ....................................................................................13

*Mannion v. Coors Brewing Co.*,
377 F. Supp. 2d 444 (S.D.N.Y. 2005).........................................................................5, 7

*Mantel v. Microsoft Corp.*,
No. 16-CV-5277 (AJN), 2018 WL 1602863 (S.D.N.Y. Mar. 29, 2018) .................................8

*Nationwide Life Ins. Co. v. Bankers Leasing Ass'n*,
182 F.3d 157 (2d Cir. 1999).........................................................................................2

*Oriental Art Printing, Inc. v. Goldstar Printing Corp.*,
175 F. Supp. 2d 542 (S.D.N.Y. 2001)............................................................................4

*Oyewole v. Ora*,
291 F. Supp. 3d 422 (S.D.N.Y. 2018)....................10

*Past Pluto Productions Corp. v. Dana*,
627 F. Supp. 1435 (S.D.N.Y. 1986)....................7

*PenneCom B.V. v. Merrill Lynch & Co., Inc.*,
372 F.3d 488 (2d Cir. 2004)....................11

*Pereira v. Kendall Jenner, Inc.*
No. 17-cv-6945, Dkt. No. 16 (S.D.N.Y. Dec. 18, 2017) ....................4

*Pohl v. MH Sub I, LLC*,
314 F. Supp. 3d 1225 (N.D. Fla. 2018)....................5

*Reynolds v. Intermarkets, Inc.*,
No. 17-cv-8795 (S.D.N.Y. Nov. 14, 2017)....................15

*Russ Berrie & Co., Inc. v. Jerry Elsner Co.*,
482 F. Supp. 980 (S.D.N.Y. 1980) ....................7, 8

*Sands v. CBS Interactive Inc.*,
No. 17-cv-00531-RA (S.D.N.Y. 2017)....................4

*Sands v. Complex Media, Inc.*,
No. 17-cv-03993-ALC-GWG (S.D.N.Y. May 26, 2017) ....................9

*Schaer v. City of New York*,
No. 09 CIV. 7441 CM MHD, 2011 WL 1239836 (S.D.N.Y. Mar. 25, 2011)....................5

*Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*,
756 F.3d 73 (2d Cir. 2014)....................10

*Sweet Gisele, Inc. v. True Rock CEO, LLC*,
17-CV-5170-FB-RML (FB)(RML), 2018 WL 4863650 (E.D.N.Y. Sept. 4, 2018) ....................6

*Tabak v. Idle Media, Inc.*,
No. 17-cv-8285 (AT) (Oct. 31, 2017)....................14

*Urbont v. Sony Music Entm't*,
100 F. Supp. 3d 342 (S.D.N.Y. 2015)....................15

*Vega v. Restani Const. Corp.*,
965 N.E.2d 240 (2012)....................2

*Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*,
342 F.3d 191 (3d Cir. 2003)....................7

*Weiss v. Evolve Media, LLC*,
No. 18-cv-04736-JPO (S.D.N.Y. 2018)....................17

*Yang v. Evolve Media, LLC*,
No. 17-cv-05529-AJN (S.D.N.Y. 2017)....................17

**Statutes**

17 U.S.C. § 410....................7

17 U.S.C. § 411....................8

17 U.S.C. § 505....................19

17 U.S.C. § 1202....................16

**Rules**

Fed. R. Civ. P. 26....................13

Fed. R. Civ. P. 56....................1

N.Y. Comp. Codes R. & Regs. tit. 22, § 1200.0, Rule 3.7....................8

**Other Materials**

3 Melville Nimmer & David Nimmer, *Nimmer on Copyright* (1988)....................11

*Hollywood Glamour: 1924 – 1956* (David Bordwell ed., 1987)....................18

Defendant CBS Interactive Inc. ("CBSi") hereby respectfully submits this Memorandum of Law in opposition to Plaintiff Steve Sands' ("Plaintiff" or "Sands") motion ("Motion"), pursuant to Federal Rule of Civil Procedure 56, for summary judgment against CBSi.

**PRELIMINARY STATEMENT**

Having conducted only bare-bones discovery, Sands now confidently asks the Court to find CBSi liable for willful infringement, despite the existence of numerous disputed issues of material fact, and prematurely requests that the Court require CBSi to pay all of Sands' legal fees. Sands' confidence is unfounded. For example, he has failed to address the threshold issue that none of the photos at issue (the "Photographs") are protectable. Nor has he recognized that even though he has the burden to show willfulness, he never took the testimony of *any* of CBSi's disclosed witnesses, and the record is devoid of any evidence that CBSi believed its use of the Photographs was infringing. To the contrary, CBSi acted consistently with industry practice and its good faith belief that the Photographs were publicity stills provided by the studio to create a "buzz" about it project. Moreover, Sands' testimony conflicts dramatically with that of his law firm—or in his words, "Liebowitz, Inc."—regarding registration of the Photographs, leaving questions of fact that may affect standing. Indeed, while the Liebowitz Firm has been cautioned to "clean up its act,"[1] a mess appears to remain.

What the evidence in this case actually shows is that Sands crashed a television set to take photographs that reflected the work and creativity of others, relied on the possibility that publishers would mistake his photos as on-set publicity stills released by the studio for publicity purposes, and now seeks damages that he all but admits are disproportionate to the minimal

[1] *See Janik v. SMG Media, Inc.*, 16-CIV-7308(JGK)(AJP), 2018 WL 345111, at *16 (S.D.N.Y. Jan. 10, 2018) (cautioning "the Liebowitz Firm [ ] to consider its reputation with the Court and, frankly, clean up his act").

value of the license fees to which he claims he was deprived.

Perhaps even more troubling is how Sands now points to the Liebowitz Firm's prolific filing of lawsuits and CBSi's past settlements, including two with Sands, to create an inference of liability and impute willfulness, in material breach of the terms of those agreements. Putting aside that Sands cannot prevail on liability as a matter of law, the gamesmanship that Sands and his counsel have demonstrated merits a denial of their premature motion for fees.

