UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STEVE SANDS,

Plaintiff,

-against-

CBS INTERACTIVE INC.,

Defendant.

Case No. 18-cv-07345 (JSR)

ECF Case

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT CBS INTERACTIVE INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Eleanor M. Lackman
Lindsay R. Edelstein
Sara Gates
COWAN, DEBAETS, ABRAHAMS & SHEPPARD LLP
41 Madison Avenue, 38th Floor
New York, New York 10010
Tel.: (212) 974-7474
Fax: (212) 974-8474
ELackman@cdas.com
LEdelstein@cdas.com
SGates@cdas.com

*Attorneys for Defendant CBS Interactive Inc.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........ ii

PRELIMINARY STATEMENT ........ 1

ARGUMENT ........ 2

I. SANDS HAS PROFFERED NO EVIDENCE SUFFICIENT TO CREATE A GENUINE ISSUE OF MATERIAL FACT ON WILLFULNESS ........ 2

A. Sands Bears the Burden of Proving Willfulness ........ 2

B. Auty's Declaration Is Admissible Evidence Under Fed. R. Civ. P. 56(c)(4) ........ 3

C. *Ferdman* Is Only Distinguishable in that Plaintiff Actually Made an Effort to Establish Willfulness in that Case ........ 5

D. Sands Fails to Demonstrate that the Photos Were First Published with CMI ........ 5

E. Sands Misconstrues Auty's Testimony as "Evidence of Custom and Practice" ........ 7

F. Despite it Being Plaintiff's Burden to Prove Willfulness, CBSi Has Sufficiently Demonstrated its Good Faith Belief that the Photographs Were Publicity Stills ........ 7

II. SANDS' OWN DOCUMENTS SHOW THAT HIS PRACTICE IS TO LICENSE PHOTOS AS A SET, SO ONLY ONE AWARD (IF ANY) WOULD BE PROPER ........ 8

CONCLUSION ........ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agence France Presse v. Morel*,
769 F. Supp. 2d 295 (S.D.N.Y. 2011)....................6

*Childress v. Taylor*,
798 F. Supp. 981 (S.D.N.Y. 1992)....................3

*Coogan v. Avnet, Inc.*,
No. 04 Civ. 0621 (PHX) (SRB), 2005 WL 2789311 (D. Ariz. Oct. 24, 2005) ....................9

*Dietle v. Miranda*,
2:14-cv-01728-WBS-AC (E.D. Cal. Sept. 7, 2016) ....................4

*DiStiso v. Cook*,
691 F.3d 226 (2d Cir. 2012)....................4

*Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*,
307 F.3d 197 (3d Cir. 2002)....................7

*EMI Entm't World, Inc. v. Karen Records, Inc.*,
806 F. Supp. 2d 697 (S.D.N.Y. 2011), *vacated on other grounds*, No. 05-civ-390 (LAP), 2013 WL 2480212 (S.D.N.Y. June 10, 2013) ....................6

*Fallaci v. New Gazette Literary Corp.*,
568 F. Supp. 1172 (2d Cir. 1983) ....................6

*Famous Music Corp. v. Seeco Records, Inc.*,
201 F. Supp. 560 (S.D.N.Y. 1961)....................7

*Ferdman v. CBS Interactive, Inc.*,
1:17-cv-01317-PGG (S.D.N.Y. Oct. 27, 2017) ....................4, 5, 7

*Fitzgerald Pub. Co. v. Baylor Pub. Co.*,
807 F.2d 1110 (2d Cir. 1986), *aff'd*, 738 F. App'x 722 (2d Cir. 1988)....................3

*Folio Impressions, Inc. v. Byer California*,
937 F.2d 759 (2d Cir. 1991)....................4

*Gamma Audio & Video, Inc. v. Ean-Chea*,
11 F.3d 1106 (1st Cir. 1993)....................9

*Island Software & Computer Serv., Inc. v. Microsoft Corp.*,
413 F.3d 257 (2d Cir. 2005)....................3

*Latin Am. Music Co., Inc. v. Spanish Broad. Sys., Inc.*,
232 F. Supp. 3d 384 (S.D.N.Y. 2017)....................3

*Leveyfilm, Inc. v. Fox Sports Interactive Media, LLC*,
999 F. Supp. 2d 1098 (N.D. Ill. 2014)....................6

