UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEVE SANDS,<br><br>　　　　Plaintiff,<br><br>　-against-<br><br>CBS INTERACTIVE INC.,<br><br>　　　　Defendant. | Case No. 18-cv-07345 (JSR)<br><br>ECF Case |

**DEFENDANT CBS INTERACTIVE INC.'S SUPPLEMENTAL
MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Eleanor M. Lackman
Lindsay R. Edelstein
Sara Gates
COWAN, DEBAETS, ABRAHAMS
& SHEPPARD LLP
41 Madison Avenue, 38th Floor
New York, New York 10010
Tel.: (212) 974-7474
Fax: (212) 974-8474
ELackman@cdas.com
LEdelstein@cdas.com
SGates@cdas.com

*Attorneys for Defendant
CBS Interactive Inc.*

## **PRELIMINARY STATEMENT**

During the parties' oral arguments, Your Honor granted CBSi additional time to depose Sands to identify factual issues to be tried based on documents that Sands belatedly produced. Because specific evidence calls into question whether Sands' copyright registration is valid, and because Sands' argument that media entities are willful by default is unsupportable, genuine issues of material fact preclude summary judgment in Sands' favor.

## **ARGUMENT**[1]

### I. BELATEDLY PRODUCED EVIDENCE CONFIRMS THAT GENUINE ISSUES OF MATERIAL FACT PRECLUDE SUMMARY JUDGMENT

"[D]isputes over 'facts that might affect the outcome of the suit under the governing law' will preclude a grant of summary judgment." *Yi Fu Chen v. Spring Tailor, L.L.C.*, No. 14 CIV. 218 PAE, 2015 WL 3953532, at *4 (S.D.N.Y. June 29, 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The party opposing a motion for summary judgment may establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). Here, where CBSi proffers *specific evidence* creating a genuine issue of material fact, a denial of Sands' motion for summary judgment is appropriate. *Id.*

### A. Material Errors Exist in Sands' Copyright Registration

While possession of a certificate of copyright registration is prima facie evidence that the copyright is valid, and that the facts stated in the certificate are true, *see* 17 U.S.C. § 410(c), those presumptions may be rebutted "[w]here other evidence in the record casts doubt on the

---

[1] The material facts and definitions set forth in CBSi's Moving Brief (Dkt. 24) at 2-4, as well as in CBSi's Rule 56.1 Statement of Material Facts ("SUMF") (Dkt. 27), Rule 56.1(b) Counterstatement of Material Facts ("CSUF") (Dkt. 40), and Statement of Additional Material Facts ("SAMF") (*id.*), are incorporated herein by reference. Given the page constraints, CBSi will only address the issues of the invalidity of Sands' registration and CBSi's lack of willfulness, but incorporates the arguments set forth in its brief in opposition to Sands' motion for summary judgment ("Opposition" or "Opp."; Dkt. 37) with respect to all other points.

1

question." *Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 908 (2d Cir. 1980).[2] Evidence of material errors and/or omissions in the subject registration is sufficient to rebut the presumption of validity. *See McLaren v. Chico's FAS, Inc.*, No. 10 CIV. 2481 JSR, 2010 WL 4615772, at *4 (S.D.N.Y. Nov. 9, 2010) (Rakoff. J.) (registration invalid as a matter of law due to prior registration of some of the works); *Past Pluto Productions Corp. v. Dana*, 627 F. Supp. 1435, 1440 n.5 (S.D.N.Y. 1986) (registration invalid because derivative work with no original contribution cannot be the subject of a valid copyright); *see also Family Dollar Stores, Inc. v. United Fabrics Int'l, Inc.*, 896 F. Supp. 2d 223, 232 (S.D.N.Y. 2012) (similar; material errors).

Here, Sands and the Liebowitz firm committed numerous errors that a fact finder could conclude invalidate Sands' registration. *First*, Sands failed to identify the photographs as derivative works on his registration.[3] Indeed, paparazzi shots of film sets, like the photographs at issue here, should be considered derivative works, much as a recording of a play is a derivative of it or the movie trailer is derivative of the film. *See Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 342 F.3d 191, 198 (3d Cir. 2003), *as amended* (Sept. 19, 2003).[4] Sands himself

---

[2] Further, a valid registration or rejection thereof is needed for standing. *See* 17 U.S.C. § 411(a).

