```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x
STEVE SANDS,                           :
                                       :   18-cv-7345 (JSR)
            Plaintiff,                 :
                                       :   MEMORANDUM ORDER
       -v-                             :
                                       :
CBS INTERACTIVE INC.,                  :
                                       :
            Defendant.                 :
------------------------------------- x
```

JED S. RAKOFF, U.S.D.J.

On October 5, 2016, plaintiff Steve Sands ventured onto the set of the Netflix series The Punisher and took photographs of actors Jon Bernthal and Deborah Ann Woll. Two days later, some of these photographs were posted without Sands's permission on a website owned and operated by defendant CBS Interactive Inc. ("CBSi"). Sands sued CBSi for copyright infringement, and both parties' motions for summary judgment are now before the Court.

Sands moves for summary judgment on the issues of liability, willfulness, and attorneys' fees and costs, and he moves for dismissal of CBSi's affirmative defenses of defective registration, lack of ownership, innocence or non-willfulness, fair use, lack of entitlement to attorneys' fees, and unclean hands. ECF No. 17. CBSi moves for partial summary judgment on the issues of willfulness and whether the disputed photographs constitute a single work for purposes of calculating statutory

damages. ECF No. 23. Each party opposes the other's motion. ECF Nos. 33, 37.

For the reasons stated below, Sands's motion for summary judgment is granted on the issue of liability, and CBSi's affirmative defenses of defective registration, lack of ownership, fair use, and unclean hands are dismissed. Sands's motion is denied in all other respects, and CBSi's motion is denied in its entirety.

## Background

Steve Sands is a professional photographer. Plaintiff's Statement Pursuant to Local Rule 56.1 ¶ 1 ("Sands 56.1 Statement"), ECF No. 22. CBSi is the owner and operator of the internet publication GameSpot. Defendant's Local Civil Rule 56.1 Statement ¶ 1 ("CBSi 56.1 Statement"), ECF No. 27.

On October 5, 2016, without permission of the cast or crew, Sands took photographs of actors Jon Bernthal and Deborah Ann Woll on the set of the Netflix series <u>The Punisher</u>, which was being filmed in public locations in New York. <u>Id.</u> ¶ 4; Sands 56.1 Statement ¶ 12. Sands then licensed these photographs to the third-party stock photography agency Getty Images. Sands 56.1 Statement ¶ 14. Shortly thereafter, on October 6, third-party publisher Evolve Media, LLC licensed the photographs from

Getty and posted them on www.comingsoon.net, a website owned and operated by Evolve. Id. ¶¶ 15-17.

On October 7, 2016, an article entitled "New Punisher Images Reveal Return of Key Daredevil Character" was posted on GameSpot by Dan Auty, a freelance writer and independent contractor. CBSi 56.1 Statement ¶ 6. The article included five of Sands's photographs, each of which contained a "COMINGSOON.NET" watermark. Id. ¶ 8. CBSi never sought nor received permission to publish the photographs. Sands 56.1 Statement ¶¶ 28-29.

Sands registered the photographs at issue with the Copyright Office under the title "Group Registration of Published Photographs Steve Sands; 2016; all published 9/22/16-11/16/16; 739 Photographs." CBSi 56.1 Statement ¶ 16. The registration number is VA 2-024-098, and the effective date of the registration is November 28, 2016. Id. On August 14, 2018, Sands filed a one-count complaint against CBSi for infringing his copyright in the five photographs that were included in the GameSpot article. ECF No. 1. CBSi answered and raised affirmative defenses of defective registration, lack of ownership, innocence or non-willfulness, fair use, de minimis damages, failure to mitigate, lack of entitlement to more than

3

minimum statutory damages, lack of entitlement to attorneys' fees, and unclean hands. ECF No. 12.[1]

Now before the Court are the parties' motions for summary judgment. Sands moves for summary judgment on the issues of liability, willfulness, and attorneys' fees and costs, and he moves for dismissal of CBSi's affirmative defenses of defective registration, lack of ownership, innocence or non-willfulness, fair use, lack of entitlement to attorneys' fees, and unclean hands. ECF No. 17. CBSi moves for partial summary judgment on the issues of willfulness and whether the disputed photographs constitute a single work for purposes of calculating statutory damages. ECF No. 23. Each party opposes the other's motion. ECF Nos. 33, 37.

