J2MsSANc

```
 1    UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF NEW YORK
 2    ------------------------------x

 3    STEVE SANDS,

 4                    Plaintiff,

 5             v.                            18 Civ. 7345 (JSR)

 6    CBS INTERACTIVE, INC.,

 7                    Defendant.

 8    ------------------------------x
                                             New York, N.Y.
 9                                           February 22, 2019
                                             4:00 p.m.
10
      Before:
11
                          HON. JED S. RAKOFF,
12
                                             District Judge
13
                              APPEARANCES
14
      LEIBOWITZ LAW FIRM, PLLC
15         Attorneys for Plaintiff
      BY:  RICHARD LEIBOWITZ
16         JAMES H. FREEMAN

17    COWAN, DEBAETS, ABRAHAMS & SHEPPARD, LLP
           Attorneys for Defendant
18    BY:  ELEANOR M. LACKMAN
           LINDSAY R. EDELSTEIN
19

20

21

22

23

24

25
```

J2MsSANc

1        (Case called)

2        THE COURT:  Good afternoon.  We have three motions.

3    There is the parties' competing motions for summary judgment,

4    and then there is the motion for leave to amend from the

5    defendant.

6        The motion for leave to amend is denied.  I am very

7    doubtful that it has any merit, that the claim has any merit,

8    but quite aside from that, I don't reach that because it is

9    grossly untimely.

10       Everything is done in this case except today's

11   argument.  We are ready for trial.  We are going to set the

12   trial in about 30 seconds.

13       Of course, since I am not dismissing on the merits but

14   just on the grounds of untimeliness, the dismissal or the

15   denial of the motion is without prejudice.  If you feel you

16   want to file a separate lawsuit with respect to this dubious

17   claim, you're welcome to.

18       Second, assuming the case were to go to trial, how

19   long a trial does plaintiff's counsel envision?

20       MR. FREEMAN:  Well, your Honor, if it were to be a

21   jury trial, we would envision three days.

22       THE COURT:  You want a jury trial.  Didn't you ask for

23   a jury trial?

24       MR. FREEMAN:  We did.  We did not discuss a

25   possibility of a bench trial with the defendants yet.  We would

J2MsSANc

1    be open to a bench trial in terms of efficiency.

2              THE COURT:  It is a jury trial, how long?

3              MR. FREEMAN:  Three days.

4              THE COURT:  Does defense counsel agree with that.

5              MR. LACKMAN:  I think two at least three days.  We

6    don't think there are a lot of witnesses in this case.

7              THE COURT:  All right.  I have my calendar.

8              What days in April are you not available for trial?

9              MR. FREEMAN:  Your Honor, I know I'm on vacation one

10   week in April.  It is the week of the 14th.  My brother's 50th

11   birthday.

12             THE COURT:  Even without your mentioning that, which

13   of course tugs at my heart strings, I was not going to

14   interfere with your vacation.  It won't be the week of the

15   14th.

16             What about defense counsel?

17             MR. LACKMAN:  I have a trial that starts on March 26.

18   It may go two weeks long, so it would perhaps be after

19   Mr. Freeman is back.  That would be the best time to proceed.

20             THE COURT:  Lets look at late April.  Let me ask my

21   courtroom deputy.

22             What about April 22 or April 29?

23             THE DEPUTY CLERK:  April 29 you're at Fordham in the

24   morning only.  April 22 is fine.  Then the 24th, we start a

25   trial.

| | |
|---|---|
| 1 | THE COURT:  Lets put it down for April 22 at 9:00 a.m. |
| 2 | That is also Earth day, so... |
| 3 | THE DEPUTY CLERK:  You do leave on that coming weekend |
| 4 | for Brazil. |
| 5 | THE COURT:  The subsequent week? |
| 6 | THE DEPUTY CLERK:  Yes. |
| 7 | THE COURT:  But they are saying a three-day trial. |
| 8 | Now, lets turn to the motions for summary judgment. |
| 9 | Lets turn first to the issue of liability.  I'll ask counsel to |
| 10 | go to the roster when we're having this argument. |
| 11 | Let me ask defense counsel why you believe the |
| 12 | copyright office's certification that the photographs at issue |
| 13 | were registered is inconclusive. |
| 14 | MR. LACKMAN:  Well -- |
| 15 | THE COURT:  No.  Over there.  Sorry. |
| 16 | MR. LACKMAN:  That's all right. |
| 17 | THE COURT:  That's because when you stand at the |
| 18 | table, the microphone really can't pick you up. |
| 19 | MR. LACKMAN:  That's fine. |
| 20 | Well, actually, the presumption of validity, as the |
| 21 | copyright office issues registration certificate, is easily |
| 22 | rebutted.  It can be rebutted whether there is other evidence |
| 23 | in the record that casts doubt on the question.  This is the |
| 24 | Arvant case in the Second Circuit -- |
| 25 | THE COURT:  What do you say is the rebuttal here? |