**FACTS**

The material facts are set forth in CBSi's papers in support of its Motion for Partial Summary Judgment ("CBSi's Mot."; Dkt. 24) at 2–4, as well as in CBSi's Local Rule 56.1 Statement of Material Facts ("SUMF"), Local Rule 56.1(b) Counterstatement of Material Facts ("CSUF"), and Statement of Additional Material Facts ("SAMF") submitted herewith.[2]

**ARGUMENT**

A motion for summary judgment should be "granted only where the moving party has tender[ed] sufficient evidence to demonstrate the absence of any material issues of fact." *Vega v. Restani Const. Corp.*, 965 N.E.2d 240, 242 (2012) (internal citations omitted). The moving party bears the initial burden of proof on such a motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Facts, and all inferences therefrom, must therefore be viewed in a light most favorable to the non-movant. *Nationwide Life Ins. Co. v. Bankers Leasing Ass'n*, 182 F.3d 157, 160 (2d Cir. 1999). Because summary judgment is a "drastic remedy" depriving parties of a trial, it "should only be granted where there is no doubt as to the existence of a triable issue of fact." *Capital One Bank (USA) v. Koralik*, 32 N.Y.S.3d 805, 809 (1st Dep't 2016). Here, CBSi has put forth sufficient evidence to establish genuine issues of material fact necessitating a trial on liability;

---

[2] The defined terms set forth in CBSi's Motion for Partial Summary Judgment (Dkt. 24) are incorporated herein by reference.

further, as noted in CBSi's motion for summary judgment, there is no issue of fact that Sands cannot prove willfulness.

## I. THRESHOLD ISSUES OF FACT PRECLUDE SUMMARY JUDGMENT ON LIABILITY

Plaintiff leaps to the conclusion that he has established the threshold requirement of showing the first element of copyright infringement—ownership of a work of original expression—and moves immediately to a lengthy argument on the defense of fair use. However, as explained below, Plaintiff cannot expect the Court to simply presume that the Photographs, as to which Sands identifies no creative contribution of his own, are inherently protectable. Nor do the facts as described by Plaintiff himself indicate a clear record on what was registered, although it is clear that Plaintiff failed to disclose material facts to the Copyright Office on registration. Accordingly, as detailed below, serious issues of fact on liability exist that prevent the Court from even reaching the fair use defense in the first place.

### A. Plaintiff Has Not Established That the Photographs Meet the Threshold for Creativity and Originality

As now-Justice Gorsuch cautioned in *Meshwerks, Inc. v. Toyota Motor Sales USA, Inc.*, the Supreme Court's jurisprudence makes clear that not all photographs are *per se* protectable. 528 F.3d 1258, 1263 n.5 (10th Cir. 2008) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991), for the proposition that, while "the creativity requirement is low, it does exist"). Moreover, Sands cannot claim the originality of others as the basis for his rights; he has an interest only in the creative contributions that *he* made. *See Feist*, 499 U.S. at 359 (concluding that "copyright protects only the author's original contributions").

Here, Sands' rights are inherently dependent on the creative work of others—namely, the work of those who developed, invested in, and otherwise created the scenes that Sands recorded. Specifically, on October 5, 2016, the crew of *The Punisher*—including, but not limited to, its

director, producers, cast, and location scout—staged, designed, and planned every aspect of a shoot. SUMF ¶ 1. Sands, without authorization, crashed the set and took photographs of the cast in their staged positions, without making any original choices warranting copyright protection of the photographs. *Id.* at 65:23–66:19 (identifying only choice of background, which was inherent to the location Marvel picked); 94:10–95:7 (claiming that value of photographs was that actor was shown with a beard, which was not Sands' choice); 173:22–174:8 (admitting he does not "control things" on set, like lighting, depth). Sands stated that the "environment" of a photograph is "just as important as the foreground," and then admitted that he had "[a]bsolutely no[]" involvement in picking the environment of the photographs. *Id.* ¶ 3 at 66:14–19. Sands admitted that he did not spend time editing, adjusting the lighting, or otherwise making any adjustments to the Photographs. *Id.* ¶ 3 at 148:10–22 (when asked if he edited the Photographs at issue Sands responded, "probably not.").

Sands has not met his burden of showing that his work contains "some substantial, not merely trivial, originality" to merit copyright protection. *Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 910 (2d Cir. 1980). To be original, a "work must possess more than a *de minimis* quantum of creativity." *Earth Flag Ltd. v. Alamo Flag Co.*, 153 F.Supp.2d 349, 353 (S.D.N.Y. 2001). Sands' photographs—taken as they were without regard to creation of the subject, rendition, timing, shadow, lighting, or environment—are not copyrightable. SAMF ¶ 1; CSUF ¶ 2; *see also Harney v. Sony Pictures Television, Inc.*, 704 F.3d 173 (1st Cir. 2013) (citing *Feist*, 499 U.S. at 349–50); *Int'l News Serv. v. Associated Press*, 248 U.S. 215, 254 (1918) (Brandeis,

J., dissenting) ("The mere record of isolated happenings, whether in words or by photographs not involving artistic skill, are denied [copyright] protection.").[3]

Moreover, Sands conceded that when "photos all look the same [] there's no creativity involved." SAMF ¶ 5 at 65:2–4. At his deposition, he was unable to distinguish between photographs taken by another photographer on *The Punisher* set, and his own:

> Q. Mr. Sands, do you recognize what's been marked as Exhibit 8? . . .
> A. I don't -- I only can remember the photos that I authorized as were stolen. Whether I recognize this as mine, I have to go to my computer . . .
> Q: Is there anything about -- anything about photographs that you take where you would say this is my style, the lighting, I recognize the depth, I recognize that I was close, anything like that? . . .
> A: In this? As – and I also testified, or said at a deposition. . . that I don't control things . . . I didn't light it. But do I like this shot? Yes. Would I have taken it if I saw it, absolutely.