*Palmer/Kane LLC v. Rosen Book Works LLC*,
204 F. Supp. 3d 565 (S.D.N.Y. 2016)....................7

*S.E.C. v. Singer*,
786 F. Supp. 1158 (S.D.N.Y. 1992)....................4

*Tang v. Putruss*,
521 F. Supp. 2d 600 (E.D. Mich. 2007)....................9

*Weinstein Co. v. Smokewood Entm't Grp., LLC*,
664 F. Supp. 2d 332 (S.D.N.Y. 2009)....................7

*Yellow Pages Photos, Inc. v. Ziplocal, LP*,
795 F.3d 1255 (11th Cir. 2015)....................9

**Rules**

Fed. R. Civ. P. 56....................3

**Other Materials**

*Hollywood Glamour: 1924 – 1956* (David Bordwell ed., 1987)....................8

H.R. Rep. No. 1476 (1976)....................9

William F. Patry, PATRY ON COPYRIGHT § 17:92....................8

**PRELIMINARY STATEMENT**

Sands' opposition demonstrates that there is no genuine issue of material fact for trial on CBSi's lack of willfulness and on the amount of statutory damage awards to which he is purportedly entitled. Sands' attempt to rebut CBSi's showing of lack of willfulness consists of nothing more than an argument that Sands disagrees with Auty's testimony, and conclusory recitations of his argument that media companies are "willful" by default. However, Sands cannot speak to Auty's state of mind, and he never made any attempt to explore it. Apparently, misunderstanding the burdens on summary judgment, Sands also improperly asks the Court to make credibility determinations at this stage. In any event, Auty's description is credible, consistent with even Sands' testimony, and, most importantly, not rebutted by any admissible evidence that creates a genuine issue of material fact for trial.

Sands' smokescreen arguments do not refute CBSi's positions on the single-award issue either. The fact is that Sands has *never* received a license fee for use of any of the photographs individually; he has only licensed them as a set. To overcome this problem, Sands now appears to submit misleading testimony to the Court about a single-photograph license—a license that he previously insisted at his deposition he never granted—and, tellingly, for which he has submitted no evidence that it was ever granted. At best, even if his newfound evidence should be considered, all it shows is that Sands gave away the photographs for free, and allowed them to be displayed without credit to him.

As detailed below, Sands' failure to proffer appropriate evidence on either of these issues demonstrates that there is no genuine issue on either topic for trial. Judgment should be granted now on those issues accordingly.

## ARGUMENT[1]

### I. SANDS HAS PROFFERED NO EVIDENCE SUFFICIENT TO CREATE A GENUINE ISSUE OF MATERIAL FACT ON WILLFULNESS

Summary judgment is appropriate here because CBSi has shown that Dan Auty's purpose in using the photographs was to use what he reasonably believed were publicity stills released by studios to generate excitement about the production. SUMF ¶ 9. Sands did not do anything to challenge the reasonableness of Auty's belief, or these facts, during discovery, and it is implausible that Sands will be able to do so at trial, particularly given that Auty is an independent contractor outside the subpoena power of the Court. CSUF ¶ 48. Sands' attempts to rebut these showings are unavailing, as addressed below.[2]

#### A. Sands Bears the Burden of Proving Willfulness

First, Sands' attempt to shift the burden to CBSi to show innocence is improper. *See* Plaintiff's Opposition Brief ("Br.") at 3–4. As Sands readily admits, the burden is on the *plaintiff* to proffer evidence sufficient to permit the issue of willfulness to go before a jury, and he has not done so. *See id.* at 2. Instead, Sands seeks to shift that burden to CBSi by arguing that CBSi is required to "show <u>both</u> (1) a subjective good faith belief that [its] conduct was innocent, <u>and</u> (2) that [its] belief was objectively reasonable under the circumstances." *Id.* at 4 (citing *Marshall v. Marshall*, No. 08 CV 1420 (LB), 2012 WL 1079550, at *25 (E.D.N.Y. Mar. 30, 2012, *aff'd* 504 F. App'x 20 (2d Cir. 2012)). That, however, is the standard for the defense of innocent

---

[1] The material facts and definitions set forth in CBSi's Moving Brief (Dkt. 24) at 2–4, as well as in CBSi's Rule 56.1 Statement of Material Facts ("SUMF") (Dkt. 27), Rule 56.1(b) Counterstatement of Material Facts ("CSUF") (Dkt. 40), and Statement of Additional Material Facts ("SAMF") (*id.*), are incorporated herein by reference.