[3] As discussed in CBSi's Opposition, Sands took photographs of *The Punisher* cast in their staged positions, without making any original choices warranting copyright protection of the photographs. Opp. at 4. In his Reply Declaration, Sands claims that he chose the "angle" of the shot, and that he edited the photographs in post-production. Dkt. 48 ¶¶ 5, 7. However, Sands previously admitted that his angles are dictated by the limitations of the set (*see* SAMF ¶ 1), and that he did not spend time editing, adjusting the lighting, or otherwise making any adjustments to the photographs. Dkt. 38 ¶ 2, Ex. A at 148:10–22 (when asked if he edited the photographs at issue Sands responded, "probably not."). Sands claims that "timing is everything[,]" but then explains that the "timing" he refers to is not the timing of the photographs, but rather, his ability to crash sets and "function as a private investigator." Dkt. 48 ¶ 9. Notably, Sands appeared to be wholly unfamiliar with his declarations submitted during summary judgment briefing. *See* Supplemental Declaration of Eleanor M. Lackman ("Lackman Decl.") ¶ 2, Ex. A at 11:13-20 (Q. Do you recognize this, Mr. Sands? A. . . . no. I really don't.").

[4] The *Compendium of U.S. Copyright Office Practices* ("Compendium") provides that "[i]f a derivative work contains an appreciable amount of unclaimable material, the applicant generally should limit the claim to the new material that the author contributed to the work, and the

even refers to the location of the shoot as a "Movie Set." Lackman Decl. ¶ 2, Ex. A at 59:22-25.

As courts in this district have recognized, the knowing failure to advise the Copyright Office of a pre-existing related work constitutes a basis for holding the registration invalid. *See, e.g.*, *Russ Berrie & Co. v. Jerry Elsner Co.*, 482 F. Supp. 980, 987 (S.D.N.Y. 1980); *see also Compendium* § 618.5 (3d ed. 2017) (requiring that an applicant identify a work as derivative).

*Second*, Sands' admission that neither he nor the Liebowitz firm is aware of the publication dates of his photographs creates numerous factual issues precluding summary judgment on the issue of liability, and also creates an inference that the registration may contain both published and unpublished works. Lackman Decl. ¶ 2, Ex. A at 65:8-21; 67:4-25; *see Compendium* § 1116.1 (applicant cannot register a group that includes published and unpublished works). Indeed, to take advantage of the group registration option, an applicant needs knowledge that the works were published; the option was not created to allow applicants to dump photographs without due diligence. *Id.* Sands testified that the Liebowitz firm has no way of knowing whether the photographs it registers are actually published; Sands uploads photographs to the Liebowitz firm's server, and no further detail is requested. Lackman Decl. ¶ 2, Ex. A at 65:8-15, 67:4-25.[5] Notably, Donna Halperin's declaration is silent regarding her knowledge of publication dates, *see* Dkt. 21, and Sands has provided no evidence of the publication dates for the photographs in his registration.[6]

---

unclaimable material should be excluded from the claim." *Compendium* § 507.2; *accord* § 618.5. Thus, Sands should have limited his claim to any new material he specifically contributed to the photographs, and the unclaimable material would belong to the producers of *The Punisher*.

[5] "Q. Have you ever been given any guidelines from anyone about how to provide your photos for registration? A. No. I just drag and drop. Q. Has anyone ever asked you follow-up questions about photos after you've dragged and dropped them? A. Nope. Just drag and drop." *Id.*

[6] Aside from the fact that the registration likely combines both published and unpublished works, all evidence proffered to date indicates that the file name for each image on the registration impermissibly reflects each photograph's creation date, not its publication date. *See*

3

## B. Sands Has Failed to Proffer Evidence Sufficient to Show Willfulness[7]

To date, the only "proof" Sands has offered of CBSi's willfulness is the fact that CBSi is a media company—and therefore any use *must* be willful—and a screenshot of *current usage* of the photographs containing a credit to Sands, which, according to Sands, demonstrates that CBSi sourced the photographs from the ComingSoon.net Article and omitted credit that was originally posted.[8] Such "proof" falls far short of what is necessary to prevail at the summary judgment stage, especially where, as here, CBSi has provided more than "mere speculation or conjecture as the true nature of the facts." *See Yi Fu Chen*, 2015 WL 3953532, at *4 ("In determining whether there are genuine issues of material fact, the Court is required to *resolve all ambiguities and draw all permissible factual inferences* in favor of the party against whom summary judgment is sought.") (internal quotations and citations omitted) (emphasis added).