## **Analysis**

### I. **Standard of Review**

Under Rule 56(a) of the Federal Rules of Civil Procedure, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "The movant bears the burden of demonstrating the absence of a genuine

---

[1] CBSi appears to have abandoned its affirmative defenses of de minimis damages, failure to mitigate, and lack of entitlement to more than minimum statutory damages.

dispute of fact, and, to award summary judgment, the court must be able to find after drawing all reasonable inferences in favor of a non-movant that no reasonable trier of fact could find in favor of that party." Palmer/Kane LLC v. Rosen Book Works LLC, 204 F. Supp. 3d 565, 568 (S.D.N.Y. 2016).[2]

## II. Liability

"To establish infringement" under the Copyright Act, "two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Feist Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991).

### A. Ownership

"A certificate of copyright registration is prima facie evidence of ownership of a valid copyright, but the alleged infringer may rebut that presumption." Scholz Design, Inc. v. Sard Custom Homes, LLC, 691 F.3d 182, 186 (2d Cir. 2012).

Sands has provided a copy of his certificate of registration, ECF No. 20, Ex. A, as well as a certification that the disputed photographs are on deposit with the Copyright Office, ECF No. 20, Ex. B. CBSi nevertheless argues that there

---

[2] Unless otherwise indicated, in quoting cases all internal quotation marks, alterations, emphases, footnotes, and citations are omitted.

are genuine issues of material fact as to the validity of Sands's copyright. See Defendant CBS Interactive Inc.'s Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment 7-10 ("CBSi SJ Opp."), ECF No 37.

CBSi sets forth two arguments in its opposition brief. First, CBSi argues, "paparazzi shots of film sets, like the Photographs at issue here, should be considered derivative works, much as a movie trailer is derivative of the film." Id. at 8. Because "Sands failed to identify the Photographs as a derivative work on his registration," CBSi continues, "the registration is invalid." Id.; see Eckes v. Card Prices Update, 736 F.2d 859, 861-62 (2d Cir. 1984) ("[T]he knowing failure to advise the Copyright Office of facts which might have occasioned a rejection of the application constitutes reason for holding the registration invalid and thus incapable of supporting an infringement action . . . .").

Second, CBSi contends, "belatedly produced documents and Sands' own papers reveal that the Liebowitz Firm may have committed some errors in the application process, and the timing of the production of the material that was produced (and the failure to produce other material that was requested) could have an impact on the viability of the claimed registration." CBSi SJ Opp. 8. Specifically, CBSi argues, "Sands testified that he

sends all photographs from a shoot in one batch, but the metadata annexed to [his counsel's] affidavit — and belatedly produced to CBSi following Sands' deposition — indicates that Sands sent the Photographs on two different dates, October 7 and October 14, 2016." Id. at 9. Furthermore, CBSi argues, Sands's registration certificate "shows two sets of photographs of the actors shown in the Photographs (on October 5 and 14, 2016), which suggests that the required titles given to the images do not reflect the images themselves." Id.

Beginning with CBSi's first argument, it is clear that Sands's photographs are not derivative works. A derivative work "is a work based upon one or more preexisting works." 17 U.S.C § 101. To the extent that a movie trailer of a film is a derivative work, this is so only because the underlying film is a preexisting work. Had Sands taken photographs of footage from The Punisher, then perhaps these photographs could be classified as derivative works. But he did not. He took photographs of two human beings, Jon Bernthal and Deborah Ann Woll, and human beings - even television stars - are not preexisting works.

Moving to the second argument, the Court initially found the assertions in CBSi's opposition brief to be both speculative and vague. However, the Court granted CBSi permission to take a supplemental deposition of Sands based on the "belatedly

7

produced documents" mentioned above. After taking this deposition, CBSi filed a supplemental memorandum in opposition to summary judgment, which the Court had hoped would clarify CBSi's arguments regarding the validity of Sands's registration. ECF No. 52.

Unfortunately, the only relevant argument that CBSi advances in its supplemental memorandum is another speculative contention – namely, that Sands's group registration might be invalid because it might contain both published and unpublished photographs. Id. at 3. Not only does CBSi fail to provide any affirmative evidence in support of this theory, but Sands's counsel also explains, in a supplemental declaration, that Sands's photographs are customarily registered only after being published to Getty Images. ECF No. 55, at ¶¶ 3-4. Accordingly, CBSi has failed to create a triable issue as to whether Sands's group registration contains unpublished photographs.