1          MR. LACKMAN:  There are a couple issues.  One is that

2     this is a derivative work.  There is no indication to any --

3          THE COURT:  What is your basis for saying it is a

4     derivative work?

5          MR. LACKMAN:  The photograph is a creation, a

6     recordation of what Marvel was recording at the time, the

7     costuming, the lighting.

8          THE COURT:  As I understand it, Mr. Sands was not

9     copying something or deriving something from a motion picture

10     or some other audiovisual work.  He was photographing real

11     people from particular angles and particular viewpoints that he

12     brought to bear.  I don't understand why you think it is a

13     derivative.

14          MR. LACKMAN:  Sure.

15          It is true that he was taking pictures of live action.

16     These were actually characters who were costumed and lit and

17     other things by Marvel.  But the fact of the matter is that the

18     Copyright Act doesn't require that the underlying work be

19     fixed, it just requires that it is a work.

20          So a derivative work can be created by a -- Section

21     102 is very clear, it has a separate requirement between a work

22     and a fixation.  So a derivative work just needs to be a copy

23     of a work, and the work that was being created and expressed

24     there is essentially like a stage play.  If someone was

25     recording video from the balcony of a theatrical production,

J2MsSANc

the production live is still a work whether or not it is fixed.

The derivative work requirement does not require the underlying

work be fixed in a tangible medium.

THE COURT:  Well, all right.

What other objections do you have to the presumption?

MR. LACKMAN:  Well, there is also the fact that we

received -- we asked for evidence very early on regarding the

metadata in the photos.  We got a bunch of evidence that was

not on point that consisted of -- it is cases and things like

that.

What we really wanted to know and to confirm -- there

are so many photos that look the same, even Mr. Sands said,

yes, there are a lot of these.  I can't tell the difference

between these photos.  We wanted to make sure that what was

registered is what he took.  He never provided his metadata to

us, and when we received information on the registrations, when

it was provided to us, it was accessed two days before the

deposition, but not provided to us until the evening of the

last day of fact discovery.

We didn't even realize that there might be an issue.

Mr. Sands testified that on the day he takes the photos, he

sends them over.  The information that was provided to us on

January 18, at around six o'clock, was --

THE COURT:  Discovery is closed.

MR. LACKMAN:  Well, that is correct.

J2MsSANc

```
 1          THE COURT:  Excuse me.

 2          I make it extremely easy for the parties to a lawsuit,

 3  if they are having problems during discovery because some side

 4  is not providing them with timely responses or there is some

 5  other problem of any kind whatsoever, all they need to do is

 6  jointly call the court pursuant to my individual rules and I

 7  usually get them an answer right then and there, certainly

 8  within a matter of hours.

 9          MR. LACKMAN:  Understood, your Honor.

10          THE COURT:  So all matters relating to discovery that

11  have been raised were resolved, and I am not going to hear any

12  further ones at this time.

13          MR. LACKMAN:  Of course, your Honor.

14          The point is that I was assured by plaintiff's counsel

15  that all relevant documents had been provided before the

16  deposition, which happened on January 10.

17          THE COURT:  That, in your view, that wasn't true or

18  that they were too belated?

19          MR. LACKMAN:  That's correct.

20          THE COURT:  Which one?

21          MR. LACKMAN:  It wasn't true.

22          THE COURT:  It wasn't true?

23          MR. LACKMAN:  That --

24          THE COURT:  So your remedy is to ask for an additional

25  deposition.
```

J2MsSANc

1          MR. LACKMAN:  Well, there just wouldn't be time.  The

2    documents were provided on the last day of discovery.  We just

3    wouldn't have time.  We think --

4          THE COURT:  No, no.  My point is this:  What you could

5    have done is call the court jointly with your adversary -- it

6    would be extremely easy, especially if you were conducting the

7    deposition, you would both be there in the same room -- and

8    say, Judge, in addition to the deposition today, we want

9    discovery extended for the limited purpose of taking additional

10   discovery of this plaintiff as soon as we get the documents

11   that we either haven't gotten or were belatedly produced.