*Id.* at 148:10–22. Sands also admitted that he stands behind the camera at times to see what the cameraman is filming. CSUF ¶ 2 at 154:10–15; 156:18–23. But merely choosing a place to stand is not creative expression sufficient to confer originality, particularly when it is directed by the director or the limitations of the set. *Cf. Mannion v. Coors Brewing Co.*, 377 F. Supp. 2d

---

[3] Works that merely aim to accurately represent an original work are not protectable. *See Oriental Art Printing, Inc. v. Goldstar Printing Corp.*, 175 F. Supp. 2d 542, 546 (S.D.N.Y. 2001) (finding pure product-description pictures of food dishes not sufficiently original to merit copyright protection); *Custom Dynamics, LLC v. Radiantz LED Lighting, Inc.*, 535 F. Supp. 2d 542, 549 (E.D.N.C. 2008) (holding photographs of aftermarket motorcycle lighting accessories are "meant to serve the purely utilitarian purpose of displaying examples of its product to potential consumers, and [thus did] not merit copyright protection"); *Inspired By Design, LLC v. Sammy's Sew Shop, LLC*, No. 16-CV-2290-DDC-KGG, 2016 WL 6093778, at *9 (D. Kan. Oct. 19, 2016) (finding descriptive pictures presenting the types of pet beds available for sale not likely to be copyrightable); *Harner v. Wong Corp.*, No. 1:12-cv-00820-KG-ACT, 2013 WL 11549284, at *6 (D.N.M. Oct. 31, 2013) (concluding photographs of computers and computer components served utilitarian and descriptive purposes and were therefore "not sufficiently original to be protected by copyright law"); *Pohl v. MH Sub I, LLC*, 314 F. Supp. 3d 1225, 1231 (N.D. Fla. 2018) (finding plaintiff's "before-and-after photographs of his cosmetic dental work for his practice's website" lacked sufficient creativity or originality to merit copyright protection), *reconsideration denied*, No. 4:17 Civ. 181 (MW) (CAS), 2018 WL 3853593 (N.D. Fla. July 19, 2018).

444, 452–54 (S.D.N.Y. 2005) (discussing how a photograph may be original in three respects: rendition, timing, and creation of subject); *see also L. Batlin & Son, Inc. v. Snyder*, 536 F.2d 486, 491 (2d Cir. 1976) ("[T]o support a copyright there must be at least some substantial variation, not merely a trivial variation such as might occur in the translation to a different medium."); *Boisson v. Banian, Ltd.*, 273 F.3d 262, 268 (2d Cir. 2001) ("Originality . . . means a work independently created by its author, one not copied from pre-existing works, and a work that comes from the exercise of the creative powers of the author's mind, in other words, the fruits of [the author's] intellectual labor." (internal citation and quotation omitted)); *Sweet Gisele, Inc. v. True Rock CEO, LLC*, 17-CV-5170-FB-RML (FB)(RML), 2018 WL 4863650, at *5 (E.D.N.Y. Sept. 4, 2018) ("Simply stating that elements of originality are 'evident' is not an argument, nor is the court simply required to accept plaintiff's claims of self-evident originality without anything more."), *report and recommendation adopted*, No. 17-CV-5170-FB-RML, 2018 WL 4863586 (E.D.N.Y. Sept. 28, 2018).

The creative expression in the styling, blocking, expression, lighting, wardrobe choices, and choice of location are all that of the production crew, not the individual photographer who is merely a bystander unable to control any of the scene. CSUF ¶ 2; SAMF ¶ 1. Here, all that Sands did was stand next to the camera shooting the scene and click a button, essentially making a slavish copy of the scene captured by the production's camera. *Id.*; *see Bridgeman Art Library, Ltd. v. Corel Corp.*, 36 F. Supp. 2d 191, 197 (S.D.N.Y. 1999) (finding plaintiff's slavish copying did not qualify for copyright protection); *Bridgeman Art Library, Ltd. v. Corel Corp.*, 25 F. Supp. 2d 421, 427 (S.D.N.Y. 1998) ("But one need not deny the creativity inherent in the art of photography to recognize that a photograph which is no more than a copy of the work of another as exact as science and technology permit lacks originality.").

By doing so, he usurped the work and creative efforts of countless other people responsible for the production. Sands does not dispute this fact; indeed, he acknowledges that others do the work; his view is that he has the "right" to exploit it, even over the creators' objections. SAMF ¶ 2. Not only is this sort of usurpation not what copyright law is designed to reward, but Sands should not be encouraged to reap the fruits of other people's labors, especially where he did not exercise originality in rendition, timing, or creation of the subject of the Photographs. CSUF ¶ 2; SAMF ¶ 1; see *also Boisson*, 273 F.3d at 268; *Mannion*, 377 F. Supp. 2d at 452–54.

### B. Material Errors and Omissions Exist in Plaintiff's Copyright Registration, Creating Genuine Issues of Material Fact as to Whether Plaintiff Even Has Standing to Enforce His Claimed Rights

Where an individual obtains a certificate of registration from the Copyright Office, such certificate "constitute[s] prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). However, a certificate of registration does not create an irrebuttable presumption of copyright validity. *See Durham Industries*, 630 F.2d at 908. The failure to alert the Copyright Office of relationships between the work for which registration is sought and prior works of others specifically endangers the presumption of validity. *See Past Pluto Productions Corp. v. Dana*, 627 F. Supp. 1435, 1440 n.5 (S.D.N.Y. 1986).