[2] Sands does not fully comply with Your Honor's Individual Rule 2(e), which requires that "[c]itations to the record in any memorandum of law filed in connection with a motion for summary judgment [] include a citation to the party's Local Civil Rule 56.1 Statement of Material Fact or opposition thereto." Sands' citations are sparse. *See* Dkt. 33.

infringement, on which CBSi would bear the burden of proof. *Here*, the burden is on Sands to establish willfulness, so his arguments regarding "innocent infringement" should be rejected.[3]

Sands cannot meet his burden of establishing willfulness because he did not and cannot show that CBSi had actual knowledge that its actions constituted infringement or that CBSi had a reckless disregard for the copyright holder's rights. *Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 263 (2d Cir. 2005). As CBSi explained in its moving papers (Dkt. No. 24 at 6–8), and in its opposition to Sands' summary judgment motion on the issue of willfulness (Dkt. No. 37 at 13–19), there is no evidence in the record that CBSi was aware or had any reason to know that its use of the photographs was infringing.[4] To the contrary, Auty had a good faith belief that the photographs were distributed for the purpose of using them to promote the upcoming *Punisher* show. SUMF ¶¶ 7-9.

**B. Auty's Declaration Is Admissible Evidence Under Fed. R. Civ. P. 56(c)(4)**

"An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Despite the fact that Auty's testimony meets all these elements, Sands claims that—citing Rule 56(c)(4) and

[3] As the Second Circuit has recognized (in two of the cases Sands cites): "It is plain that 'willfully' infringing and 'innocent intent' are not the converse of one another." *Latin Am. Music Co., Inc. v. Spanish Broad. Sys., Inc.*, 232 F. Supp. 3d 384, 393 (S.D.N.Y. 2017) (quoting *Fitzgerald Pub. Co. v. Baylor Pub. Co.*, 807 F.2d 1110, 1115 (2d Cir. 1986), *aff'd*, 738 F. App'x 722 (2d Cir. 1988)); *accord Childress v. Taylor*, 798 F. Supp. 981, 996 (S.D.N.Y. 1992). Thus, a defendant's willfulness (or lack thereof), and a defendant's innocence are two separate inquiries. *Fitzgerald*, 807 F.2d at 1115 ("[I]t is possible in the same action for a plaintiff not to be able to prove a defendant's willfulness, and, at the same time, for the defendant to be unable to show that it acted innocently.").

[4] There is no deposition testimony, no suspicion, and the only proffered "evidence" is flawed and unreliable. CSUF ¶ 18.

notwithstanding the testimony that Auty gave[5]—it just cannot be that he is telling the truth. Br. at 13. Sands, however, offers no conflicting testimony or credible evidence, and mischaracterizes Auty's testimony as "speculative." Sands is wrong.

Auty's testimony is "made on personal knowledge": Auty speaks firmly and clearly as to his practices at the time and justifies the bases for his conclusions with specificity and care. SUMF ¶¶7-10; *see S.E.C. v. Singer*, 786 F. Supp. 1158, 1167 (S.D.N.Y. 1992) (witness's conclusions based on personal observations over time may constitute personal knowledge); *Folio Impressions, Inc. v. Byer California*, 937 F.2d 759, 764 (2d Cir. 1991) (test for admissibility is whether a reasonable trier of fact could believe the witness had personal knowledge). Auty did not know that Sands purportedly took the photographs, but that is not for failure of memory but rather because, as he testified, there was no photo credit. SUMF ¶ 9.[6] Sands now admits that he licensed the photographs to be published without attribution to him. *See* Dkt. 35 ¶ 4, Ex. B (FirstLookTVFilm use). With no knowledge of Auty's views or experience with the use of the photographs—and without explaining why Auty's statements are purportedly "speculative"—Sands concludes that they cannot be relied upon, citing inapposite cases. Br. at 6.[7]

---

[5] Indeed, this same type of testimony has been deemed sufficient to obtain a rejection of a willfulness claim on a motion for summary judgment. *See* Dkt. 34, Declaration of Dan Auty, *Ferdman v. CBS Interactive, Inc.*, 1:17-cv-01317 (PGG) (S.D.N.Y. Oct. 27, 2017).