CBSi has never stated that it sourced the photograph from the ComingSoon.net Article, but has always maintained that it was unaware of the source (*see* Dkt. 25 ¶ 6) and noted that the photographs were available all over the internet without credit to Sands. SAMF ¶ 9.[9] Moreover, Sands' claim that the photographs were first published with credit is seriously undercut by his

---

*Compendium* § 1116.1 ("the applicant may provide the *date of publication* on each photograph . . . [by] including the date in the file name for each image" (emphasis added)).

[7] Pertinent to the fees issue, and without going into confidential material, it appears from the deposition that Sands wanted to resolve the matter prior to suing but was under the impression that CBSi had no interest in that. Given the obligations of Rule 11(b), there is no explainable reason why the Liebowitz firm would have led his client to believe that no pre-suit resolution could be had, which would have saved all sides both energy and costs. At the very least, Sands and his lawyer seem to have another conflict of interest (*see* Dkt. No. 52, Transcript of Conference at 4-7, *Sands v. Complex Media, Inc.*, No. 17 Civ. 03993 (ALC) (July 9, 2018)) in how they wish this case to proceed.

[8] CBSi has already rebutted Sands' other dubious "factors" purportedly demonstrating willfulness, on which Sands bears the ultimate burden. Dkt. 47 at 6, n.6. *See* Opp. at 13-18.

[9] Even assuming *arguendo* that CBSi sourced the photographs from ComingSoon.net, which CBSi does not concede, CBSi has raised a genuine issue of material fact as to whether the credit appeared in the Article when it was initially published. Opp. at 16-18.

4

own testimony, as Sands readily admits that he did not require licensees of the *photographs at issue* to include a credit to him. Lackman Decl. ¶ 2, Ex. A at 75:6-10 ("they're responsible for whatever captioning they use, as long as they pay me, I don't really care.").[10] In fact, he concedes that his photographs are reprinted without credit "all the time," *id.* at 76:3-9, and annexes to one of his declarations an authorized use by an entity that omits any credit to him and includes its own watermarked logo on the photograph. Dkt. 35-2. If this is the type of use Sands *condones*, it is unsurprising that many websites used the photographs at issue without credit (*see* SAMF ¶ 9), and that Mr. Auty reasonably believed the photographs were publicity stills. SUMF ¶¶ 5-11. Sands further admits that there may be other sub-licensees who reprinted the photographs without credit. Lackman Decl., Ex. A at 45:12-25; 71:4-72:25.[11] Where the photographs were printed all over the internet without accreditation to Sands—even containing the ComingSoon.net watermark in many instances—coupled with the fact that Sands admits to licensing them to various entities, and allowing unnamed and undiscoverable sub-licensees to further license them without requiring credit to him (*see id.* at 75:9-10), Sands has failed to carry his burden of showing that there is no genuine issue as to any material fact regarding willfulness.

## **CONCLUSION**

Accordingly, for the reasons stated herein and previously, the Court should deny Sands' Motion for summary judgment in its entirety.

---

[10] Sands also conceded that "caption information" can get "erased and overlaid with other information[,]' and that it happens "a lot." *Id.* at 39:5-16.

[11] "A. I might have sent it to others. I can't remember. Sometimes I decide on the fly . . . Q. Well, is it possible that somebody else licensed this photo that you're not aware of, as you sit here today? A. I'm sure some people actually . . . licensed the image . . . Q. And you would have no record of that? A. No. I would only have a record of it if they bought it from me." *Id.*

Respectfully Submitted,

Dated: March 5, 2019　　　　　　　COWAN, DEBAETS, ABRAHAMS
　　　　New York, New York　　　　　& SHEPPARD LLP

　　　　　　　　　　　　　　　　　By:  /s/ Eleanor M. Lackman
　　　　　　　　　　　　　　　　　　　Eleanor M. Lackman
　　　　　　　　　　　　　　　　　　　Lindsay R. Edelstein
　　　　　　　　　　　　　　　　　　　Sara Gates
　　　　　　　　　　　　　　　　　　　41 Madison Avenue, 38th Floor
　　　　　　　　　　　　　　　　　　　New York, New York 10010
　　　　　　　　　　　　　　　　　　　Tel.: (212) 974-7474
　　　　　　　　　　　　　　　　　　　Fax: (212) 974-8474
　　　　　　　　　　　　　　　　　　　ELackman@cdas.com
　　　　　　　　　　　　　　　　　　　LEdelstein@cdas.com
　　　　　　　　　　　　　　　　　　　SGates@cdas.com

　　　　　　　　　　　　　　　　　*Attorneys for Defendant CBS Interactive Inc.*