For these reasons, the Court concludes that there is no genuine dispute regarding the validity of Sands's registration, and CBSi has otherwise failed to rebut the presumption of ownership created by the certificate. CBSi's affirmative defenses of defective registration and lack of ownership are therefore dismissed.

**B. Originality**

"Copyright protection subsists . . . in original works of authorship fixed in any tangible medium of expression . . . ." 17 U.S.C. § 102 (emphasis added). "Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." Feist Publications, Inc., 499 U.S. at 345.

"A photograph may be original in three respects: . . . Rendition . . . Timing . . . [and] Creation of the Subject." Mannion v. Coors Brewing Co., 377 F. Supp. 2d 444, 452-53 (S.D.N.Y. 2005). "Almost any photograph may claim the necessary originality to support a copyright," id. at 450, although a photograph may lack originality in rare cases, such as "where a photograph of a photograph or other printed matter is made that amounts to nothing more than slavish copying," Bridgeman Art Library, Ltd. v. Corel Corp., 36 F. Supp. 2d 191, 196 (S.D.N.Y. 1999).

CBSi argues at some length that there is a genuine issue of material fact as to whether Sands's photographs are original. CBSi SJ Opp. 3-7. There is not. As with almost any photograph, the photographs at issue here reflect myriad creative choices, including, for example, their lighting, angle, and focus. See ECF No. 20, Ex. B. Sands's photographs are a far cry from the

9

"slavish copies" that courts have held - in rare cases - to lack sufficient originality for copyright protection. See Bridgeman Art Library, 36 F. Supp. 2d at 197.

**C. Fair Use**

Although ownership and originality are necessary conditions for establishing infringement, they are not sufficient. Under the Copyright Act, "the fair use of a copyrighted work . . . for purposes such as criticism, comment, news reporting, teaching . . . , scholarship, or research, is not an infringement of copyright." 17 U.S.C. § 107.

In making fair use determinations, courts are instructed to consider the following four factors:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work.

Id. These factors "are illustrative and not limitative," id. § 101, and "thus provide only general guidance about the sorts of copying that courts and Congress most commonly ha[ve] found to be fair uses," Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 577-78 (1994). "The ultimate test of fair use . . . is whether the copyright law's goal of promoting the Progress of Science and useful Arts, would be better served by allowing the

10

use than by preventing it." Castle Rock Entm't, Inc. v. Carol Pub. Grp., Inc., 150 F.3d 132, 141 (2d Cir. 1998).

As Sands aptly argues in his moving papers, each of the four factors above weighs against fair use in the instant case. See Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment on Liability Against Defendant for Copyright Infringement under 17 U.S.C. § 501, Willfulness under 17 U.S.C. § 504(c)(2) and Attorneys' Fees and Costs under 17 U.S.C. § 505, at 9-18 ("Sands SJ Mem."), ECF No. 18. The first factor – purpose and character – focuses on "whether the new work merely supersedes the objects of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message; it asks, in other words, whether and to what extent the new work is 'transformative.'" Campbell, 510 U.S. at 579. Here, CBSi's use of Sands's photographs was in no way transformative. That the use was commercial weighs against fair use as well.

The second factor – the "nature of the copyrighted work" – also weighs against fair use because Sands's photographs are creative in nature. See Blanch v. Koons, 467 F.3d 244, 256 (2d Cir. 2006) (explaining that the second factor is more likely to weigh against fair use where the work is "expressive or creative" rather than "factual or informational"). And as to the

third factor – "the amount and substantiality of the portion used" – CBSi used the entirety of Sands's photographs. Finally, with respect to the fourth factor – "the effect of the use upon the potential market for or value of the copyrighted work" – there is no question that "unrestricted and widespread conduct of the sort engaged in by the defendant would result in a substantially adverse impact on the potential market for the original." Campbell, 510 U.S. at 590.

As all of these factors weigh against a finding of fair use, CBSi's fair use defense is hereby dismissed.