12          But you didn't do that.

13          MR. LACKMAN:  Well, Judge, maybe I'm not being clear.

14          What happened was that the deposition happened on the

15   10th.  Prior to that time, we were assured that all responsive

16   documents had been provided.  During the deposition, there was

17   some indication that there was some metadata, and in

18   addition -- we didn't know this -- but apparently the Leibowitz

19   firm had a bunch of information that they didn't provide and

20   they actually accessed it two days before.  They said you'll

21   have all the documents prior.

22          THE COURT:  Have you received --

23          MR. LACKMAN:  We were --

24          THE COURT:  Excuse me.

25          Have you received that all now?

1          MR. LACKMAN:  We received it on the night of the close

2    of fact discovery.

3          THE COURT:  So you've received it?

4          MR. LACKMAN:  Correct, and we would like to ask the

5    plaintiff about this material at trial.

6          THE COURT:  Well, I am not sure how it bears on the

7    presumption issue.

8          How is it going to bear on the presumption issue?

9          MR. LACKMAN:  There are problems or inconsistencies in

10   his testimony that pertain to what was provided, and we

11   actually cannot know whether the material that the photos that

12   he took were actually the photos that were provided to the

13   Leibowitz firm because it conflicts directly with his

14   testimony, and we had no basis to know that until we were more

15   than 48 hours after the deposition happened.

16         THE COURT:  All right.  So anything else on the

17   presumption issue?

18         MR. LACKMAN:  No, your Honor, not on this specific

19   issue.

20         THE COURT:  Let me hear from plaintiff's counsel.

21         MR. FREEMAN:  All right.  Thank you, your Honor.

22         In terms of the validity of the copyright, they have

23   failed to present any evidence to rebut the validity of the

24   copyright.  Not only do we have a valid copyright registration

25   form, but both parties sent to the U.S. Copyright office, after

J2MsSANc

1    the pendency of this litigation was commenced, a request for

2    the copyright office to produce official certified deposit

3    copies showing that the photographs were, in fact, on deposit

4    with the copyright office.  There is no question of fact in

5    terms of whether the photographs are on deposit.

6              What they seem to be speculating -- and it is pure

7    speculation -- is that Mr. Sands is not the true author of

8    these particular photographs, and we have placed an abundance

9    of evidence on record showing that Mr. Sands was, in fact --

10   is, in fact -- the true author and photographer of these

11   photographs, including screenshots from his laptop computer.

12   And, of course, he is sworn to it.

13             THE COURT:  There is no discrepancy in his testimony.

14             What about their complaint that not everything that

15   should have been produced was produced before his deposition,

16   and some of it even was as late as the day before the close of

17   discovery?

18             MR. FREEMAN:  After, at the deposition was the first

19   time, to my knowledge, that they asked for underlying metadata

20   to the photographs.  In fact, the day after the deposition, the

21   morning after, opposing counsel sent me a laundry list of

22   document requests which were not a part of her original

23   document requests and said, we need to get all this stuff and

24   what did we do.

25             We went, and we went back to the client and we said,

J2MsSANc

1    We need to compile whatever else you have, you know, please

2    search your records.  We want to comply.  We did comply.  We

3    gave them everything they wanted, even though they didn't

4    initially ask for those documents.  Had we known prior to the

5    date of the deposition that they were seeking such information,

6    we, of course, would have provided it.  It is our policy to

7    just hand it over.

8              THE COURT:  Yes.

9              The deposition was when?

10             MR. FREEMAN:  On January 10.

11             THE COURT:  Discovery closed?

12             MR. FREEMAN:  The 26th.

13             MR. LACKMAN:  18th.

14             MR. FREEMAN:  18th.

15             THE COURT:  They made this request right after the

16   deposition?

17             MR. FREEMAN:  Correct.

18             THE COURT:  Then you responded before the close of

19   discovery, albeit not only very shortly before the close of

20   discovery, correct?

21             MR. FREEMAN:  Correct.  My client did have to --

22             THE COURT:  All right.  So let me go back to defense

23   counsel.

24             So these were documents that you only requested after

25   the deposition.  And, of course, you could have set the

J2MsSANc

1    deposition much earlier, but you chose, or jointly chose, to

2    fix it shortly before the close of discovery.