The Second Circuit has held that "the knowing failure to advise the Copyright Office of facts which might have occasioned a rejection of the application constitute[s] reason for holding the registration invalid and thus incapable of supporting an infringement action . . . or denying enforcement on the ground of unclean hands." *Eckes v. Card Prices Update*, 736 F.2d 859, 861–62 (2d Cir. 1984) (quoting *Russ Berrie & Co., Inc. v. Jerry Elsner Co.*, 482 F. Supp. 980, 988

(S.D.N.Y. 1980)).[4] At best, paparazzi shots of film sets, like the Photographs at issue here, should be considered derivative works, much as a movie trailer is derivative of the film. *See Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 342 F.3d 191, 202 (3d Cir. 2003), *as amended* (Sept. 19, 2003). As Sands failed to identify the Photographs as a derivative work on his registration, the registration is invalid. *See, e.g.*, *Russ Berrie*, 482 F. Supp. at 988 (copyright registrant's knowing failure to advise Copyright Office of a pre-existing related work constituted a basis for holding registration invalid). As discussed *supra* in Section I.A., Sands has admitted that his work was derivative of the filmmakers' creative efforts in developing the production scenes for *The Punisher* television series. CSUF ¶ 2; SAMF ¶ 1. However, he failed to disclose this to the Copyright Office. SAMF ¶ 6; Cplt., Ex. B. This material error potentially divests the Court of jurisdiction to hear the claim and may preclude other relief. *See* 17 U.S.C. § 411(a) (work must be registered or have been rejected for registration).

Moreover, belatedly produced documents and Sands' own papers reveal that the Liebowitz Firm may have committed some errors in the application process, and the timing of the production of the material that was produced (and the failure to produce other material that was requested) could have an impact on the viability of the claimed registration. Sands testified that he does not review his copyright applications and instead defers wholly to the Liebowitz Firm on registration. CSUF ¶ 62.[5] In support of his contention that he has established "ownership of a valid copyright" in the Photographs, Plaintiff submits a declaration from Donna

[4] The defense of unclean hands will be discussed further in Part II, *infra*.

[5] He also defers to the Liebowitz Firm regarding whether to file a lawsuit; notably, he never seeks a resolution in advance of suing. SAMF ¶ 13.

Halperin, an employee of Sands' counsel, the Liebowitz Firm,[6] attesting to "facts" that Sands admitted he was not aware of during his deposition. *See* Dkt. No. 21; CSUF ¶ 64.

The material seems to conflict. For example, Sands testified that he sends all photographs from a shoot in one batch, but the metadata annexed to Ms. Halperin's affidavit—and belatedly produced to CBSi following Sands' deposition[7]—indicates that Sands sent the Photographs on two different dates, October 7 and October 14, 2016. CSUF ¶ 63. The registration certificate, meanwhile, shows two sets of photographs of the actors shown in the Photographs (on October 5 and 14, 2016), which suggests that the required titles given to the images do not reflect the images themselves. *Id.* ¶ 64. Moreover, Sands testified that he took the Photographs for two hours with no wardrobe changes, but the metadata from Halperin shows the actors in two different outfits. *Id.* If Sands had produced *his* metadata for the photographs as requested before his deposition and subsequently, these potential inconsistencies, which could have a possible impact on the registration at issue, could possibly have been explored and

[6] Mr. Liebowitz similarly testifies to facts regarding Sands' purported ownership of the Photographs, thus implicating himself as a witness in this action. Dkt. 20. Not only was he not disclosed as a witness (CSUF ¶ 63), but if he continues acting as such, he may run afoul of Rule of Professional Conduct 3.7. N.Y. Comp. Codes R. & Regs. tit. 22, § 1200.0, Rule 3.7 (prohibiting a lawyer from acting as an advocate at trial in which the lawyer is likely to be a necessary witness). In this dual role, Mr. Liebowitz is incentivized to misrepresent the facts in order to better serve his client. Plaintiff's behavior has not been rewarded in the past in this District, and it should not be rewarded here. *See supra* n.1; *infra* n.12; *Mantel v. Microsoft Corp.*, No. 16-CV-5277 (AJN), 2018 WL 1602863, at *4 (S.D.N.Y. Mar. 29, 2018) (opining that Mr. Liebowitz's conduct "has that feeling" of "express gamesmanship"), *reconsideration denied*, No. 16-CV-5277 (AJN), 2019 WL 367823 (S.D.N.Y. Jan. 30, 2019).

[7] CBSi asked for all documents prior to Sands' deposition on January 10, 2019. CSUF ¶ 63. The metadata from the Liebowitz Firm is dated as having been accessed on January 8, 2019, but was not produced to CBSi until January 18, 2019. *Id.*

clarified.[8] As it stands, however, serious questions remain as to the accuracy of the photographs submitted, as well as the accuracy of the registration, issues that by virtue of the timing of Sands' own production should be resolved at or prior to trial.

**C. Plaintiff's Own Testimony Undercuts His Fair Use Arguments**

While it is premature to discuss CBSi's potential fair use argument at this stage,[9] since CBSi's purpose in using the Photographs was to use what it reasonably believed were publicity stills released by the studio to generate excitement about the production, it bears mentioning that Sands greatly exaggerates the value of the Photographs, and the value of his work in general.

Sands' claim that there "was a fully functioning market demand" (Br. at 1, 17) for the Photographs is belied by the evidence. *See* Dkt. No. 19-5 (Getty invoices showing that the Photographs were licensed by *one entity for $4.88 each* at a time when the "demand" for the

[8] After all, Sands had difficulty distinguishing his photographs, even though he testified that he often verifies his photographs just by looking at them, a risky practice particularly when he is aware that (as here) other photographers were on set. SAMF ¶ 5. Perhaps not surprisingly, the Liebowitz Firm has had to hedge about Sands' photographs, describing in one case that a claimed photograph was merely "virtually identical" to one that Sands took. Letter Motion at 3, *Sands v. Complex Media, Inc.*, No. 17-cv-03993-ALC-GWG (S.D.N.Y. May 26, 2017), Dkt. No. 18 (stating "defendant's copy is *virtually identical* to the registered work and is therefore 'strikingly similar' as a matter of law" (emphasis added)).