[6] As Auty explained, if there were credit to a photographer, he would have realized that the photographs might not have been on-set publicity stills distributed to the media for use. SUMF ¶¶ 7-10. Nor did he have any notice that what he was doing might possibly have been infringing. *Id.* The watermark identified a site that looked to be a source for publicity stills. *See* CSUF ¶ 18.

[7] In *Dietle v. Miranda*, for example, the testimony that was deemed speculative included statements such as: "I have no idea what the medical provider is supposed to do at an intake exam. I have no personal knowledge of this information." Dkt. 31-1, Declaration of Darrell Dietle, *Dietle v. Miranda*, 2:14-cv-01728-WBS-AC (E.D. Cal. Sept. 7, 2016). Yet the court properly considered certain assertions plaintiff was "competent to testify to," including conclusions made despite incomplete knowledge. *Id.* In *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012), the court found lack of "competency" where the testimony at issue was taken when the witness "was eight years old about events occurring when he was five and six."

### C. *Ferdman* Is Only Distinguishable in that Plaintiff Actually Made an Effort to Establish Willfulness in that Case

Sands had every opportunity to test Auty's knowledge, yet he did not, in effect conceding that Auty's knowledge at the time—within two weeks of the uses discussed in *Ferdman*—was not knowing or reckless. SUMF ¶¶ 7-10; CSUF ¶ 48. Notably, in *Ferdman*, plaintiff took the testimony of *two* witnesses, and the court nonetheless found no willfulness as a matter of law. *See* 342 F. Supp. 3d at 543. Here, Sands has taken *no* depositions, issued *no* third-party subpoenas, issued cut-and-paste discovery demands and responses, and proffered one piece of unreliable, unauthenticated eleventh-hour "evidence" that proves nothing. CSUF ¶¶18, 46, 59.[8]

### D. Sands Fails to Demonstrate that the Photos Were First Published with CMI

As discussed in detail in CBSi's Opposition brief (Dkt. 37 at 19), the uncontroverted record demonstrates that Sands' photographs were posted by websites that bore no indicia that they were anything other than publicity shots and had no copyright notice, stated restrictions, or limitations on use, and that the author of the challenged article believed in good faith that his use of the photographs was permissible and did not infringe anyone's rights. SAMF ¶ 9; SUMF ¶¶ 7-10. Evidence recently proffered by Sands backfires: it shows that the claimed photographs were distributed as uncredited publicity stills. Dkt. 35 ¶4, Ex. B (FirstLookTVFilm use).

Sands has provided no credible evidence to support his claim that, if infringement occurred, CBSi did so willfully. The purported "evidence" that a credit to Sands originally existed, and therefore Auty must have seen it, is belated and belied by Sands' own documents. CSUF ¶18; Dkt. 38 ¶¶7-14; CBSi's Opp. at 16-18. The ComingSoon.net article Sands offers was

---

[8] Sands incorrectly claims that "Ferdman . . . never presented any factual evidence in opposition to CBSi's motion for summary judgment on the issue of willfulness." (Br. at 9). On the contrary, Ferdman argued that he had "shown enough on the record to indicate that it is a genuine issue of material fact in dispute" with respect to willfulness. *Ferdman*, Opposition, Dkt. 43, 1:17-cv-01317-PGG (S.D.N.Y. Oct. 30, 2017).

first published *prior to* the date Sands even took the photographs, it contains photographs post-dating its initial publication (indicating that aspects of the article, the gallery, and the photographs themselves were updated post-publication), and a comparison of CBSi's use of the photographs shows that CBSi could not have possibly used versions of the photographs with the "gutter credit" running across the bottom. *Id.*[9] *See also* Lackman Decl. ¶3, Ex. B.[10] In any case, because Auty testified that he did not see a credit appearing next to the image, and because Sands failed to contradict this evidence by deposing Auty or providing credible, contemporaneous documentation, it is undisputed on summary judgment.[11] Responsibility for Sands' lack of diligence in discovery, particularly on an issue where he bears the burden, cannot fall on CBSi.[12]