**D. Unclean Hands**

CBSi also argues that summary judgment on liability is precluded by the doctrine of unclean hands. "The unclean hands doctrine is a limited device, invoked by a court only when a plaintiff otherwise entitled to relief has acted so improperly with respect to the controversy at bar that the public interest in punishing the plaintiff outweighs the need to prevent defendant's tortious conduct." Broad. Music, Inc. v. Hearst/ABC Viacom Entm't Servs., 746 F. Supp. 320, 329 (S.D.N.Y. 1990). "The defense of unclean hands in copyright actions is recognized only rarely, when the plaintiff's transgression is of serious proportions and relates directly to the subject matter of the infringement action." Id.

12

Although CBSi acknowledges the rarity with which the doctrine of unclean hands is applied in copyright cases, it argues that such an application is warranted here. See CBSi SJ Opp. 12. First, CBSi argues, "[n]ot only does Sands take photographs of on-set scenes that others have created . . . but he has also used underhanded tactics to get access to film and television sets to take such photographs." Id. For example, CBSi alleges, "Sands obtained photographs from Netflix's Iron Fist television series that, if released, would have spoiled key plot points." Id. Sands then effectively held these photographs hostage in order to gain access to an upcoming premiere. Id.

Second, CBSi argues, "Sands knows that studios distribute publicity stills that look just like the photographs he takes on sets." Id. at 13. CBSi argues that "Sands' failure to provide any evidence of watermarking his name on the Photographs, and his failure to ever reach out to any entity about the Photographs at issue, leaves the logical inference that he intended to set up a situation for him to receive sizable settlements for the mistaken use of his low-value photographs that he himself cannot discern from publicity stills." Id.

The Court does not find either of CBSi's arguments persuasive. The first has nothing to do with the photographs at issue here, which were taken on the set of The Punisher, not

13

Iron Fist. The second is purely speculative, and it is certainly insufficient to create a genuine issue of material fact. Accordingly, CBSi's unclean hands defense is hereby dismissed.

### III. Willfulness

Under the Copyright Act, a "copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C § 504(c)(1). However, "where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." Id. § 504(c)(2).

"To prove willfulness under the Copyright Act, the plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of reckless disregard for, or willful blindness to, the copyright holder's rights." Island Software & Computer Serv., Inc. v. Microsoft Corp., 413 F.3d 257, 263 (2d Cir. 2005). Where the plaintiff proves that "the defendant recklessly

14

disregarded the possibility that its conduct represented infringement," the "plaintiff is not required to show that the defendant had knowledge that its actions constituted an infringement." Yurman Design, Inc. v. PAJ, Inc., 262 F.3d 101, 112 (2d Cir. 2001).

Both Sands and CBSi move for summary judgment on the issue of willfulness. Sands argues that summary judgment is warranted because:

> (1) CBSi is in the publishing business and therefore presumed to be sophisticated about copyright law and licensing procedures; (2) CBSi admits that it routinely licenses photographs from photographers and uses standard licensing agreements; (3) CBSi routinely licenses photographs from third-party stock photo agencies such as Getty Images; (4) CBSi has licensed photographs from Sands before; (5) CBSi failed to produce any evidence that it followed its own policies or procedures for licensing photographic content for use on the GameSpot Website; (6) CBSi failed to inquire as to the identity of the copyright holder before publishing the Photographs on the GameSpot website; (7) CBSi removed Sands' credit as it was displayed on Evolve Media's comingsoon.net website; [and] (8) in the past three years, CBSi has been sued for copyright infringement at least sixteen times, showing a reckless pattern of conduct and failure to abide by federal copyright law.

Sands SJ Mem. 19-20.

CBSi responds that fourteen of the above-mentioned sixteen lawsuits against it were filed by the Liebowitz Law Firm. CBSi SJ Opp. 14. CBSi also notes that "Sands cannot point to one instance where CBSi was actually held liable for copyright

15

infringement." Id. at 15. Furthermore, CBSi argues, there is no evidence to support Sands's assertion that CBSi removed attribution from his photographs. Id. at 16. Finally, CBSi argues that it used Sands's photographs in good faith because "[t]he circulation of photographs from the set of a production by studios (commonly referred to as 'handouts' or 'publicity stills'), to be used by the press for free – to publicize such productions – is a long-standing entertainment industry practice." Id. at 18. CBSi notes that "many media outlets have used [Sands's] photographs and credited them to studios, because it is common practice," and "many online entities used [Sands's] Photographs without attribution to Sands, believing them to be 'still photographs' from the set of the Punisher." Id. at 19.