3            You find out at the deposition that there is documents

4    that you hadn't previously requested that you now want.  That

5    is not untypical of what happens at a deposition.  So you

6    promptly request them, but you had to know at that very moment

7    that they might occasion a further deposition of the plaintiff,

8    so that was the time when you should have approached the court.

9            MR. LACKMAN:  Your Honor, I want to make sure, to

10   clarify a couple points.

11           One is these documents were requested in our original

12   request.  We had at least one, maybe two meet-and-confers prior

13   to the deposition.  We wanted to get all documents in as soon

14   as we could.  We had discovery period that overlapped the

15   holidays and the earliest we could do after -- we were still

16   getting documents in December.  The earliest we could do was

17   January 10.

18           And the documents we received were in the possession

19   of plaintiff's counsel.  They were documents that they used,

20   they intended to use to support their argument that their

21   photos were validly registered.  We had a defense regarding

22   that point, and they never produced -- plaintiff's counsel

23   never produced those documents.  And they were accessed, the

24   document we received showed that they were accessed by

25   plaintiff's counsel on January 8.  They didn't provide them at

J2MsSANc

1    the deposition or otherwise, and we received them not the day

2    before the last day of discovery, but roughly -- I was in

3    California when they showed up, I don't know the exact time,

4    but I know it was dark in LA -- on the last day of fact

5    discovery.

6            THE COURT:  All right.  So here is what I will allow,

7    even though, in my view, defense counsel still has not been

8    diligent in seeking relief for all you're now complaining about

9    before the close of discovery.  That was your time when, as I

10   say, it would have been so easy to convene a call, but you

11   didn't remember.

12           Nevertheless, because I'm well-known for my

13   generosity, I will give you a two-hour additional deposition of

14   the plaintiff to be completed by no later than Friday of next

15   week.  You may then, if you feel on the basis of that

16   deposition that you have some additional information bearing on

17   summary judgment to bring to the attention of the court, you

18   may file a supplement to your summary judgment papers by no

19   later than Tuesday of the following week.

20           So lets put dates on this.  The deposition, the

21   two-hour telephonic deposition must occur by March 1.

22           Defendant's additional papers, limited to five

23   double-spaced pages, must be filed by Tuesday, March 5.

24           Any answering papers must be filed by Friday, March 8.

25           I will hold off ruling on the motions until I receive

J2MsSANc

1    those papers.

2            I will tell you in advance that I am extremely

3    skeptical of your argument about this not being an original

4    work, but feel free to make whatever arguments you want.

5            Lets turn to the question of willfulness.  Frankly,

6    there, it seems to me, there are genuine issues of material

7    fact that remain to be resolved, but I'll hear anything anyone

8    wants to further say beyond your -- I've looked at your papers,

9    obviously.

10           Lets hear first on that from plaintiff's counsel and

11   then defense counsel.

12           MR. FREEMAN:  Thank you, your Honor.

13           So the issue of willfulness, when dealing with the

14   defendant, who is in the publishing industry, a sophisticated

15   defendant in the publishing industry, our position is that the

16   evidentiary threshold necessary to establish willfulness is

17   particularly low.  And this is actually embodied in the case

18   law, which holds that a publisher is charged with knowledge of

19   copyright law, particularly if they have experience in

20   exploiting copyrights, they have experience in licensing

21   copyrights, they have policies, procedures, training manuals in

22   place.

23           If they are engaged in activity that is infringing, if

24   they are engaged in activity where they have not done any due

25   diligence, whatever, to obtain a license or find out who the

J2MsSANc

photographer is, there is a very strong presumption that they
have acted in reckless disregard of the photographer's rights.

We have never taken the position of de facto
willfulness.  We just feel that the evidentiary threshold,
again, is very low.  We start in that position.  It would be
different if we were suing a restaurant or a bowling alley who
also exploit copyrights.  They are not in the business of
exploiting copyrights.

Here, this is what CBS does.  So we've established,
number one, they obviously are in the publishing industry.  We
asked during discovery for a plethora of information relating
to what policies they had in place, what training manuals they
have in place.  They claim they employ independent contractors
to post photographs to the website.

OK, so what do they know about licensing photographs?
Are they just hired and just, you know, given open access to
the website and they can just post photographs at will, or is
there some supervising editor?  They didn't produce anything.