[9] Sands mischaracterizes the GameSpot article at issue by describing it as a descriptive news story about the making of *The Punisher* series. Dkt. No. 18 ("Brief" or "Br.") at 10. To the contrary, the GameSpot article specifically reported on the appearance of a new character, as evidenced by new on-set photographs. Cplt. ¶ 10 (title of article: "Punisher Images Reveal Return of Key Daredevil Character"). Moreover, Sands fails to realize that there is no *per se* requirement that a secondary work expressly "comment on" the original to establish fair use. *See Oyewole v. Ora*, 291 F. Supp. 3d 422, 433 (S.D.N.Y. 2018) (Nathan, J.) ("There is no requirement 'that a work comment on the original or its author in order to be considered transformative.'" (quoting *Cariou v. Prince*, 714 F.3d 694, 706 (2d Cir. 2013))). Sands' arguments about commerciality are similarly off-base, and he makes the dangerous argument that if the user is for-profit, there can be no fair use. Br. at 14. CBSi's use of advertising to pay its journalists and otherwise support its news business does not automatically make a use commercial. *See Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 83 (2d Cir. 2014) (recognizing that "[a]lmost all newspapers, books and magazines are published by commercial enterprises that seek a profit," and nevertheless affirming dismissal on fair use grounds based in part on finding that use was for purposes of news reporting (citation omitted)).

photographs was supposedly at its highest).  This low rate hardly constitutes evidence of a high market demand for the Photographs, and if anything, suggests that there was such little demand for the Photographs that it actually drove the licensing price down. *Id.*

In his Motion, Sands disingenuously proffers a dated example of *People* magazine licensing 15 years ago one of his images for $125,000 as evidence of the high demand and value of his work.  *See* Dkt. No. 19-1.  That image, which was licensed in 2004—at a time when there was a very different market—was licensed to a print publication, rather than an online outlet, and does not offer any evidence of what the market or licensing rate would be for a photo licensed for online use only in late 2016.  *See Barcroft Media, Ltd. v. Coed Media Grp., LLC*, 297 F. Supp. 3d 339, 358 (S.D.N.Y. 2017) (recognizing that print publications, including *People* magazine in particular, would pay more to use a photograph for print use, than a website for online-use only).  Sands' attempt to use this entirely unrelated example as evidence is also completely contradicted by his own deposition testimony, in which he readily admitted that online use of his photographs is of no value, and is not even on his radar, except when the claim can be turned over to his counsel. *See* CSUF ¶ 3.

### D.   The Doctrine of Unclean Hands Also Precludes Summary Judgment for Sands on Liability

Sands' narrow construction of the doctrine of unclean hands fails to carry the day, and for several reasons, Sands' claims are equitably barred.  As the Second Circuit has recognized, "the equitable powers of this court can never be exerted [o]n behalf of one who has acted fraudulently, or who by deceit or any unfair means has gained an advantage.  To aid a party in such a case would make this court the abettor of iniquity." *PenneCom B.V. v. Merrill Lynch & Co., Inc.*, 372 F.3d 488, 493 (2d Cir. 2004) (internal quotation marks, brackets, and citations omitted).

While the doctrine of unclean hands is recognized only rarely in copyright actions "when the plaintiff's transgression is of serious proportions and relates directly to the subject matter of the infringement action," the undisputed facts here necessitate such an application. *See* 3 Melville Nimmer & David Nimmer, *Nimmer on Copyright*, § 13.09[B] at 13–145 (1988).

Sands' litigation misconduct will be discussed in more detail in Part III, but a few particular examples that justify denying him the relief he seeks warrant discussion here.

**1. Sands Used Threats and Blackmail to Gain Access to Film and Television Sets So That He Can Distribute Photographs That Look Like Publicity Stills**

Not only does Sands take photographs of on-set scenes that others have created—and disturb production sets for his own financial gain—but he has also used underhanded tactics to get access to film and television sets to take such photographs. *See* CSUF ¶ 13. In one instance, for example, after accessing a set without authorization, Sands obtained photographs from Netflix's *Iron Fist* television series that, if released, would have spoiled key plot points. *Id.* Without considering the hard work hundreds of cast and crew put into producing the series in question, and in order to gain access to an upcoming NBC event, Sands emailed Netflix's public relations agency: "I'd rather not release [the photographs], but it depends on the respect and courtesy I get from being credentialed for this premiere . . . I will await your reply gently keeping my trigger finger on the SEND button for 'iron fist' spoiler you hopefully won't force me to release." *Id.* That he is then able to get away with the act of taking these photographs does not merit the ability to commence a case under federal law to protect the results of his ill-gotten gains.

      ### 2. Sands' Purposeful Release of the Stills in Anticipation of Reaping Rewards During Litigation

Sands knows that studios distribute publicity stills that look just like the photographs he takes on sets; indeed, at his deposition, he was not sure whether a photograph was his or a publicity still. SAMF ¶ 8 ("It looks like a photo I might have taken. But this might have been a set photographer."). Sands' failure to provide any evidence of watermarking his name on the Photographs, and his failure to ever reach out to any entity about the Photographs at issue, leaves the logical inference that he intended to set up a situation for him to receive sizable settlements for the mistaken use of his low-value photographs that he himself cannot discern from publicity stills. *Id.* ¶ 10. By allowing other websites to use these photographs without attribution, and for CBSi to follow suit—assuming these were publicity stills—is more lucrative to get settlements than $2.44 licensing fees. *See* SAMF ¶ 12.