---

[9] Ironically, Sands railed against Evolve Media in his deposition (*see* Reply Declaration of Eleanor M. Lackman ("Lackman Decl."), ¶ 2, Ex. A at 145:16-25; 159:5-160:10; 160:22-161:11 ("They're flagrant thieves, [f]lagrant," "that's the arrogance of an internet thief," "they're one of the serial thieves")), and Sands' counsel has sued Evolve Media multiple times for copyright infringement and CMI removal. *See* CBSi's Opp. at 17, n.17. Now, Sands takes the position that Evolve Media had always given proper credit at all times. Br. at 7. Tellingly, Sands did not bring a CMI removal claim when he filed this action. Dkt. 1. Sands knew that there was no credit on the photographs at the time the suit was filed, and he has offered no evidence that it was there in 2016 either.

[10] Sands' citation to "the record" for the support that Auty pulled the photographs from a current-day version of a website (Br. at 7) is unsupported. The record shows unequivocally that the photographs appeared all over the Internet with the ComingSoon.net watermark. SAMF ¶ 9. Sands now says that he, himself, authorized the photographs to be distributed without attribution to him. Dkt. 35 ¶ 4, Ex. B (FirstLookTVFilm use).

[11] *Agence France Presse v. Morel*, 769 F. Supp. 2d 295 (S.D.N.Y. 2011), and *Leveyfilm, Inc. v. Fox Sports Interactive Media, LLC*, 999 F. Supp. 2d 1098 (N.D. Ill. 2014), are inapposite. In both cases, it was undisputed that there was credit originally accompanying the photographs, and both decisions discussed the credit in the context of CMI claims, not a determination of willfulness. *EMI Entm't World, Inc. v. Karen Records, Inc.*, 806 F. Supp. 2d 697, 701 (S.D.N.Y. 2011), *vacated on other grounds*, No. 05-civ-390 (LAP), 2013 WL 2480212 (S.D.N.Y. June 10, 2013), and *Fallaci v. New Gazette Literary Corp.*, 568 F. Supp. 1172 (2d Cir. 1983), are also off-point. *EMI* involved termination notices, not CMI (and was ultimately vacated). In *Fallaci*, the Court found willfulness based on multiple factors—not just one, as Sands would have the Court believe. As his own case law shows, simply being a media company is not enough to meet the high burden of willfulness.

[12] Sands, again, misrepresents CBSi's discovery responses referencing Mr. Ramsay. CBSi's response to interrogatory number 14, which sought the identification of all persons with

**E. Sands Misconstrues Auty's Testimony as "Evidence of Custom and Practice"**

Because Sands failed to take Auty's deposition and cannot point to any credible evidence controverting Auty's testimony, he attempts to misconstrue Auty's testimony—based on his own personal knowledge—as "evidence of custom and practice." Br. at 9. In the process, Sands also misrepresents CBSi's Motion, the case law, and the standard for admissibility. *Id.* Contrary to what Sands would have the Court believe, Auty testified as to industry practice to show that his belief (that the images were publicity stills) was reasonable (*see* SUMF ¶¶ 5-10), *not* for any other reason, such as to raise a defense to infringement, as was the issue each case Sands cites.[13]

Given that Auty is not testifying to "custom and practice," but rather on his personal knowledge, Sands' discussion regarding expert opinions is non-sensical and off-point. Br. at 10. Notably, Sands himself recognized the practice that publicity stills are widely circulated. SAMF ¶ 8. This is also a belief that Judge Gardephe credited in *Ferdman*. *See Ferdman*, 342 F. Supp. 3d at 543 (lack of willfulness where GameSpot believed photos were "studio publicity shots").

**F. Despite it Being Plaintiff's Burden to Prove Willfulness, CBSi Has Sufficiently Demonstrated its Good Faith Belief that the Photographs Were Publicity Stills**

Again, forgetting that he has the burden of proving willfulness, Sands provides a laundry list of hypothetical documents CBSi could have provided to prove its lack of willfulness.[14] Even

---

supervisory control over the editorial process concerning the GameSpot article, stated that the interrogatory wrongfully "assume[d] that other persons had 'supervisory control' over the Article," "interpret[ed] . . . the Interrogatory [as] seek[ing] the identification of any editor of the Website[,]" and then provided Mr. Ramsay's name. CSUF ¶¶46, 49. Sands could have taken Mr. Ramsay's testimony, but chose not to.