Based on the arguments above and the evidence presented thus far, the Court finds that there remain genuine issues of material fact as to willfulness. In particular, there remain material disputes as to whether CBSi removed attribution from Sands's photographs and whether the use of "handouts" and "publicity stills" is standard industry practice. "Generally speaking, summary judgment is not a tool well suited to determining willfulness," Close-Up Int'l, Inc. v. Berov, 382 F. App'x 113, 117 (2d Cir. 2010), and this case is no exception.

16

Accordingly, both parties' motions for summary judgment on the issue of willfulness are hereby denied.

## IV. Single Work

As noted above, statutory damages in copyright cases are calculated "for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually." 17 U.S.C § 504(c)(1) (emphasis added). CBSi argues that the five photographs at issue in this case should be treated as a single "work" for purposes of calculating statutory damages. Sands responds that each of the five photographs qualifies as a separate "work." The Court holds that Sands is correct.

Under the Copyright Act, the Register of Copyrights is authorized to promulgate regulations that "require or permit . . . a single registration for a group of related works." 17 U.S.C. § 408(c)(1). Exercising this authority, the Copyright Office promulgated a final rule on January 18, 2018 regarding Group Registration of Photographs. 83 FR 2542-01, 2018 WL 451975. As relevant here, the rule provides that, for a group registration of photographs, "the Office will examine each photograph in the group, and if the claim is approved, the registration covers each photograph and each photograph is registered as a separate work." Id. at *2545. Furthermore, the

17

rule specifies, "if the photographs are subsequently infringed, the copyright owner should be entitled to seek a separate award of statutory damages for each individual photograph." Id. (citing 17 U.S.C § 504(c)(1)).

There is no genuine dispute that Sands's photographs were registered as part of a group registration. That is the end of the issue. He is entitled to seek a separate award of statutory damages on each photograph. Accordingly, CBSi's motion for summary judgment on this issue is denied.

## V. Attorneys' Fees and Costs

Under the Copyright Act, "the court in its discretion may allow the recovery of full costs by or against any party," and "the court may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. "There is no precise rule or formula for making these determinations, but instead equitable discretion should be exercised . . . ." Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 (1994). For example, a court may consider such factors as "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence . . . so long as such factors are faithful to the purposes of the

Copyright Act and are applied to prevailing plaintiffs and defendants in an evenhanded manner." Id. at 534 n.19.

Sands argues that an award of attorneys' fees is warranted in the instant case, but the Court does not agree (at least at this stage). Although CBSi has not advanced particularly strong arguments regarding the issues of liability and whether Sands's photographs qualify as a single "work," the Court hesitates to call these arguments frivolous. Furthermore, the question of willfulness is a close one, and the parties' arguments on both sides are reasonable and have been made in good faith.

A contrary conclusion is not compelled by Sands's argument that "the Liebowitz Law Firm acts as a 'private attorney general' to enforce copyright laws on behalf of individual photographers," and that, as a result, "an award of fees is entirely warranted to deter future infringement." Sands SJ Mem. 25. What the Liebowitz firm trumpets as its self-appointed role of 'private attorney general' has been described by another court as a dubious practice of copyright trolling. See McDermott v. Monday Monday, LLC, No. 17-cv-9230 (DLC), 2018 WL 5312903, at *2-3 (S.D.N.Y. Oct. 26, 2018) (detailing the Liebowitz Law Firm's history of questionable litigation practices and holding that "it is undisputable that Mr. Liebowitz is a copyright troll," id. at *3). In any event, the Court finds that future

19

infringers will be adequately deterred by the multiple statutory damage awards available in this case. Neither is the Court concerned that the Liebowitz Law Firm's zeal will be diminished without an award of attorneys' fees.

Accordingly, Sands's motion for summary judgment on the issue of attorneys' fees and costs is denied.

## Conclusion

In sum, Sands's motion for summary judgment is granted on the issue of liability, and CBSi's affirmative defenses of defective registration, lack of ownership, fair use, and unclean hands are dismissed. Sands's motion is denied in all other respects, and CBSi's motion is denied in its entirety. The Clerk is directed to close the entries at docket numbers 17 and 23.

SO ORDERED.

Dated: New York, NY
March 13, 2019

JED S. RAKOFF, U.S.D.J.