During the entire course of this litigation, they
produced nine pages of documents.  They said they didn't have
any evidence of training manuals.  They didn't have any
evidence of employee handbooks.  What does that tell us?  That
tells us that they don't have any procedures in place and that
maybe sometimes they license photographs and maybe sometimes
they don't.  I guess it just depends on who has access to the

J2MsSANc

1   website.  So, again, we are looking at a large-scale

2   corporation who are posting photographs online without

3   bothering to conduct any due diligence whatsoever.

4          In addition, they have admitted, though, that they do

5   use standard licensing agreements for photographs every now and

6   then.  So they must have some inkling, right, that there is a

7   requirement that they obtain permission from the photographer.

8   So, again, we have either they have no policies at all, or if

9   they do, they failed to implement them in this particular case.

10          Now, their sole defense is that the individual who

11   they claim posted the photographs online they believe had

12   harbored a subjective good faith belief that these photographs

13   were publicity handouts distributed by Marvel Studios or

14   Netflix.  The producers or the distributor of the film.

15          Unfortunately for them, there is not a shred of

16   objective evidence on the record that that is what happened.

17   Now, why do we say that?  Because we know that they got the

18   photographs from another website, a competing website,

19   *Comingsoon.net*.

20          Now, this website had Steve Sands, this website was an

21   authorized sublicensee of Steve Sands' works.  They acquired

22   the photographs from Getty.  So Steve Sands takes the

23   photographs, he uploads them to Getty, and then Getty makes

24   them available to whoever wants to license them.

25          So in this case, *Comingsoon.net* licensed them via

J2MsSANc

their parent company, Evolve Media, and *Comingsoon.net* had an

authorized license to display those photographs online.  The

editor of CBS Interactive went and simply shoplifted the

photographs from the website and republished them on

*gamesspot.com.*

          They are saying, well, he believed that these were

publicity handouts from Marvel.  OK, well, that belief must be

objectivity reasonable under the circumstances.  What evidence

is there on the record to support that subjective good faith,

alleged good faith belief?

          THE COURT:  Who is this person?

          MR. FREEMAN:  Dan Otty.

          THE COURT:  Was his deposition taken?

          MR. FREEMAN:  His deposition was not taken, your

Honor.

          THE COURT:  Was any affidavit or declaration produced

from him?

          MR. FREEMAN:  Yes.  They produced an affidavit.  In

the affidavit, which is mostly speculative, he doesn't recall

the details.  He says he doesn't even know where he got the

photographs from, which is a huge red flag, but he says that

because there is a *Comingsoon.net* watermark on the photographs,

that, oh, he must have got them from *Comingsoon.net*.

          Now, had he harbored a good faith belief that these

were publicity handouts, one would imagine that such

J2MsSANc

1    photographs would have on them a watermark indicating that they

2    belonged to Marvel Studios or to Netflix and would say, for

3    example, for promotional uses only and here is the terms.

4    There is no evidence of that.  Had he got them, for example,

5    from the Netflix website or from Marvel's website, from a

6    publicity or press kit, a digital press kit, a hard copy press

7    kit, this would be a very much different case.

8              But for them to come into court and say, oh, well

9    there is this custom and practice without any evidence -- there

10   is this custom and practice of movie studios handing out the

11   still shots to promote the film, and I was aware of that custom

12   and practice and I thought that this was just not a bunch of

13   publicity stills.

14             THE COURT:  I got the point.

15             MR. FREEMAN:  You get the point?

16             THE COURT:  Yes.  Thank you very much.

17             Let me hear from defense counsel.  Thank you.

18             MR. FREEMAN:   Thank you.

19             MR. LACKMAN:  Your Honor, I think your Honor hit the

20   nail on the head in a way.  Your Honor is also talking about

21   the opportunity to take discovery.  Mr. Otty was disclosed as

22   the editor of the overall website.  There was no deposition

23   notice.  There was no attempt to take a deposition.  There was

24   nothing.

25             The documents that were requested were wildly

J2MsSANc

overbroad.  They wanted all kinds of information, and we told

them, you need to send us a narrow request.  They didn't do it.

So what happened in this instance, Mr. Otty testified

to his state of mind and his understanding, and the concept

that there is no custom and practice is belied by Mr. Sands own

testimony.  Studios do hand out publicity materials in order to

get promotion for their upcoming works.  This is a custom and

practice, and it is widely known and widely used.

So there was certainly a reason for him to believe

that, and if they don't believe it, you can't create an issue

of fact just by speculating.  You have to take the person's

deposition.  Ask for his testimony and cross-examine him with

those points, but it is right now it is unrebutted.