## II. SANDS' CLAIM THAT CBSI'S CONDUCT WAS WILLFUL FINDS NO SUPPORT IN THE RECORD

As CBSi noted in its moving papers, Sands failed to take any discovery to explore the facts and circumstances surrounding CBSi's publication of the Photographs, so the record is devoid of any evidence showing that CBSi believed its uses of the Photographs were infringing.[10] Instead, Sands now attempts to create an inference of liability and willfulness by (1) pointing to past settlement agreements that contain no admissions of liability and prohibitions on their use in this very type of situation, and (2) creating a sideshow about photo credits when

[10] *See Flaherty v. Filardi*, No. 03CIV.2167 (LTSHBP), 2009 WL 749570, at *10 (S.D.N.Y. Mar. 20, 2009) ("Plaintiff's failure to pursue discovery or press discovery-related complaints while discovery was open does not constitute an appropriate ground for reconsideration of the Court's summary judgment decision."), *aff'd*, 460 F. App'x 66 (2d Cir. 2012); *Lukensow v. Harley Cars of New York*, 124 F.R.D. 64, 66 (S.D.N.Y. 1989) ("It is not the duty of the Court to whom this protracted case has been assigned to contact plaintiffs and to urge or require them to prosecute this action, nor are defendants under any duty to take any steps to bring this case to trial.").

he has already been advised, with proof, that the Photographs used by CBSi were not attributed to Sands.[11]

**A. The Liebowitz Firm's Prolific Filing of Lawsuits Does Not Impute Willfulness to CBSi**

Sands' reliance on his history of suing CBSi as evidence of willfulness is improper. Br. at 23. Indeed, Sands claims that "CBSi has been sued for copyright infringement at least 16 times in this District," *id.*, but fails to mention that 14 of those lawsuits were filed by the Liebowitz Firm, Sands' counsel. CSUF ¶ 9. By attempting to impute willfulness to CBSi by virtue of the actions of his own counsel, Sands is forcing the adage "guilty until proven innocent" upon this Court. This is especially troubling considering that, in at least one of the lawsuits Sands cites in support of his argument that CBSi is willful, the Liebowitz Firm withdrew the lawsuit within five days of filing, after discovering that the use at issue was properly licensed by CBSi. CSUF ¶ 9; *Sands v. CBS Interactive Inc.*, No. 17-cv-00531-RA (S.D.N.Y. 2017). Using the sheer volume of lawsuits filed by the Liebowitz Firm as an indicator of willfulness would only serve to reward the firm's serial filing of lawsuits and encourage it to file lawsuits with little-to-no due diligence in the hopes of building a case against potential

[11] As noted in CBSi's CSUF, Sands' broad requests, asking for a wide array of material pertaining to any number of websites during an undefined period of time, fell well outside the bounds of Fed. R. Civ. P. 26. CSUF ¶ 58. Indeed, the requests he submits with his motion show that they were vague, built on unestablished presumptions, and replete with casual mistakes. *Id.* Sands never sought to amend his requests or otherwise pursue the matter in an appropriately proportionate way. *Fifty-Six Hope Rd. Music Ltd. v. UMG Recordings, Inc.*, No. 08 CIV. 6143 DLC, 2011 WL 3874859, at *2 (S.D.N.Y. Aug. 31, 2011) (denying motion to exclude evidence where "plaintiffs have had ample opportunity to pursue discovery and to raise any discovery dispute with the Court" and failed to do so). His reliance on CBSi's alleged lack of production (logical under the facts present) as evidence that CBSi "shoplifted the Photographs," Br. at 22, is unavailing. *Cf. Jowers v. DME Interactive Holdings, Inc.*, No. 00 CIV. 4753 LTS KNF, 2006 WL 1408671, at *13 & n.8 (S.D.N.Y. May 22, 2006) (rejecting party's argument that other side did not present evidence where the party failed to pursue discovery). In contrast, CBSi undertook significant efforts to subpoena third-parties and spent resources to examine Sands himself. *Id.* ¶ 59.

defendants. Notably, Sands cannot point to *one* instance where CBSi was actually held liable for copyright infringement. *See* Dkt. No. 20-6. What he does do, interestingly, is note that CBSi is a frequent licensor of photographs—including many of his own. Br. at 21.

Additionally, allowing Sands to use the fact of settlement as evidence of willfulness would frustrate the public policy of settlement, and incentivize defendants to eschew settlement negotiations in favor of litigation, for fear of settlement being used adversely against them in the future. It is well understood that parties often settle for nuisance value to avoid litigation costs, rather than because of liability or guilt; to take away this incentive would be contrary to public policy. *See Urbont v. Sony Music Entm't*, 100 F. Supp. 3d 342, 353 (S.D.N.Y. 2015) ("[A] settlement does not mean that the claim had merit or that it would have withstood scrutiny, and it is not a concession by a defendant that a claimant's argument, legal or factual, has merit." (internal citations and quotations omitted)), *aff'd in part*, vacated in part, 831 F.3d 80 (2d Cir. 2016); *Schaer v. City of New York*, No. 09 CIV. 7441 CM MHD, 2011 WL 1239836, at *13 n.9 (S.D.N.Y. Mar. 25, 2011) ("[P]re-trial settlements are made for many reasons (one of them being to save money in the long run) and do not suggest liability on anyone's part.").[12]

[12] While Sands would have the Court consider his filing of lawsuits as evidence of willfulness, the cases he cites in support of this position are inapposite. *See* Br. at 23. In *Design Tex Group, Inc. v. U.S. Vinyl Mfg. Corp.*, for example, this Court deemed defendants to be "recidivist" infringers due to the fact that they were warned of infringing conduct in 1998, and then continued such conduct until at least 2001. No. 04 CIV. 5002 (JSR), 2005 WL 2063819, at *3 (S.D.N.Y. Aug. 24, 2005). Here, the conduct at issue in the lawsuits Sands cites occurred on or around 2016. *See* Cplt. The fact that Sands initiated two lawsuits against CBSi in 2018 did not put CBSi "on notice" of anything in 2016. *Viacom Int'l Inc. v. Fanzine Int'l, Inc.*, can likewise be distinguished, as the court cited that the defendant had been previously held liable for copyright infringement due to a default judgment entered against it. No. 85974, 2001 WL 930248, at *3 (S.D.N.Y. Aug. 16, 2001). Indeed, after the defendant defaulted, all allegations of infringement were "taken to be true." *Id.* Such is not the case here. Sands additionally cites *EMI Entm't World, Inc. v. Karen Records, Inc.*, overlooking the fact that the court's decision was vacated on a motion to set aside the judgment and the case was dismissed. 806 F. Supp. 2d 697 (S.D.N.Y. 2011), *vacated*, No. 05 CIV. 390 LAP, 2013 WL 2480212 (S.D.N.Y. June 10, 2013).