[13] *See Palmer/Kane LLC v. Rosen Book Works LLC*, 204 F. Supp. 3d 565, 575 (S.D.N.Y. 2016) (asserting license defense); *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 211 (3d Cir. 2002) (same); *Weinstein Co. v. Smokewood Entm't Grp., LLC*, 664 F. Supp. 2d 332, 348 (S.D.N.Y. 2009) (same); *Famous Music Corp. v. Seeco Records, Inc.*, 201 F. Supp. 560, 566 (S.D.N.Y. 1961) (defense to making royalty payments).

[14] This list includes, but is not limited to, documents showing that studios and/or production companies released handouts or press kits in connection with *The Punisher*, evidence that any

if it were CBSi's burden to prove willfulness, *which it is not*, the proof Sands demands would be irrelevant. CBSi is not arguing that Auty was confused between direct publicity handouts and the photographs Sands purportedly took; none of these are relevant to Auty's beliefs at the time.[15]

Sands' argument that CBSi "chose" to only use "five of the 64" photographs published in the ComingSoon.net article demonstrates how woefully unaware Sands is of the futility of his reliance on that article as proof of willfulness. *First*, the cited article is dated October 3, 2016, *two days* before he took the photographs. *See* Lackman Decl., Ex. B. *Second*, of the "64 Photographs" published in the ComingSoon.net article, 46 of them bear dates *after* October 7, 2016, the date the GameSpot article was published. *Id.* These examples prove that Sands' reliance on the ComingSoon.net article is an ineffective cover for his failure to show willfulness.

## II. SANDS' OWN DOCUMENTS SHOW THAT HIS PRACTICE IS TO LICENSE PHOTOS AS A SET, SO ONLY ONE AWARD (IF ANY) WOULD BE PROPER

Sands attempts to muddy the waters by conflating the fact that all the works in a group registration "may be sued upon individually," (Br. at 13) (emphasis in original), with whether each work warrants a separate award of statutory damages. Even the sources Sands cites recognize this distinction. *See* 5 William F. Patry, PATRY ON COPYRIGHT § 17:92 (emphasis added) ("[v]alid group registration also satisfies sections 411(a) and 412 for each and every work in the group, thereby permitting (*but not requiring*) a separate award of statutory damages per work.") (emphasis added). Even assuming *arguendo* that Sands has satisfied the requirements for

---

studio has ever released any photos to CBSi, or an explanation why CBSi chose to purportedly use only five of the 64 photos published in the ComingSoon.net article Sands provides. Br. at 11.

[15] Furthermore, Sands never sought documents evidencing CBSi's awareness of studios circulating photographs from the set of a production to be used by the press for free to publicize such productions. This is a long-standing entertainment industry practice, and evidence of it is publicly available. *See, e.g.*, *Hollywood Glamour: 1924 – 1956* at 8 (David Bordwell ed., 1987) (describing how studios sent tens of thousands of publicity stills to newspapers and magazines, and such photographs were rarely marked with the photographer's name or credit).

group registration of published photographs (as he argues at length, *see* Br. at 13-14)—and which CBSi does not concede—this just means that he is eligible to use that registration option; it does not follow that he is entitled to one award of statutory damages per photo.[16]

Even if a group registration of photographs could support multiple awards of statutory damages, only one award is available for the photographs at issue here because they were taken of the same two subjects, by one photographer, at a single session and were also grouped together on the application using near-identical contents titles (i.e., "Bernthall, Woll 10.5 (1)," Bernthall, Woll 10.5 (2)," etc.).[17] *See Yellow Pages*, 795 F.3d at 1281 (granting one award per collection where photos were taken of one subject, by one photographer, at a single session); *see also, e.g.*, *Coogan v. Avnet, Inc.*, No. 04 Civ. 0621 (PHX) (SRB), 2005 WL 2789311, at **5-6 (D. Ariz. Oct. 24, 2005) (photos taken at a single session, by a single photographer, for a single purpose, and subject to a single license agreement, was one work); *Tang v. Putruss*, 521 F. Supp. 2d 600, 609-10 (E.D. Mich. 2007) (same).