THE COURT:  All right.  I will reserve judgment.

The next issue was the plaintiff's request for

attorneys' fees.  This really is, in effect, premature because

I don't reach that unless I find that the various defenses to

liability were frivolous, etc.

I don't need to hear argument.  It is a function of

what I find with respect to those particular elements.  When I

say premature, it is proper to file it at this time, I just

mean there is no point for oral argument, since it is really

derivative, to use a bad term from the arguments, on liability.

The final item is the defendant seeks summary judgment

on the question of whether this is a single work, and I thought

J2MsSANc

1    this has been resolved -- but let me hear from defense

2    counsel -- by the copyright office's rule regarding group

3    registration of photographs.

4              MR. LACKMAN:  Sure.

5              Actually, we have a copy of it with us.  I just want

6    to preface the fact that it was posted this morning.  Judge

7    Batts ruled on this issue and determined -- it is not a

8    question about whether it is a single work.  The question is

9    whether plaintiff gets one damages award or multiple damages

10   awards.

11             Our argument is it is a damages question.  We actually

12   have a copy.  If the court needs it, we can hand up a copy of

13   the ruling from this morning.  As soon as we received it, we

14   provided it to them this morning.

15             THE COURT:  Let me take a look.

16             MR. LACKMAN:  Hold on just a second.

17             (Pause).

18             MR. LACKMAN:  Should the court want it, we have copies

19   of the registrations that were at issue in the case as well.

20             Your Honor, in this ruling, Judge Batts found that

21   where a copyright holder chose --

22             THE COURT:  What page are you looking at?

23             MR. LACKMAN:  That's a really good question.

24             It is page 13, your Honor.

25             THE COURT:  Hang on a minute.

J2MsSANc

1          (Pause)

2          MR. LACKMAN:  Where it begins Mindent cites Ryan and

3     other cases and it ends --

4          THE COURT:  Let me just read it.

5          MR. LACKMAN:  Sure.

6          THE COURT:  Thank you.

7          (Pause)

8          Of course I'm seeing this for the first time now, but

9     it doesn't appear, on a very quick look of this, that Judge

10    Batts discusses at all the impact, if any, of the copyright

11    office's rule regarding group registration of the photographs.

12         My understanding is that that ruling makes clear that

13    "The office will examine each photograph in the group and if

14    the claim is approved, the registration covers each photograph

15    and each photograph is registered as a separate work.  Thus, if

16    the photographs are subsequently infringed, the copyright owner

17    should be entitled to seek a separate award of statutory

18    damages for each individual photograph."

19         Now, that was issued on January 18, 2018.  I don't

20    know if it was brought to the attention of Judge Batts, who

21    does not address it in her opinion of yesterday, but that is

22    the issue I'm raising.

23         MR. LACKMAN:  Well, there is that issue.

24         We believe that Judge Batts is correct in that the

25    type of registration is the same, but there is a separate

J2MsSANc

<pre>
 1    point, which it is not -- just because you can sue separately
 2    on a separate work, there is law -- and we have cited it in our
 3    brief -- that says even if something is registered as a
 4    collective work, if it is registered as a set with a nearly
 5    identical title on the same date from the same shoot, the
 6    copyright act would likely consider it a compilation and,
 7    therefore, there is nothing that says that you get separate
 8    statutory damages awards.
 9              THE COURT:  Well, no, no.  That is apparently the kind
10    of precedent that Judge Batts -- again, on a very quick reading
11    of her ruling -- seems to be relying on.  But the copyright
12    office's rules, if it is binding on the court, seems to say
13    just the opposite.
14              MR. LACKMAN:  The copyright office's rule says that it
15    is possible.  It doesn't say that it is required.
16              Based on the facts here --
17              THE COURT:  Well, it says "thus if the photographs are
18    subsequently infringed" -- and we're talking now about a group
19    registration -- "the copyright owner should be entitled to seek
20    a separate award of statutory damages for each individual
21    photograph."
22              So the keyword there is "should."  Now it may not be
23    binding on me, but they are making an assertion of law, it
24    seems to me.
25              MR. LACKMAN:  Well, the law is, and the commentators
</pre>

J2MsSANc

1    are clear, Bill Patry says, Patry and Copyright says that valid

2    registration satisfies the prerequisites for suing thereby

3    permitting but not requiring a separate award of statutory

4    damages per work.