**B. Sands' Photo "Credit" Argument Is a Sideshow: He Is Well Aware That the Photographs Were Not Originally Published on ComingSoon.Net with Attribution to Sands**

Sands now represents that Evolve Media originally published the Photographs to the ComingSoon.net Website with attribution to Sands, but the evidence does not bear this out.[13] Br. at 22. In support of his argument that the ComingSoon.net article included CMI when it was initially published in October 2016, Sands provides: (1) a spreadsheet produced by Evolve Media via a third-party subpoena issued by CBSi (the "Evolve Spreadsheet"); and (2) screenshots of the ComingSoon.net article as it *presently* appears, two and a half years after it was initially posted (the "Current ComingSoon Screenshot"). CSUF ¶ 18.

Sands identifies the Evolve Spreadsheet as "business records," implying that it was created in the regular course of business, at the time the Photographs were originally posted. Dkt. 19 ¶ 13. They were not. CSUF ¶ 18. This spreadsheet was produced following Evolve Media's receipt of a subpoena *duces tecum*, which CBSi served on it on or about December 21, 2018. *Id.* The fact that the "Caption" column contains Sands' name proves nothing about how the Photographs were displayed in October 2016. Still, Sands cites to the Evolve Spreadsheet as evidence that "[w]hen Evolve Media published the Photographs to the comingsoon.net website under a license from Getty, it included an attribution to my name 'Steve Sands' under each one of the Photographs." Dkt. 19 ¶ 15; Dkt. 22 ¶ 18. As CBSi has explained to Sands' counsel already, discussed *supra*, this is unsupportable.

Sands proffers the Current ComingSoon Screenshot, as it appears *now*, two and a half years following the relevant time frame, as evidence of how it appeared in October 2016,

[13] Had Sands truly believed that the Photographs were originally published with copyright management information ("CMI"), as he claims for the first time in his Motion, he would have undoubtedly included a cause of action for CMI removal, alteration, or falsification under Section 1202 of the Copyright Act. He did not do so.

misrepresenting it as a screenshot from 2016. Dkt. 19 ¶ 14. Numerous facts, which have all been brought to Sands' attention, prove this false, and conclusively demonstrate that the Photographs were never originally published with attribution to Sands, and that they have been updated post-publication. CSUF ¶ 18. Indeed, for a plaintiff represented by a firm well-versed in the issues, if CMI had existed on ComingSoon.net, Sands likely would have included a claim for a CMI violation.

*First*, a full version of the article proffered by Sands in support of his assertion that ComingSoon.Net originally attributed Sands (Ex. G to Sands' Declaration, Dkt. 19, entitled: "Jon Bernthal Starts Filming Marvel's The Punisher"), shows that the article was published on October 3, 2016—*two days* before the Photographs were taken (on October 5, 2016). Dkt. 22 ¶ 12; CSUF ¶ 17. Since the Photographs do, in fact, appear in the article referenced by Sands, the only logical conclusion is that the article was edited after initial publication, and cannot be relied upon. CSUF ¶ 18.[14] Another indicator that the article was updated post-publication, is that its gallery contains photographs from April 12, 2017, at least six months after its initial publication. *Id.*

*Second*, a comparison of the Photographs as used on GameSpot to the present use in the Current ComingSoon Screenshot (Ex. G to Sands' Declaration, Dkt. 19), shows that CBSi could not have possibly sourced the Photographs as they appear now on ComingSoon.net:

[14] It is not outside the realm of possibility that the ComingSoon.net article was updated by Evolve Media following the filing of various lawsuits against it by the Liebowitz Firm, which all included causes of action for removal of CMI. *See, e.g.*, *Hermann v. Evolve Media, LLC*, No. 18-cv-10117-GHW (S.D.N.Y. 2018); *Weiss v. Evolve Media, LLC*, No. 18-cv-04736-JPO (S.D.N.Y. 2018); *Yang v. Evolve Media, LLC*, No. 17-cv-05529-AJN (S.D.N.Y. 2017). Furthermore, other photographs currently available on the ComingSoon.net Website show that it routinely omits CMI. CSUF ¶ 18. In any event, it would not have been unusual for the ComingSoon.net article to have omitted credit to Sands. Pursuant to the Getty Agreement produced by Sands, there is no such requirement. CSUF ¶ 11.

| Current ComingSoon.net Screenshot | GameSpot Article in 2016 |
| --- | --- |
| arvel's "The Punisher" on October 5, 20 | COMINGSOO images |

As shown above, had the original ComingSoon.net Article contained the CMI as it appears now, in the Current ComingSoon Screenshot, CBSi would not have been able to use the Photographs as they appeared in 2016 on GameSpot, because the CMI text would have run across the bottom of the Photographs. CSUF ¶ 18.[15]

### C. CBSi's Good Faith Belief That the Photographs Were Publicity Shots Released by the Studio Was Reasonable, and Cuts Against Any Argument of Willfulness

The circulation of photographs from the set of a production by studios (commonly referred to as "handouts" or "publicity stills"), to be used by the press for free—to publicize such productions—is a long-standing entertainment industry practice. *See, e.g.*, *Hollywood Glamour: 1924 – 1956* at 8 (David Bordwell ed., 1987) (describing how studios sent tens of thousands of publicity stills to newspapers and magazines and such photographs were rarely marked with the photographer's name or credit). It is entirely reasonable that a media entity would see the Photographs, which were taken on the set of *The Punisher*, and displayed on a website with no