Sands' assertion that he licensed the photographs to various media outlets individually is belied by his own evidence. Br. at 20. Neither of the photographs licensed to Microsoft are at issue in this case. *See* Lackman Decl. ¶¶ 4-7, Ex. C. While one of the photographs at issue was

---

[16] Notably, none of the cases Sands cites granted one award of statutory damages per photograph registered under the group registration of published photographs option. *See Gamma Audio & Video, Inc. v. Ean-Chea*, 11 F.3d 1106 (1st Cir. 1993) (involving television episodes, not photographs, and did not involve the same group registration of published photographs option, which applies only to photographs and did not exist at the time that the *Gamma* registration issued); *Yellow Pages Photos, Inc. v. Ziplocal, LP*, 795 F.3d 1255, 1279-80 (11th Cir. 2015) (Sands recites plaintiff's argument—*not the court's holding* or even *dicta*; the court rejected the plaintiff's argument—stating that, "[i]f anything, [the group registration] requirements reinforce the conclusion that the [] photos associated with them are *collective works*").

[17] Further, awarding Sands a windfall in statutory damages for such an insignificant use runs counter to the policy underpinning the addition of the group registration option. *See* House Report on the 1976 Amendment of the Copyright Act, H.R. Rep. No. 1476, 94th Cong., 1st Sess. (1976) (explaining that group registration of multiple works was established in order to encourage authors to seek copyright registration).

licensed to Hearst, along with another similar photograph from the same photoshoot, this only further proves CBSi's point that such photographs are licensed in sets, not independently. Whether the set is of two photographs or five, Sands has provided no credible evidence that he has licensed the photographs at issue individually, and none of these were licensed by Sands himself. *See* Lackman Decl. ¶ 2, Ex. A at 129:17-24; *see also, e.g.*, Dkt. 19 ¶ 4, Ex. A (licensing agreement proposing to license group of photographs from single shoot for one lump sum).

The fact that "FirstLook" used a free photograph purportedly given to it by Sands proves nothing, except the fluidity of Sands' positions. Dkt. 35 ¶ 4. Sands' assertion that he "licensed the photographs to various media outlets" contradicts numerous representations made by both him and his counsel.[18] In Sands' Declaration, Sands testifies that First Look is "another licensee who used one of the photographs at issue in this case." Dkt. 35 ¶ 4.[19] But Sands previously admitted, also under oath, that he had never directly licensed any of the photographs, and that Getty had been the sole licensor. *See* Lackman Decl. ¶ 2, Ex. A at 129:17-24.

## **CONCLUSION**

For the reasons stated herein and in all of its summary judgment papers, CBS Interactive Inc.'s Motion for Partial Summary Judgment should be granted.

---

[18] In Sands' Interrogatory Responses, he stated that only himself, his counsel, the Copyright Office, and Getty Images had knowledge regarding any use of the photographs. *See* Dkt. 26, Ex. 3, No. 4. FirstLook was not referenced. *Id.* In fact, when specifically asked during his deposition about the FirstLook screenshot he annexed to his declaration as proof that the photographs were licensed individually (Dkt. 35 ¶ 4, Ex. B), Sands had a different story: "Q. Did First Look license this photo from you? . . . A: I don't know . . . Q. So you haven't sued them? . . . A. I don't know. I'm not questioning that at this point. But I may be thanking you at another point because it doesn't look familiar." Lackman Decl. ¶ 2, Ex. A at 261:25 – 262:12.

[19] In his Opposition, Sands claims that, in addition to "licens[ing] the photographs to Getty[,]" he also licensed the photographs to various media outlets. Br. at 18-19.

Respectfully Submitted,

Dated: February 15, 2019
New York, New York

COWAN, DEBAETS, ABRAHAMS
& SHEPPARD LLP

By: /s/ Eleanor M. Lackman
Eleanor M. Lackman
Lindsay R. Edelstein
Sara Gates
41 Madison Avenue, 38th Floor
New York, New York 10010
Tel.: (212) 974-7474
Fax: (212) 974-8474
ELackman@cdas.com
LEdelstein@cdas.com
SGates@cdas.com

*Attorneys for Defendant CBS Interactive Inc.*