5          In cases we cited, such as <u>Yellow Pages v. ZIPLOCAL</u>,

6    they found that, you know, there was one award appropriate

7    where the photographs were taken of one subject by one

8    photographer at a single session.  The evidence in the record

9    shows that Mr. Sands licenses per shoot and not per photograph.

10         THE COURT:  All right.

11         MR. LACKMAN:  Therefore, under these circumstances,

12   for both of those reasons, this is one of these types of uses

13   that allows Mr. Sands to claim one award of statutory damages,

14   not five.

15         THE COURT:  All right.  Let me hear from plaintiff's

16   counsel.

17         MR. FREEMAN:  Thank you, your Honor.

18         It is not often, actually, you use the word frivolous,

19   because I'm a member of the plaintiff's bar and that word gets

20   thrown around a lot, but this is a case where there is a bright

21   line between a compilation and a group registration of

22   photographs.

23         Every single case that they cite in their principal

24   brief and their reply brief deals with compilations and

25   collective works.  In this Circuit, according to the expressed

J2MsSANc

1    understanding of the statute, you only get one statutory

2    damages award for a compilation.  Had Steve Sands registered a

3    compilation with the intent to create a coffee table book of

4    all of his photographs of the Marvel characters, he would only

5    be entitled to one work.

6              This group registration, however, is not that at all.

7    It is a registration with 736 photographs that were organized

8    according to one parameter, the date.  There is no originality.

9    Compilation has to have some sort of minimum threshold of

10   originality to become a compilation.  Here, it is just a group

11   registration that was administratively organized according to

12   dates.

13             All the cases that they have cited, including the

14   Yellow Pages citation from the Eleventh Circuit, is a

15   compilation case.  Now, in this Circuit and in other circuits,

16   they have what is called an economic, independent economic

17   viability exception to the compilation rule.  Here, we don't

18   follow that in the Second Circuit.  But other circuits, they

19   say, well, if you register a compilation and one of the

20   portions or components of that registration is economically

21   viable as an independent work, then if you can prove that it is

22   independent, you might get an exception to the rule that under

23   compilations you only get one work.  The Second Circuit has

24   repeatedly rejected that argument and has held fast to the

25   statutory language.

J2MsSANc

1          Here, we are not dealing with a compilation.  We are

2     not dealing with a collective work.  The registration satisfies

3     the three prerequisites:  It is the same photographer, all the

4     paragraphs are registered in the same calendar here, and it is

5     the same copyright claimant.

6          To sort of close the deal on that, there is the group

7     registration of photographs 83F32542-01.  This is a regulation

8     where they say the office -- it is a comment to the regulation.

9     The office will examine each photograph in the group, and if

10    the claim is approved, the registration covers each photograph

11    and each photograph is registered as a separate work.  Thus, if

12    the photographs are subsequently infringed, the copyright owner

13    should be entitled to seek a separate award of statutory

14    damages for each individual photograph.

15         That is coming directly from the registrar, your

16    Honor.

17         THE COURT:  All right.  Did you want to say anything

18    about the case with Judge Batts, since I'm told you were

19    furnished with a copy of it?

20         MR. FREEMAN:  Yes, I was.

21         As soon as I saw it, I went right to the back and I

22    saw that she was dealing with a compilation and a collective

23    work.  This case has nothing to do with the group registration,

24    which is just really an administrative component or

25    administrative benefit for the copyright hold that they don't

J2MsSANc

1    have to register each photograph separately.  It would be way

2    too expensive and way too burdensome.  That method of

3    registration does not in any way, shape, or form limit the

4    amount of statutory damages.

5         I would also just like to add, your Honor, there is

6    two other defenses that they've asserted to liability -- fair

7    use and unclean hands -- both of which, again, seem to be

8    throw-away defenses.  We spent ten pages briefing the fair use

9    defense, and their opposition was less than a page.  And the

10   substantive argumentation was in footnote on fair use.

11        The unclean hands defense, it is very rare, but it

12   only applies if the alleged misconduct is somehow related to

13   this litigation.  In their brief, they are talking about

14   e-mails that Steve Sands exchanged involving an entirely

15   different production, Iron Fist.  So, I mean, by their own

16   admission, and they cited that rule that it has to be related

17   to this litigation.  The unclean hands defense should be

18   dismissed as well as the fair use claim.