[15] Indeed, CBSi's counsel communicated this to the Liebowitz Firm on January 11, 2019, and the issue was presumably resolved. CSUF ¶ 18.

credit to a particular photographer, and believe that they were handouts.[16]   Indeed, Sands concedes that many media outlets have used his photographs and credited them to studios, because it is common practice.  SAMF ¶ 7.  Even with regard to the specific Photographs at issue in this lawsuit, many online entities used these Photographs without attribution to Sands, believing them to be "still photographs" from the set of the Punisher.  SAMF ¶ 9.  It is therefore reasonable to conclude that Sands either wanted the Photographs to be widely distributed, or that he did not take appropriate steps to ensure proper credit.[17]

## III.   PLAINTIFF'S APPLICATION FOR ATTORNEYS' FEES SHOULD BE DENIED

### A.   Sands' Application for Attorneys' Fees Is Premature

Section 505 of the Copyright Act permits a party to request attorneys' fees if it is a "prevailing party."  17 U.S.C. § 505.  Sands seeks to argue now the collateral issue of whether he a prevailing party, and consequently entitled to attorneys' fees, despite that there has been no final judgment on the legal merits of this case (and he had not even seen CBSi's moving papers in support of its motion for summary judgment at the time of the request).  Br. at 24; *see Jackson v. Odenat*, 9 F. Supp. 3d 342, 367 (S.D.N.Y. 2014) (holding that prior to a determination of

---

[16]  Dan Auty, the author of the GameSpot article, confirmed his understanding of studios' common practice of releasing publicity photographs for authorized republication.  Dkt. No. 25 ¶ 4.

[17]  Sands' argument that CBSi's use of his Photographs was unnecessary—as part of his fair use analysis—is unavailing, and also fails to support any argument for willfulness.  *See* Br. at 16 n.11.  The purpose of the GameSpot article was to share behind-the-scene photographs and report on casting news; Sands' proposal that CBSi could have published the article with other photographs or without any photographs whatsoever entirely ignores this purpose.  *Id.* There would have been no reason to publish the article in the first place, if it merely featured unrelated photos or no photos at all.  Dkt. 1, Ex. C.  Sands' argument that CBSi would have licensed the Photographs from either him or Getty likewise ignores the fact that the Photographs *did not* contain credit—to Sands or Getty.  Dkt. 25 ¶ 8.  As such, there was no way for CBSi to know who to reach out to for permission, beyond ComingSoon.net, which placed its watermark on the Photographs.  *Id.* ¶ 5.  Based on this watermark, CBSi did all it reasonably could do under the circumstances and added a credit and linked back to ComingSoon.net.  *Id.* ¶ 9.

which party is "prevailing" under the Copyright Act, "[i]t is [] premature for the Court to consider [a] request for attorney's fees"). In Sands' own Brief, he admits that an award of attorneys' fees and costs is appropriate "[u]pon granting summary judgment to a copyright plaintiff." Br. at 24. As a matter of logic, this issue is premature at this juncture, and should appropriately be reserved for the conclusion of this action.

### B. Even If Sands' Request for Attorneys' Fees Was Not Premature, He Is Not Entitled to Such Relief

In *Fogerty v. Fantasy, Inc.*, the Supreme Court listed several factors for a court to consider in exercising its discretion to award or deny fees, including "frivolousness, motivation, objective unreasonableness . . . and the need in particular circumstances to advance considerations of compensation and deterrence." 510 U.S. 517, 535 n.19 (1994). These factors may guide a court's discretion so long as they "are faithful to the purposes of the Copyright Act" and applied evenhandedly to claims and defenses. *Id.*; *see also Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1986 (2016) (concluding fee awards should "encourag[e] and reward[] authors' creations" but also "enabl[e] others to build on that work").

Of the non-exclusive *Fogerty* factors, "objective unreasonableness," while not dispositive, is given "substantial weight." *Kirtsaeng*, 136 S. Ct. at 1989. Sands fails to argue that CBSi's arguments were objectively unreasonable, except—without any factual support—to state that they "fail miserably." Br. at 25. In fact, aside from listing the *Fogerty* factors in a conclusory fashion, Sands fails to discuss any facts supporting his application, and instead fashions a new factor he believes the Court should consider in awarding attorney's fees: "the efforts of [Sands'] counsel, Liebowitz Firm." *Id.* But that is not the test, and the Court should decline Sands' invitation to consider it.

In any event, Sands' claim that he vigorously litigated this case is belied by the evidence. CSUF ¶ 59. Sands' attorneys admitted that, because of the volume of cases Sands files, discovery is a "cut-and-paste job" for him. *Id.* Indeed, he reproduced material from other cases (some labeled with other defendants' names), which—along with printouts from PACER—consists of nearly all of the document production. *Id.* Knowing what the writer of the GameSpot article and GameSpot editor would say, he took no steps to depose them. *Id.* ¶¶ 48, 49. Sands repeatedly failed to timely provide metadata that is material to the case. *Id.* ¶ 63. He showed up to his deposition not knowing which photographs were at issue. *Id.* ¶ 59. Haphazard and mechanical compliance with the discovery process, including filing meritless motions, does not reflect the type of behavior that would warrant recompense.

## CONCLUSION

Accordingly, for the reasons stated herein, the Court should deny Sands' Motion for summary judgment in its entirety.

Respectfully Submitted,

Dated: February 8, 2019
New York, New York

COWAN, DEBAETS, ABRAHAMS & SHEPPARD LLP

By: /s/ Eleanor M. Lackman
Eleanor M. Lackman
Lindsay R. Edelstein
Sara Gates
41 Madison Avenue, 38th Floor
New York, New York 10010
Tel.: (212) 974-7474
Fax: (212) 974-8474
ELackman@cdas.com
LEdelstein@cdas.com
SGates@cdas.com

*Attorneys for Defendant CBS Interactive Inc.*