19        THE COURT:  All right.

20        MR. LACKMAN:  Your Honor.

21        THE COURT:  Yes.  Go ahead.

22        MR. LACKMAN:  I'm sorry, your Honor.

23        THE COURT:  Again, go to the microphone.

24        MR. LACKMAN:  Yes.

25        I'm not sure if your Honor wanted argument or to be

J2MsSANc

1   heard on the fair use or unclean hands defense.  I am certainly

2   prepared to argue that.

3           I just wanted to point out to the court that

4   Mr. Freeman has misrepresented the cases that were cited in our

5   reply brief.  At page nine, there are cases involving group

6   registration.  And worse, I have -- I have handed up the

7   copyright registration issue in the case the decision issued

8   yesterday posted this morning.  It says application title group

9   registration.

10          So this is exactly on point.  We don't dispute that

11  the party may be entitled to seek such award, but what we have

12  here is that there is no evidence that would suggest that he

13  would be entitled to an award.  And in situations where that is

14  a factor, where that can be decided by the court, the facts

15  there are the same as the facts here.  It is page two.

16          THE COURT:  Hold on a minute.  Just a minute.

17          MR. LACKMAN:  Yes.

18          THE COURT:  Thanks.

19          (Pause)

20          Well, just to say, I'm just seeing Judge Batts'

21  opinion for the first time.  But what she seems to be saying is

22  is that, in fact, it was a compilation, however denominated.

23  She talks about, at page 12 of her opinion, about situations

24  where you can get separate awards.  But then she goes on to

25  say, The court finds that under these facts, where a copyright

J2MsSANc

1  holder chose to assemble into a collective hold, certain

2  photographs during the registration of its copyright, i.e.,

3  registering them in sets rather than as individual photograph

4  of works, the copyright holder has created a collective work in

5  compilation as those terms are defined in Section 101.

6  Therefore, the copyright holder is limited to recovery of one

7  award, one award of statutory damages, per se."

8          That seems to be quite different from what the issue

9  is here.

10         MR. LACKMAN:  Well, if your Honor turns to the second

11  page of the record, it does say group registration, but that is

12  one of two arguments as well.

13         What I want to make sure is understood is that, in

14  addition to that, even in the circumstances where they say you

15  may be entitled to multiple awards, courts actually addressing

16  the issue have time and again repeatedly said that when the

17  works are presented under the same title, done at the same

18  time, taken on the same day, then that entitlement goes away.

19         There are cases in our brief and in our reply brief as

20  well that do talk about this specific point as well.

21         THE COURT:  All right.  Thank you very much.

22         MR. LACKMAN:  Does your Honor want to hear on fair use

23  or unclean hands?

24         THE COURT:  No.  I had not inquired previously about

25  those because I felt I understood from the papers all I needed

J2MsSANc

1      on those points.  If there is something you're dying to say on

2      that...

3              MR. LACKMAN:  Sure.

4              I just want to make it clear, we are not waiving, to

5      your Honor's point of prematurity of fees, we are not waiving

6      any arguments on fair use.  Given where we are in the case, we

7      wanted to get to the main merits.  Certainly there is the way

8      that they characterized the purpose of the photos and the way

9      we characterize the purpose of the photos is different.

10             THE COURT:  Well, if one party makes an argument in

11     ten pages and the other argument responds in one page, I am

12     also predisposed towards favoring the latter, but we'll see how

13     it plays out in this case.

14             MR. LACKMAN:  Thank you, your Honor.

15             We have page limits we try to prioritize.  Certainly

16     with respect to unclean hands, I mean, we have laid it out in

17     our papers, and we just believe that this approach of a

18     plaintiff who barges onto sets and sets up and settles cases

19     for the purpose of trying to satisfy a willfulness presumption,

20     that is not the way the court system is supposed to work, your

21     Honor.

22             THE COURT:  All right.  I thank both counsel for this

23     helpful argument.

24             Because of the additional short telephonic deposition

25     and the papers that follow from that, I won't be able to give

J2MsSANc

1  you an immediate ruling, but I will certainly get you a ruling,

2  worst case, by the end of March.  Since trial is not until

3  April 22, that will be more than adequate time.

4            Anything else we need to take up today?

5            MR. FREEMAN:  Not from the plaintiff, your Honor.

6  Thank you.

7            MR. LACKMAN:  Not for defendant.  Thank you.

8            THE COURT:  Very good.  Thanks very much.

9            (Adjourned)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25